## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JERRY LEWIS BEY,                          )
                                          )
                                          )
              Plaintiff,                   )
                                          )         Civil Action No. 05-2241  (JGP)
      v.                                   )
                                          )
U.S. DEPARTMENT OF JUSTICE,                )
                                          )
Defendant.                                 )
_____)

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant United States Department of Justice

("Defendant"), through the United States Attorney for the District of Columbia, respectfully

moves this Court to enter Summary Judgment in favor of the Defendant on the grounds that the

records requested by Plaintiff pursuant to the Freedom of Information Act,  5 U.S.C. §552

("FOIA" or the "Act"), were properly withheld under the Act.  In support of its Motion, the

Defendant refers this Court to the accompanying Memorandum of Point and Authorities,

Statement of Material Facts as to Which There is no Genuine Dispute, and the Declaration of

Averill Graham.

A proposed Order is also attached.

Plaintiff should take notice that any factual assertions contained in the accompanying

Declaration and other attachments in support of Defendant's Motion will be accepted by the

Court as true unless Plaintiff submits his own declaration or other documentary evidence

contradicting the assertions in Defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C.

Cir. 1992), Local Rule 7.1, and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar No.  434122
Assistant United States Attorney


_____
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
**JERRY LEWIS BEY,**                    )
)
            **Plaintiff,**          )
)
       **v.**                            )   **Civil Action No. 05-2241  (JGP)**
)   **(ECF)**
**U.S. DEPARTMENT OF JUSTICE,**         )
)
**Defendant.**                          )
_____)

**FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**<u>NOT IN GENUINE DISPUTE</u>**

1.      Plaintiff is a federal prisoner at the Federal Correctional Institution ("FCI") at Edgefield, South Carolina.  Complaint at ¶ 3.  Plaintiff was convicted of multiple murders, including a St. Louis Deputy Sheriff and a grand jury witness.  Declaration of Avrill Graham ("Graham Decl.") at ¶¶ 64.

2.      Subsequent to his conviction, Plaintiff has engaged in multiple post-conviction proceedings, including appeals to the Eighth Circuit Court of Appeals, and multiple petitions for rehearings, and habeus corpus petition before the United States District Court for the Eastern District of Missouri.  Graham Decl. at ¶ 64 and n. 10.

3.      At the time of his latest FOIA request, Plaintiff had a post-conviction matter pending before the Eighth Circuit Court of Appeals.  <u>Jerry Lewis Bey v. United States</u>, 05-2447 (Petition to File a Successive Habeas Corpus) (Def. Exh. LLL).

4.      The history of Plaintiff's FOIA requests to the ATF extends as far back as 1997, and continues through the matters at issue here.  <u>See</u> <u>generally</u> Graham Decl. at ¶¶ 3-58.

5.      On July 17, 2000, Plaintiff sought pen register information, survelliance (sic) logs, and toll records from a 1983 investigation file of Plaintiff and his organization called the Moorish Science Temple of America.  Exh. M.  Plaintiff subsequently modified his FOIA request to information maintained by the ATF for the period of May 1, 1986 through July 31, 1986, which was alleged to be maintained in a 1983 AFT investigation file, including all surveliance (sic) logs, notes, debriefing reports, photos, and pen register information and computer print outs. Exh. O.

6.      In response, ATF informed Plaintiff, on September 29, 2000, that his request for pen register information was denied pursuant to FOIA exemptions (b)(7)(E) and (b)(7)(C).  Def. Exh. S.  ATF further advised Plaintiff that it could not locate any surveillance video or any investigative files prior to 1988.  Def. Exh. S.  ATF advised Plaintiff of his administrative appeal rights and obligations.  Id.

7.      Plaintiff did not administratively appeal the denial of the pen register information or any other portion of ATF's response.  Graham Decl. at ¶ 19.

8.      On May 11, 2001, Plaintiff made FOIA requests to the ATF for information on himself and the Moorish Science Temple of America gathered by ATF Special Agent Dennis Becker on or about June, 1983.  Def. Exh. T.  On June 20, 2001 the ATF referred Plaintiff to the agency's September 29, 2000 letter, in which Plaintiff was informed that no ATF records were located for a file for that year. See Graham Dec. ¶¶ 20, 21 and Exhibits U.

9.      Plaintiff, in a July 5, 2001, letter narrowed his request regarding information gathered by ATF in 1983.  Def. Exh. W.  Specifically, Plaintiff requested a report by an unknown ATF agent, written on May 23, 1983, in which the Plaintiff and the Moorish Science Temple

were investigated; a May 1, 1986, report in which ATF Special Agent Clark Young installed a

24-hour time lapse video camera in a vacant apartment across from Plaintiff's apartment at

11882 San Remo; a June 4, 1986, report of surveillance of Plaintiff by Special Agent Young; and

a May 5, 1988 report by an unidentified ATF special agent to U.S. Attorney Thomas Dittmeier

identifying Raymond Amerson, Gerald Hopkins Bey, and Gary Hammell El as "top lieutenants

of Jerry Lewis Bey...." See Graham Dec. ¶ 23 and Def. Exh. W.

     10.    On July 23, 2001, Plaintiff was again informed that the ATF could not locate a

1983 file. Def. Exh. X. The agency, however, informed Plaintiff that a 1988 file had been

located. Id.

     11.    On July 31, 2001, Plaintiff requested the 1988 ATF investigative file. Def. Exh.

Y. ATF's Disclosure Division, in an August 13, 2001, letter, denied Plaintiff's request because

the case was "open on appeal" and release of that case's information could jeopardize law

enforcement proceedings. See Graham Dec. ¶ ¶ 24, 25 and 26 and Def. Exh. Z.

     12.    Plaintiff, in a August 20, 2001, letter requested reconsideration of the August

2001 denial. Def. Exh. AA. On September 10, 2001, ATF's Disclosure Division advised him to

file an administrative appeal. Def. Exh. BB. Plaintiff appealed the denial in a September 13,

2001 letter. Def. Exh. CC. In a December 12, 2001, letter, ATF's Assistant Director of Liaison

and Public Information affirmed the Disclosure Division's August 2001 denial. See Def. Exh.

EE.

     13.    On December 16, 2001, Plaintiff sent a letter to the ATF stating that his case was

no longer on appeal, and that he was requesting a 1988 ATF file on himself and the Moorish

Science Temple of America. Def. Exh. GG. Plaintiff enclosed a copy of a November 12, 2001,

3

judgment from the United State Court of Appeals for the Eighth Circuit.  Id.

14.    On January 24, 2002, the Disclosure Division informed Plaintiff that his criminal case was still open and that FOIA requests would continue to be denied under FOIA Exemption (b)(7)(A).  Def. Exh. II.  Plaintiff was advised to resubmit his request upon adjudication of all issues in his criminal case and also was provided instructions on how to file an administrative appeal.  Id.

15.    On August 5, 2002, Plaintiff resubmitted his request for the 1983 investigative file regarding him and the Moorish Science Temple of America.  Def. Exh. JJ.  ATF's Disclosure Division, after consultation with the United States Attorney's Office for the Eastern District of Missouri, was advised that litigation related to the requested file continued and that release of the file would interfere with law enforcement proceedings.  Pursuant to Exemption (b)(7)(A), release of the information was denied.  Def. Exh. KK.  Plaintiff, in a October 28, 2002, letter, insisted there was no pending litigation in his criminal case and renewed his request for responsive records.  Def. Exh. LL.  The Disclosure Division, in a November 13, 2002, letter, again denied Plaintiff's request and advised him of his appeal rights.  Def. Exh. MM.

16.    On May 27, 2003, Plaintiff resubmitted his request for the 1983 file.  Def. Exh. NN.  In a May 29, 2003, letter, the Disclosure Division denied Plaintiff's request because of on-going proceedings in his criminal case.  Def. Exh. OO.  Instructions for an administrative appeal were provided.  Id.

17.    In a July 30, 2003, letter, Plaintiff requested a copy of a June 7, 1983, ATF report

4

in file 33920 83 1501Y located in ATF's St. Louis Field Division,[1] and further inquired as to whether a 1988 ATF investigative file on Plaintiff and the Moorish Science Temple of America was cleared for release.  Def. Exh. PP.  In an August 12, 2003, letter, ATF's Disclosure Division denied Plaintiff's request because the report was related to a continuing investigation.  Def. Exh. QQ.  Plaintiff appealed the denial to the Department of Justice's Office of Information and Privacy (OIP) in a August 24, 2003 letter.  Def. Exh. RR.  In a January 6, 2004, letter, the Disclosure Division partially granted Plaintiff's request for the June 7, 1983, report.  Def. Exh. SS.  Pursuant to Exemptions (b)(2), (b)(7)(C), and (b)(7)(D), portions of the document were withheld.  Id.  A description of Plaintiff's appeal rights were included in the letter.  Id.

18.    On January 24, 2004, Plaintiff requested ATF file No. 7665 0683 1501 L (01), which is part of the file containing the June 7, 1983 report requested earlier by Plaintiff.  Def. Exh. TT.  Because of ongoing litigation in Plaintiff's criminal case, the request was denied under Exemption (b)(7)(A).  Def. Exh. UU.

19.    On March 1, 2004, Plaintiff requested a review of the records and the status of the litigation in his criminal case by the Disclosure Division.  Def. Exh. VV.  In his letter, Plaintiff addressed the past denials under Exemption (b)(7)(A) by accusing the Assistant United States Attorney assigned to his criminal matter of "obstruct[ing] justice by interfering with the spirit of the FOIA process."  Def. Exh. VV.

20.    At the time of Plaintiff's March 1, 2004 letter, he did, in fact, have a pending

---

[1]    This file was not, and continues not to be reflected in the Treasury Enforcement Communications System, the only indexed database of criminal information ATF's Disclosure Division used to search ATF Field Divisions.  The search for the file was outside typical FOIA search parameters. Graham Decl. at ¶¶ 107-111.

matter before the Eighth Circuit Court of Appeals regarding his criminal conviction.  See Jerry

Lewis Bey v. United States, 04-1297 (Docket attached as Def. Exh. JJJ).

21.    On March 14, 2004, letter denied Plaintiff's request because release of the

information could interfere with law enforcement proceedings.  Def. Exh. WW.

22.    On June 15, 2004, Plaintiff renewed his request, asserting that the Eighth Circuit

Court of Appeals had denied his collateral petition.  Def. Exh. XX.

23.    On August 10, 2004, the ATF denied Plaintiff's renewed request for the 1983

investigative file pursuant to Exemption (b)(7)(A).  Def. Exh. ZZ.  Plaintiff was advised of his

right to appeal.  Id.

24.    On August 23, 2004, Plaintiff renewed his request for the 1983 file, asserting that

his appellate case had closed July 7, 2004.  Def. Exh. AAA.

15.    In a September 30, 2004 letter, the Disclosure Division of the ATF denied release

of the file because that information could interfere with law enforcement proceedings.  Def. Exh.

BBB.

16.    Plaintiff submitted two more FOIA requests for the ATF 1983 file in letters dated

April 25 and 28, 2005.  Def. Exhs. CCC and DDD.  In the April 25, 2005 letter, Plaintiff stated

that the U.S. Eighth Circuit Court of Appeals denied his last appeal.  Id.  In reliance upon

Plaintiff's assertion, the Disclosure Division in a June 9, 2005 letter to Plaintiff stated that it

expected to partially grant Plaintiff's request, pending a response from the Field Division.  Def.

Exh. EEE.  However, after consultation with the United State Attorney's Office for the Eastern

District of Missouri, the ATF discovered that Plaintiff had, in fact, initiated another post-

conviction proceeding before the Eighth Circuit Court.  See Jerry Lewis Bey v. United States, 04-

6

4160 (Docket attached as Def. Exh. KKK).  Accordingly, the ATF denied Plaintiff's request

because of ongoing appeals in Plaintiff's criminal case.  Def. Exh. FFF.

    17.    On July 29, 2005, Plaintiff appealed the denial of his request to the Department of

Justice Office of Information and Privacy ("OIP").  Def. Exh. GGG.  In his appeal, Plaintiff

admitted, for the first time, that he did in fact have matters pending before the Eighth Circuit

Court of Appeals.  Id.

    18.    OIP denied Plaintiff's appeal on September 6, 2005, affirming the ATF Disclosure

Division's decision not to release the 1983 file pursuant to Exemption (b)(7)(A).  Def. Exh. III.

                    Respectfully submitted,


                    _____
                    KENNETH L. WAINSTEIN, D.C. BAR # 451058
                    United States Attorney


                    _____
                    RUDOLPH  CONTRERAS, D.C. Bar No.  434122
                    Assistant United States Attorney


                    _____
                    DARRELL C. VALDEZ, D.C. BAR # 420232
                    Assistant United States Attorney
                    Judiciary Center Building
                    555 4th St., N.W., Civil Division
                    Washington, D.C.  20530
                    (202) 307-2843

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
|                                        )
| **JERRY LEWIS BEY,**                   )
|                                        )
|                 **Plaintiff,**         )
|                                        )    **Civil Action No. 05-2241  (JGP)**
|           **v.**                       )    **(ECF)**
|                                        )
| **U.S. DEPARTMENT OF JUSTICE,**        )
|                                        )
| **Defendant.**                         )
|_____)

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Department of Justice, through undersigned counsel, submits this memorandum of points and authorities in support of its Motion for Summary Judgment.

### INTRODUCTION

At issue in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case is whether the United States Department of Justice ("Defendant") and the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") properly withheld material responsive to Plaintiff's FOIA request.  As discussed below and in the attached Declaration,[1/] the documents and information were properly withheld pursuant to the exemptions found in the FOIA.  Defendant's Motion for Summary Judgment should therefore be granted, and judgment should be entered in

_____

[1/]    "Vaughn Index" is a term derived from Vaughn v. Rosen, 484 F2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  The index usually consists of a detailed affidavit or declaration, the purpose of which is to permit the court system effectively and efficiently to evaluate the factual nature of disputed information.  See John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989).  In the instant case, the declaration of Ms. Graham will serve as the ATF's Vaughn Index.

favor of Defendant.

## **BACKGROUND**

### A.    **Plaintiff's FOIA Request.**

Plaintiff is a federal prisoner at the Federal Correctional Institution ("FCI") at Edgefield, South Carolina.  Complaint at ¶ 3.  Plaintiff was convicted of multiple murders, including a St. Louis Deputy Sheriff and a grand jury witness.  Declaration of Avrill Graham ("Graham Decl.") at ¶¶ 64.  Subsequent to his conviction, Plaintiff has engaged in multiple post-conviction proceedings, including appeals to the Eighth Circuit Court of Appeals, and multiple petitions for rehearings, and habeus corpus petition before the United States District Court for the Eastern District of Missouri.  Graham Decl. at ¶ 64 and n. 10.  Even recently, Plaintiff has had three post-conviction matters before the Eighth Circuit Court of Appeals.  Jerry Lewis Bey v. United States, 04-1297 (Petition to File a Successive Habeas Corpus); Jerry Lewis Bey v. United States, 04-4160 (Application for Certificate of Appealability); Jerry Lewis Bey v. United States, 05-2447 (Petition to File a Successive Habeas Corpus), court dockets attached hereto as Def. Exh. JJJ, KKK, and LLL, respectively.

The history of Plaintiff's FOIA requests to the ATF extends as far back as 1997, and continues through the matters at issue here.  See generally Graham Decl. at ¶¶ 3-58.[2/]  However,

_____

[2/]        Plaintiff made the first of his Freedom of Information Act requests to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in July 1997 by seeking information on the Moorish Science Temple of America gathered by ATF Special Agents Clark Young and Theodore J. Heitzler.  Also requested were an application for a copy of a federal court order for a "pen register" for an apartment at Country Side Apartment Complex in the St. Louis metropolitan area. See Graham Decl. at ¶ 3 and Exh. A.  Although ATF acknowledged Plaintiff's firm agreement to pay all associated costs with processing his FOIA request, the request was denied

(continued...)

the specific information at issue in this matter was first requested by Plaintiff on July 17, 2000.

Complaint at ¶ 5.  In that request, Plaintiff sought pen register information, survelliance (sic)

logs, and toll records from a 1983 investigation file of Plaintiff and his organization called the

Moorish Science Temple of America.  Exh. M.  Plaintiff subsequently modified his FOIA request

to information maintained by the ATF for the period of May 1, 1986 through July 31, 1986,

which was alleged to be maintained in a 1983 AFT investigation file, including all survellance

(sic) logs, notes, debriefing reports, photos, and pen register information and computer print outs.

Exh. O.  In response, ATF informed Plaintiff that his request for pen register information was

denied pursuant to FOIA exemptions (b)(7)(E) and (b)(7)(C), and further advised Plaintiff that it

could not locate any surveillance video or any investigative files prior to 1988.  Exh. S.  ATF

advised Plaintiff of his administrative appeal rights and obligations.  Id.  Plaintiff did not

administratively appeal the denial of the pen register information or any other portion of ATF's

response.  Graham Decl. at ¶ 19.

---

[2]/(...continued)
on November 24, 1997, pursuant to FOIA exemption (7) (A) "because release of these records
could reasonably be expected to interfere with [law] enforcement proceedings."  Id.  Plaintiff
was advised to resubmit his request upon resolution of a pending habeas corpus matter in his ongoing
criminal matter before the Eighth Circuit Court of Appeals.  See Graham Decl. at ¶ 10 and Exh.
H.

    On April 4, 2000, Plaintiff requested reconsideration of the November 1997 denial of his
FOIA request.  Exh. I.  In that request, Plaintiff advised the ATF that all matters before the courts
had been resolved.  Id.  Based upon Plaintiff's representations, ATF partially granted Plaintiff's
April 2000 request, and released 100 partially redacted pages and advised 357 additional pages
would be released on payment of $52.50 for copying costs.  Graham Decl. at ¶ 12 and Exh. J.
Redactions were made pursuant to FOIA Exemptions (b)(2), (b)(3), Fed. R. Crim. P. 6(e),
(b)(7)(C), (b)(7D), and (b)(7)(E).  Id.  Plaintiff was advised of his right to file an administrative
appeal.  Id.  ATF's FOIA Disclosure Division partially released the remaining 357 pages to
Plaintiff, once again redacting portions of the releasable documents pursuant to FOIA
Exemptions (b)(2), (b)(3), Fed. R. Crim. P. 6(e), (b)(7)(C), (b)(7D), and (b)(7)(E).  See Graham
Dec. ¶ 14, and Exh. L.  Plaintiff did not administratively appeal this production.

Subsequently, Plaintiff made repeated requests to the ATF for the 1983 file regarding himself and the Moorish Science Temple of America.  In some of the requests, Plaintiff falsely represented that his post-conviction matters before the United States Court of Appeals for the Eighth Circuit were ended.  The 1983 file was eventually located through inquiries with the St. Louis Field Division personnel who had some historical knowledge of that particular Field Division's investigative cases.  Graham Decl. at ¶ 111.  However, Plaintiff's requests were denied by the ATF Disclosure Division because the information could interfere with a pending law enforcement proceedings.

Finally, on April 25, 2005, and April 28, 2005, Plaintiff submitted two more FOIA requests for the ATF 1983 file.  Def. Exhs. CCC and DDD.  In the April 25, 2005 letter, Plaintiff stated that the U.S. Eighth Circuit Court of Appeals denied his last appeal.  Id.  In reliance upon Plaintiff's assertion, the Disclosure Division in a June 9, 2005 letter to Plaintiff stated that it expected to partially grant Plaintiff's request, pending a response from the Field Division.  Def. Exh. EEE.  However, after consultation with the United State Attorney's Office for the Eastern District of Missouri, the ATF discovered that Plaintiff had, in fact, initiated another post-conviction proceeding before the Eighth Circuit Court.  See Jerry Lewis Bey v. United States, 04-4160 (Docket attached as Def. Exh. KKK).  Accordingly, the ATF denied Plaintiff's request because of ongoing appeals in Plaintiff's criminal case.  Def. Exh. FFF.

On July 29, 2005, Plaintiff appealed the denial of his request to the Department of Justice Office of Information and Privacy ("OIP").  Def. Exh. GGG.  In his appeal, Plaintiff admitted, for the first time, that he did in fact have matters pending before the Eighth Circuit Court of Appeals. Id.  OIP denied Plaintiff's appeal on September 6, 2005, affirming the ATF Disclosure Division's

4

decision not to release the 1983 file pursuant to Exemption (b)(7)(A).  Def. Exh. III.  Plaintiff

filed this civil action on November 17, 2005.  See Complaint.

## ARGUMENT

### I.    LEGAL STANDARDS.

#### A.    Summary Judgment Standard

Summary judgment is an appropriate method for a court to dispose of a FOIA complaint.

See Rugiero v. United States Department of Justice, 257 F.3d 534 (6th Cir. 2001); see also Jones

v. FBI, 41 F.3d 238,242 (6th Cir. 1994).  Under Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is required when the pleadings and evidence demonstrate that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986);

Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Any factual assertions contained in

affidavits and other evidence in support of the moving party's motion for summary judgment

shall be accepted as true unless the facts are controverted by the nonmoving party through

affidavits or other documentary evidence.  Fed. R. Civ. P. 56(e).

While all evidence and the inferences drawn therefrom must be considered in the light

most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits

"affirmative evidence that negates an essential element of the nonmoving party's claim" or

demonstrates "that the nonmoving party's evidence is insufficient to establish an essential

element of the nonmoving party's claim."  High Tech Gays v. Defense Industrial Security

Clearance Office, 895 F.2d 563, 574, *reh'g denied*, 909 F.2d 375 (9th Cir. 1990) (*citing* Celotex, 477 U.S. at 331).

FOIA cases are typically decided on motions for summary judgment.  See Cappabianca v. Commissioner, U. S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment")(citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  To be entitled to summary judgment, the agency must prove that each document was produced, not withheld, is unidentifiable, or is exempt from disclosure.  Weisberg v. U. S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

Under FOIA, federal courts may "enjoin the agency from withholding agency records and [may] order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  Requesters may prevail in a FOIA action only if an agency has (1) improperly (2) withheld (3) agency records, and jurisdiction may only be invoked if "the agency has contravened all three components of this obligation."  Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136, 150 (1980).  An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits, declarations, or other evidence showing that it has discharged its obligations under the FOIA. Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980).  The declarations need not be overly detailed or otherwise provide "meticulous documentation", but rather only need "explain in reasonable detail the scope and method of the search conducted by the agency...."  Perry v. Block, 684 F.2d 121, 127 (D.C.

1982).

Although an agency's denial of a FOIA request is reviewed by a District Court *de novo*, see 5 U.S.C. ¶552(a)(4)(B), courts may accord deference to an agency whose primary mission is law enforcement when the agency is performing a law enforcement function.  See e.g., Pratt v. Webster, 673 F.2d 408, 418 (D.C. Cir. 1982) ("we conclude that a court may apply a more deferential attitude toward the claims of 'law enforcement purpose' made by a criminal law enforcement agency....  [A] court can accept a less exacting proof from such an agency that the purpose underlying disputed documents is law enforcement").  The BOP qualifies as a law enforcement agency.  See Duffin v. Carlson, 636 F.2d 709,713 (D.D.C. 1980) (finding that the BOP is a criminal law enforcement authority).[3/]  Moreover, an agency "may justify its claims of exemption through detailed affidavits, which are entitled to a presumption of good faith." Rugiero, 257 F.3d at 544 (*citing* United States Dept. of State v. Ray, 502 U.S. 164, 179 (1991)).

Because the declaration of Averill Graham and the attachments thereto demonstrate that the Defendant has met its obligation under the FOIA, and that no genuine issue as to any material fact exists, summary judgment should be granted to Defendants as a matter of law.  See Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982).

**B.    The Purpose of the Freedom of Information Act.**

The Freedom of Information Act generally provides that any person has a right, enforceable in court, to obtain access to federal agency records, except to the extent that such

---

[3/]    Courts, in other non-FOIA litigation, have broadly determined that Bureau of Prisons' employees are "law enforcement officers."  See Chapa v. United States Dep't of Justice et al., 339 F.3d 388 (5th Cir. 2003); Reed v. Reno, et al., 146 F3d 392 (6th Cir. 1998).

7

records are protected from public disclosure by any of the nine exemptions or three special law enforcement record exclusions.  While the FOIA's statutory objective is to achieve "the fullest responsible disclosure," see S. Rep. No; 89-813, at 3 (1965), the Supreme Court has emphasized that only "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose."  United States Dept. of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989).

Thus, the identity of the FOIA requester does not matter. See e.g., EPA v. Mink, 410 U.S. 73, 86 (1973) (declaring that FOIA is "largely indifferent to the intensity of a particular requester's need"); Parsons v. Freedom of Info Act Officer, 1997 WL 461320, at *1 (6th Cir. Aug. 12,1997) (holding that plaintiff's argument of "legitimate need for the documents superior to that of the general public or the press" fails because identity of requester is irrelevant to the determination of whether an exemption applies); United Techs v. FAA, 102 F. 3d 688, 692 (2nd Cir. 1996) ("Congress created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis").  So long as FOIA "is fundamentally designed to inform the public about agency action and not to benefit private litigants," a requestor's rights under FOIA "are neither increased nor decreased by reason of the fact that it claims an interest in the [matter sought]" greater than that shared by the average member of the public.  N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 143 n.10 (1975).

## II.    ADEQUACY OF THE SEARCH IS NOT AT ISSUE.

Under the FOIA, an agency must conduct a search reasonably calculated to uncover all relevant records.  Kowalczyk v. Department of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996).  In

this case, the adequacy of the ATF's search for responsive records is not at issue. Indeed, the

ATF went beyond what was required of it under the FOIA and located the 1983 file requested by

Plaintiff. Graham Decl. at ¶¶ 107, 112. In his complaint, Plaintiff appears to challenge only the

withholding of the contents of the file, and not the adequacy of the search.

### III.    PLAINTIFF'S REQUEST FOR THE 1983 WAS PROPERLY DENIED.

The entire 1983 file was properly withheld for two reasons. First, with respect to the

Plaintiff's request for pen register information, Plaintiff failed to administratively appeal the

September 29, 2000, denial of his request for pen register information. Thus, because Plaintiff

failed to timely exhaust his administrative remedies with respect to the pen register information

the Court is without jurisdiction to hear his claim.

Additionally, despite Plaintiff's past attempts to obtain the 1983 file from the agency by

making false assertions that he did not have any ongoing litigation regarding his criminal matter,

Plaintiff did, in fact, have multiple matter proceeding through the District Court and the Eighth

Circuit Court of Appeals. Consequently, the remaining portions of the 1983 file was properly

withheld, in its entirety, pursuant to FOIA Exemption 7(A).

### A.    Plaintiff Failed to Exhaust His Administrative Remedies with Respect to His Request for Pen Register Information.

Before seeking judicial review of a denial of a FOIA request, a requestor must first

administratively appeal the agency's refusal to provide the records requested. Oglesby v. United

States Dep't of the Army, 920 F.2d 57, 61, 66 (D.C. Cir. 1990); 5 U.S.C. § 552(a)(6)(A)(i)-(ii)

(administrative appeal process); 28 C.F.R. § 16.10(a); Colon v. Executive Office for United

States Attorneys, No. 98-0180, 1998 WL 695631, at *2 (D.D.C. Sept. 29, 1998) (concluding that court lacked subject matter jurisdiction because plaintiff failed to file administrative appeal of agency action).  See also  Kay v. FCC, 884 F. Supp. 1 (D.C. 1995) (because the notice gave the requestor timely and sufficient notice of the appeal procedures he cannot seek recourse through the Federal courts unless, and until, he has exhausted those procedures).

Here, Plaintiff's request for pen register information was specifically denied on September 29, 2000.  Exh. S.  ATF informed Plaintiff that information regarding his request for pen register information was protected from disclosure pursuant to FOIA Exemption 7(C) and 7(E).  Id.  ATF further advised of his administrative appeal rights and obligations.  Id.  Plaintiff did not administratively appeal the denial of the pen register information or any other portion of ATF's response.  Graham Decl. at ¶ 19.  Accordingly, Plaintiff has failed to timely exhausted his administrative remedies, and he cannot now raise the matter regarding the pen register information in the District Court.

> **B.**    **The Remaining Portions of the 1983 ATF File are Protected from Disclosure Pursuant to Exemption 7(A)**.

FOIA exemption 7(A) authorizes withholding "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could [ ] interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Records can be withheld under Exemption 7(A) if the agency (1) establishes that the law enforcement proceeding is pending or prospective; and (2) shows that disclosure could interfere with enforcement proceedings.  NLRB v. Robbins Tire & Rubber Co., 473 U.S. 214, 244 (1978).

Unlike other FOIA exemptions that may require a detailed Vaughn Index, an agency need

not detail the potential interference on a document-by-document basis under Exemption 7(A).

See Keen v. Executive Office for the United States Attorneys, No. 96cv1049, slip op. at 8

(D.D.C. July 14, 1999).  Rather, the agency may demonstrate the potential interference by

grouping documents into relevant categories that are "sufficiently distinct to allow a court to

grasp 'how each category of documents, if disclosed, would interfere with the investigation.'"

Bevis v. Dep't of State, 801 F.2d 1386, 1389 (D.C.Cir.1986) (quoting Campbell v. Dep't of

Health & Human Servs., 682 F.2d 256, 265 (D.C.Cir.1982)).  The agency must (1) define the

categories by function, (2) conduct a document-by-document review of responsive documents in

order to assign documents to their proper category, and (3) explain how the release of each

category could interfere with enforcement proceedings.  Id. at 1389-90.  Once the agency has

satisfied these requirements, it may withhold the category of documents until the final resolution

of the criminal proceedings.  Keen, No. 96cv1049, slip op. at 9.

> **1.    The ATF File Was Compiled During the Course of the Agency's Law Enforcement Duties.**

The ATF is a criminal and regulatory law enforcement agency within the Department of

Justice and is responsible for, among other things, enforcing Federal firearms laws including the

Gun Control Act of 1968, 18 U.S.C. §§ 921-930, the Federal explosives laws, 18 U.S.C. Chapter

40, and the National Firearms Act, 26 U.S.C. Chapter 53.  See 28 C.F.R. § 0.130.  Graham Decl.

at ¶ 62.  Within those law enforcement functions, the ATF assisted the Federal Bureau of

Investigation, the Drug Enforcement Agency and the St. Louis Police Department in the criminal

investigation of Jerry Lewis Bey and his organization, the Moorish Science Temple of America.

Id. at ¶ 65.  The 1983 filed sought by Plaintiff was created as a result of that investigation, which

is now pending post-conviction proceedings in the Eighth Circuit Court of Appeals.  Id. at ¶ 64.

## 2.    A Law Enforcement Proceeding Was Pending or Prospective at the Time of Plaintiff's FOIA Request.

Because Exemption 7(A) applies to law enforcement proceedings that are pending or

prospective, see Butler v. Department of the Air Force, 888 F. Supp. 174, 183 (D.D.C.1995), it

continues in its application at least until the complainant's conviction is final.  Kansi v. U.S.

Dept. of Justice, 11 F.Supp.2d 42, 45 (D.D.C. 1998).  This includes collateral attacks upon the

conviction, see id. (motion for new trial); Keen, No. 96cv1049, slip op. at 7 (motion to re-

determine sentence); Crooker v. ATF, No. 83cv1646, slip op. at 1-2 (D.D.C. April 30, 1984)

(motion to withdraw plea), and investigations into matters collateral to the requestor's original

conviction.  Cucci v. Drug Enforcement Administration, 871 F.Supp. 508, 511 (D.D.C. 1994)

(file regarding requestor's arrest and final conviction on drug charges withheld while pending tax

law violation investigation is proceeding).

Plaintiff has had various appeals, petitions for rehearing, and 28 U.S.C. § 2255 motions

before the U.S. District Court (EDMO) and the U.S. Court of Appeals (Eighth Circuit) all related

to his convictions in 1993 for multiple murders, including that of a St. Louis Deputy Sheriff and

a Grand Jury witness, along with participating in a criminal enterprise.  Graham Decl. at ¶ 64.

As a result of these convictions, Plaintiff is serving multiple life sentences.  Id.  Indeed, at the

time of Plaintiff's latest request, he had a petition pending before the Eighth Circuit seeking to

overturn his convictions.  See Jerry Lewis Bey v. United States, (05-2447) (Filed May 26, 2005).

## 3.    Disclosure of the 1983 ATF File Could Interfere with Enforcement Proceedings.

The potential harms to the investigation are very real and identifiable in this case.

Plaintiff has been convicted of murdering a law enforcement official and a grand jury witness. Graham Decl. at ¶ 64. Thus, he has demonstrated that he will use the information to identify and retaliate against persons who are involved in the investigation, and to continue his criminal enterprise from within the prison walls. Id. at ¶¶ 64, 67. In addition, Plaintiff has used documents obtained pursuant to FOIA in the past to interfere with the on-going post-conviction proceedings. Id. at ¶ 66. Plaintiff has misquoted information previously obtained, or has used them to make illogical assertions that must be addressed by the Assistant United States Attorney in those proceedings  Id.

A document by document review of the file requested by Plaintiff indicates that the file consists of three general categories or types of documents: (1) ATF Reports of Investigation, (2) the investigators' contemporaneous notes, and (3) activity reports. Graham Decl. at ¶ 65. The last category, activity reports, is comprised of witness statements, property transmittal reports (pertaining to photographs, fingerprints, handwritten letters, and evidence submitted for laboratory analysis), local law enforcement incident reports, case summary reports, and property inventory reports. Id. at ¶ 69.

The ATF Reports of Investigation contain summaries of the agents' activities, witness names and other identification, witness background information, information provided by witnesses, evidence inventory. In his criminal trial, the prosecution demonstrated that Plaintiff collects information about the law enforcement investigation, such as news clippings, police reports/excerpts and like materials for use to further his criminal enterprise or to circumvent the criminal discovery process. Graham Decl. at ¶ 67. Indeed, he has been convicted of killing a person he believed to be an informant against him. Id. Additionally, Plaintiff has been linked to

13

criminal behavior outside of prison despite his being imprisoned since 1991, including a narcotics distribution conspiracy while he was incarcerated at Leavenworth Federal prison that allegedly influenced and conducted narcotics sales in the Kansas City and St. Louis areas. Id.

ATF investigative notes set forth the agent's description of the progress of the investigation during a particular reporting period along with detailed plans for future investigative activity, as well as discuss the investigative efforts of other law enforcement officers in addition to ATF personnel. Id. at ¶ 68. As such, the disclosure of the investigative notes would interfere with enforcement proceedings, in that Plaintiff would be able to identify investigative techniques and strategies, and would be able to act to interfere with or improperly thwart the investigation and prosecution. See Cucci, 871 F. Supp. at 511 (harms covered by Exemption 7(A) include the safety of cooperating witnesses, the ability to alter or destroy evidence, concoct false alibis, change or conform behavior, or formulate strategies).

Based upon the fact that Plaintiff has proven the extent to which he will retaliate against those who testify or provide information against him, including grand jury witnesses and law enforcement personnel, release of witness statements has the very real potential to endanger such witnesses or cause harassment and harm to the witness' safety and/or reputation. Graham Decl. at ¶ 70. In addition, disclosure may well discourage future witnesses from cooperating with ATF. Id. Disclosure of property transmittal reports and property inventory reports would reveal investigative techniques, the handling of property seized by ATF, and the scope, limits, and direction of the investigation against others in his organization who were convicted or are still targets. Id. at ¶¶ 71, 74. Disclosure of case summary reports and local law enforcement incident reports or investigative notes would also reveal investigative techniques, scope, limits, direction

14

of the investigation, and the investigators mental impressions and strategy, as well as interfere

with future cooperative efforts with local law enforcement agencies.  Id. at ¶¶ 72, 73.

Because Plaintiff had a related matter pending before the Eighth Circuit Court, and

because any ruling by the Circuit Court may result in further proceedings before the U.S. District

Court, the file is protected from disclosure under Exemption 7(A), and judgment should be

entered in favor of Defendant.

IV.    **THE 1983 FILE WAS PROPERLY WITHHELD FOR REASONS OUTSIDE OF EXEMPTION 7(A).**

In addition, to the application of exemption (7)(A), portions of the file were properly

withheld pursuant to multiple FOIA exemptions.  Accordingly, the Court should grant

Defendant's motion and enter judgment in favor of Defendant.[4/]

A.    **The Defendant Properly Applied FOIA Exemption 2.**

Title 5, United States Code, Section 552(b)(2) (" Exemption 2") exempts from mandatory

disclosure records "related solely to the internal personnel rules and practices of an agency."  5

U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency

matters so routine or trivial that they could not be "subject to ... a genuine and significant public

interest;" and (2) internal agency matters of some public interest "where disclosure may risk

circumvention" of statutes or agency regulations.  Dept. of Air Force v. Rose, 425 U.S. 352, 369-

---

[4/]    As identified in the Graham Declaration, the records Plaintiff requested
concerning himself are located in a system of records entitled "Criminal Investigation Report
System."  Graham Decl. ¶ 61.  See 28 C.F.R. § 16.106(a) (1) (2005).  As such, the records are
exempt from the access provision of the Privacy Act, 5 U.S.C. § 552a (d) (1), pursuant to
subsection (j) (2) of the FOIA, as implemented by 28 C.F.R. § 16.106.

70 (1976); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30

(D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74

(D.C. Cir. 1981).  Depending upon the nature of the information, documents will fall within

either the "high (b)(2) category" or the "low (b)(2) category."

In this case, exemption "high (b)(2)" was at issue.  Exemption "high (b)(2)" exempts

from mandatory disclosure documents relating to more substantive internal matters.  See Schiller

v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  Withholding is permitted in this category to the

extent that disclosure would reveal techniques and procedures for law enforcement investigations

or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk

circumvention of an agency statute or impede the effectiveness of an agency's law enforcement

activities.  See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. ATF, 631 F.2d 653,

656 (9th Cir. 1980).

Here, the Defendant withheld information consisting of informant symbol number

designations, informant file numbers and a sensitive administrative internal marking used as an

identifier for a source of information.  See Graham Declaration at ¶¶ 75-76.  It has long been

established that Exemption 2 supports withholding of symbols or numbers that would reveal the

identities of confidential informants.  Lesar v. Dept. of Justice, 636 F.2d 472, 486 (D.C. Cir.

1980); Schrecker v. Dept. of Justice, 74 F. Supp.2d 26, 32 (D.D.C. 1999) (citing Lesar), aff'd in

relevant part, 254 F.3d 162, 167 (D.C. Cir. 2001).

In addition, the internal codes and numbers include laboratory and property tracking

numbers, information contained in the Treasury Enforcement Communications System (TECS),

computer data relating to software applications that identify how a displayed record was

retrieved, and computer codes from other Federal law enforcement computer databases (e.g. NCIC, NLETS) and law enforcement computer databases maintained by the State of Missouri. Graham Decl. at ¶¶ 76-78.  As set forth in the Declaration, the information from the TECS records identifies the terminal from which a query was accomplished by a terminal ID and a logical unit ID to show its mainframe connection.  Id. at ¶ 77.  The remaining data relates to the software applications that identify how the displayed record was retrieved: specifically, the software program mapping code, the routing codes within the program that allows the query to move from screen to screen, and the codes that allow movement to other programs from the displayed screen.  Id.  These sensitive codes are information that, in the hands of computer literate individuals with mainframe knowledge, could provide information on the structure of the mainframe system used, expose the system to circumvention or unauthorized access.  Id.

**B.**　　**The Identities and Statements of Grand Jury Witnesses, and Property Inventory Material are Protected from Disclosure Under Exemption 3.**

　　　Exemption 3 of the FOIA permits the withholding of information "specifically exempted from disclosure by statute" if the statute (A) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (B) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  In order to determine the applicability of Exemption 3, the Court must engage in a two-step analysis.  First, the Court must decide whether a statute qualifies as a withholding statute under Exemption 3. Second, the Court must determine whether the material requested by plaintiff is "specifically exempted from disclosure" by the statute.  Medina-Hincapie v. Department of State, 700 F.2d 737, 740 (D.C. Cir. 1983).

With respect to subsection (A) of exemption 3, the Court of Appeals has held that the provision applies to "those statutes incorporating a congressional mandate of confidentiality" that is "'absolute and without exception'" to the specific information sought to be disclosed to the public, even where the agency is granted discretion to disclose the information to others not part of "the public." Medina-Hincapie, 700 F.2d at 741. See also Landmark Legal Foundation v. I.R.S., 267 F.3d 1132, 1138 (D.C. Cir. 2001) (statute specifying that "return information shall be confidential" satisfies the requirements of Exemption 3 of FOIA with respect to information contained within the return). Subsection B, on the other hand, applies where the statute provides specific criteria for withholding **or** refers to the particular types of information to be withheld. De Laurentiis v. Haig, 686 F.2d 192, (3rd Cir. 1982) (emphasis added) (statute may fall under either criteria of exemption 3(B)) (*cited with approval in* Medina-Hincapie, 700 F.2d at 741). Exemptions 3(A) and 3(B) are not mutually exclusive. "A statute can 'refer to particular matters' (Exemption 3(B)) and, at the same time, require that those matters be withheld from the public in terms that 'leave no discretion on the issue' (Exemption 3(A)). Of course, a statute qualifies under Exemption 3 if it meets the requirements of either 3(A) or 3(B)." Medina-Hincapie, 700 F.2d at 742 n.21.

Here, file contains information about persons who were grand jury witnesses, including a description of the substance of their testimonies. Graham Decl. at ¶¶ 81, 82. As such, the information is protected pursuant to Fed. R. Crim. P. 6(e). See Fund for Constitutional Government v. National Archives, 656 F.2d 856, 868-869 (D.C. Cir. 1981) (Fed. R. Crim. P. 6(e) meets the threshold of Exemption 3 because it exempts matters before the Grand Jury from disclosure).

18

Section 6103 of the Internal Revenue Code ("IRC") also meets the threshold of Exemption 3 because it exempts material collected pursuant to the IRC from disclosure. Section 6103 of the IRC provides that "Returns and return information shall be confidential, and except as authorized by this title -- (1) no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or employee or otherwise or under the provisions of this section." 26 U.S.C. § 6103(a). "Return information" is defined to include "any background file document relating to a [tax liability] determination." 26 U.S.C. § 6103(b)(2)(B). Although § 6103 provides for a number of exceptions to the general rule that return information may not be disclosed, § 6103 does not permit the disclosure of such information in response to a FOIA request.

As stated previously, among ATF's responsibilities is the enforcement of the National Firearms Act ("NFA"). See 26 U.S.C. §§ 5801-5891. The NFA includes tax liability for the possession of certain firearms including, but not limited to, machineguns, silencers, and sawed-off shotguns. Id. Here, some of the property and inventory forms contained in ATF investigative file is tax information not related to the Plaintiff. Graham Decl. at ¶ 84. Thus, such property inventory lists and evidence forms relating to such firearms seized by the ATF are protected from disclosure as they evidence a tax liability upon the possessor of the firearm.

### C.    Exemptions 6 and 7(C) Preclude Disclosure of the Identities and Other Information Regarding Witnesses and Law Enforcement Officers.

Exemptions 6 and 7(C) require an agency to consider the personal privacy of the subject of the requested records. However, each of the exemptions employs a slightly different standard by which an agency must measure its justification for withholding a requested record.

19

Exemption 6 prohibits the release of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7C, on the other hand, prohibits the release of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Therefore, the threshold question for an agency justifying its withholding of a record pursuant to Exemption 6 is whether the records in question are personnel, medical or similar information.  New York Times Company v. National Aeronautics and Space Administration, 920 F.2d 1002, 1004 (D.C. Cir. 1990).  On the other hand, the threshold question for an Exemption 7(C) withholding is whether the documents or information in question were compiled for law enforcement purposes.  Keys v. United States Department of Justice, 830 F.2d 337, 340 (D.C. Cir. 1987).

Once it is determined that both exemptions apply, the balancing test for Exemption 6 and Exemption 7(C) is the same - the court must weigh the privacy interests implicated by the release of the requested records against the public's interest in their disclosure.  U.S. Dep't. of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); Nix v. United States, 572 F.2d 998, 1002 (4th Cir. 1978).  However, the two exemptions differ with respect to how much weight the privacy interest carries.  With respect to the two Exemptions' differing standards, the Supreme Court explained:

> Exemption 7(C) is more protective of privacy than Exemption 6: The former provision applies to any disclosure that "could reasonably be expected to constitute" an invasion of privacy that is "unwarranted," while the latter bars any

20

disclosure that "would constitute" an invasion of privacy that is "clearly unwarranted."

United States Department of Defense, et al. v. Federal Labor Relations Authority, 510 U.S. 487, 497 n. 6 (1994).  "Thus, the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files."  Reporters Committee, 489 U.S. at 756.

As will be discussed below, the records in the 1983 file that identify persons and set forth the substance of their statements or knowledge are "similar files" for purposes of Exemption 6, and were "compiled for law enforcement purposes" for purposes of Exemption 7(C).  Therefore, because release of such witness information contained within the 1983 file would constitute a clearly unwarranted of personal privacy, the records should be withheld pursuant to Exemption 6, and, of necessity, the broader provisions of Exemption 7(C).

## 1.    Exemption 6.

Exemptions 6 requires an agency to consider the personal privacy of the subject of the requested records.  Specifically, exemption 6 prohibits the release of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Therefore, the threshold question for an agency justifying its withholding of a record pursuant to Exemption 6 is whether the records in question are personnel, medical or similar information.  New York Times Company v. National Aeronautics and Space Administration, 920 F.2d 1002, 1004 (D.C. Cir. 1990).[5/]  As will be

_____

[5/]    Once it has been established the information meets the threshold requirement of
(continued...)

21

discussed below, the records in question are "similar files" for purposes of Exemption 6.

While "personnel and medical files" are easily identified, the term "similar files" is somewhat ambiguous. In United States Dep't of State v. Washington Post Co., 456 U.S. 595 (1982), however, the Supreme Court firmly held the term is to be interpreted broadly rather than narrowly. Id. at 599-603. The Court stated that the protection of an individual's privacy "surely was not intended to turn upon the label of the file which contains the damaging information." Id. at 601. Rather, the Court made clear that all information that "applies to a particular individual" meets the threshold requirement for Exemption 6 protection. Id. at 602; see also Sherman v. United States Dep't of the Army, 244 F.3d 357, 361 (5th Cir. 2001) (recognizing the "Supreme Court has interpreted exemption 6 'files' broadly to include any 'information which applies to a particular individual'"). Therefore, the threshold inquiry requires a court to look not to the "'the nature of the file[ ] in which the information [is] contained,' but solely to whether the information in the file 'applies to a particular individual.'" New York Times Company v. National Aeronautics and Space Administration, 920 F.2d 1002, 1007 (D.C. Cir. 1990) (citing Washington Post, 456 U.S. at 599 & 602).

In considering the scope of the "similar files" language, the D.C. Circuit "has observed that Exemption 6 'is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature....'" National Association of Home Builders v. Norton,

---

5/(...continued)
Exemption 6, the focus of the inquiry turns to whether disclosure of the records at issue "would constitute a clearly unwarranted invasion of personal privacy." U.S. Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 762 (1989); Nix v. United States, 572 F.2d 998, 1002 (4th Cir. 1978). This requires a balancing of the public's right to disclosure against an individual's right to privacy. See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv., 656 F.2d 856,862 (D.C. Cir. 1981).

309 F.3d 26, 32 (D.C. Cir. 2002) (*citing* Nat'l Ass'n of Retired Fed. Employees v. Horner, 879

F.2d 873, 875 (D.C. Cir. 1989)).  The D.C. Circuit has previously described this threshold as

"minimal."  Washington Post Co. v. HHS, 690 F.2d 252, 260 (1982).  Thus, the D.C. Circuit

held that the recorded voices of the NASA astronauts on the Space Shuttle Challenger constituted

information which applies to particular individuals," and therefore were "similar files" for

purposes of Exemption 6.  New York Times Company v. National Aeronautics and Space

Administration, 920 F.2d 1002, 1009-10 (D.C. Cir. 1990).

    In the present matter, the reports containing witnesses identities and statements fall within

the "similar files" language of Exemption 6.  The individuals' names and identifying information

contained in the investigative files were compiled in connection with an investigation into

violations of various crimes including a murder, drug trafficking, and a continuing criminal

enterprise.  Graham Decl. at ¶¶ 87.

## 2. **Exemption 7(C).**

    The threshold question in the Exemption 7(C) analysis is whether the "records or

information" were "compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  To establish

a law enforcement purpose, an agency must establish "(1) a rational nexus between the

investigation and one of the agency's law enforcement duties; and (2) a connection between an

individual or incident and a possible security risk or violation of federal law."  Id. (internal

citations omitted).  In the present matter, the ATF is a criminal investigative component of the

Department of Justice, and "[b]ecause the DOJ is an agency specializing in law enforcement, its

claim of a law enforcement purpose is entitled to deference."  Center for Nat. Sec. Studies v. U.S.

Dept. of Justice, 331 F.3d 918, 926 (D.C. Cir. 2003).  Additionally, as stated above, the

individuals' names, statements, and identifying information were compiled in connection with an investigation into violations of various crimes including a murder, drug trafficking, and a continuing criminal enterprise, and as such meet Exemption 7's threshold requirement of "records or information compiled for law enforcement purposes."

### 3.    Balancing Private and Public Interests.

Once it is determined that Exemptions 6 and 7(C) apply to the matters sought, the inquiry shifts to whether disclosure of the information "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), or "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). This inquiry involves, essentially, a weighing of the privacy interest of the parties involved against "the only relevant public interest in the FOIA balancing analysis - the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." Federal Labor Relations Authority, 510 U.S. at 497 (internal quotation marks omitted).

With respect to the public interest in the information, the D.C. Circuit has long held that the public interest contemplated by the FOIA is that of the general public, not a private litigant. Ditlow v. Shultz, 517 F.2d 166, 171-72 (D.C. Cir. 1975). The law is clear that Plaintiff's personal interest is entitled to no weight under the FOIA. Oguaju v. United States, 288 F.3d 448, 450, *judgment vacated sub nom,* Oguaju v. U.S. Marshals Service, 501 U.S. 970 (2004), *judgment reinstated,* Ogauju v. United States, 378 F.3d 1115 (D.C. Cir. 2004), *modified on other grounds*, 386 F.3d 273 (D.C.Cir. 2004). Thus, the FOIA was not intended to be an "administrative discovery statute for the benefit of private parties." Brown v. Federal Bureau of

24

Investigation, 658 F.2d 71, 75 (2nd Cir. 1981) (citing Ditlow, 517 F.2d at 171-72).  Nor did

Congress intend to make the Federal Government a "clearinghouse for personal information."

Reporters Committee for Freedom of the Press, 489 U.S. at 761.  As mentioned above, the sole

public interest in the FOIA balancing inquiry is to shed light on an agency's performance of its

statutory duties or otherwise let citizens know what their government is up to."  Federal Labor

Relations Authority, 510 U.S. at 497.[6/]

        In the absence of a public interest in the disclosure of the information withheld by the

Defendant, any privacy interest will tilt the scale in favor of withholding the information,

because, as the D.C. Circuit cogently observed, "something outweighs nothing, every time."

Oguaju, 288 F.3d at 451 (citing Nat'l Association of Retired Fed. Employees v. Horner, 879 F.2d

873, 879 (D.C. Cir. 1989)).

        In the present matter, the information withheld by the ATF is unlikely to add to the

public's understanding of how an agency works or how well it performs its duties.  The ATF

withheld reports that contain the names, titles, and other identifying information related to third

party individuals and witnesses interviewed by ATF during the course of the investigation, law

---

        [6/]        Additionally, if alleged government misconduct is the justification for the
requested release of records, "the public interest is insubstantial unless the requestor puts forth
compelling evidence that the agency denying the FOIA request is engaged in illegal activity and
shows that the information sought is necessary in order to confirm or refute that evidence."
Davis v. Department of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992).  Here, Plaintiff does not
allege that the records will reveal anything of any public interest with respect to the custodian of
the records, the ATF.  Nor does the information in question contain any information as to how
the ATF is performing its statutory duties.  In fact, Plaintiff does not allege, nor can he show, that
the requested records reflect anything about the agency denying his request or about the
government in general.  Indeed, his sole need for the information is for his criminal matter that is
pending before the Eighth Circuit Court.  As such, the public interest in the disclosure of the
requested recordings is absent.

enforcement officers, and other private individuals merely mentioned in ATF's files. Graham Decl. at ¶ 90. The third parties referenced in the responsive files are described in sufficient detail to allow for the identification of those third parties by persons familiar, and in some instance unfamiliar, with the circumstances and facts of ATF's investigation. Id. at ¶ 91. Those third parties could reasonably be expected to be embarrassed and humiliated by being associated with this investigation. Further, releasing information regarding the witnesses referenced in Plaintiff's files has the very real potential to endanger such witnesses or cause harassment and harm to the witnesses' lives and reputations. In addition, disclosure may well discourage future witnesses from cooperating with ATF. After balancing the interests at stake, ATF correctly determined that the types of personal information contained within its files must be withheld because disclosure of the information could reasonably be expected to cause the third parties referenced in its files and third party witnesses embarrassment, harassment, and harm, and would do little, if anything at all, to aid the public's understanding of the ATF.

The ATF also invoked Exemption (b)(7)(C) to protect the names and identifying information of third parties who were investigated by the ATF. Graham Decl. at ¶ 92. Disclosure of this information could reasonably be expected to constitute an unwarranted invasion of these third parties' privacy, because being associated with ATF's criminal investigation into Plaintiff's unlawful actions carries a stigmatizing and negative connotation. Thus, ATF correctly determined that the third parties possess a substantial privacy interest in not having this information disclosed.

The identities of the ATF Special Agents and other law enforcement personnel who were involved in the law enforcement operations are protected as well. The disclosure of the identities

26

of ATF Special Agents and other law enforcement personnel that appear in the file might

seriously prejudice their effectiveness in conducting investigations to which they are assigned or

subject them to unwarranted harassment.  Indeed, Plaintiff has been convicted of killing a

witness against him, as well as a law enforcement office.  The fact that the Plaintiff may know, or

be able to independently determine the identities of some agents or other law enforcement

personnel whose names have been withheld, does not diminish the exemption's protection of

these individuals.  Consequently, the substantial privacy interest, which is protected by

withholding this information, outweighs any minimal public interest that would be served by its

release, and the information is exempt under FOIA Exemption 6 and 7(C).

  D.    **FOIA Exemption 7(D) Prohibits the Disclosure of Confidential Sources and Information.**

Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), exempts from disclosure material that: "could

reasonably be expected to disclose the identity of a confidential source . . . in the case of a record

or information compiled by a criminal law enforcement authority in the course of a criminal

investigation[.]"  When a source has not expressly been granted a promise of confidentiality,

certain circumstances characteristically support an inference of implied confidentiality.  Indeed,

Exemption 7(D) recognizes that information furnished by third parties cooperating with Federal,

state or local law enforcement investigations is, by its very nature confidential.  Significantly, the

statute affords protection from disclosure to all the information furnished by third-party sources,

as well as the actual identity of the cooperating individual, if circumstances exist from which

such an assurance could reasonably be inferred.  U.S. Dept. of Justice v. Landano, 508 U.S. 165

(1993).  Those circumstances include the nature of the witness' ongoing relationship with the

27

agency, use of locations and conditions which assure the contact will not be noticed, the

character of the crime being investigated and the source's relation to the nature of the crime.  Id.

at 179.  Notably, when addressing the "nature of the crime being investigated," the Supreme

Court recognized that witnesses to the murder of a police officer or a witness would naturally, be

unwilling to speak with a law enforcement agency "except on the condition of confidentiality."

Id. at 179-180.

Here, it is the experience of ATF that violations of the Federal firearm laws often consist

of, or are accompanied by acts of violence, and that individual who provide information

concerning these crimes face a very real possibility of violent reprisal.  Graham Decl. at ¶ 98.

That experience became a reality in this instance, as Plaintiff was convicted of murdering a

police officer and a grand jury witness, and multiple individuals involved with Plaintiff's trial

were placed into the witness protection program.  Id.   Thus, it is reasonable to infer that at the

time the individual's cooperation was secured, the individual expected that his/her identity and

the information he/she provided was on a confidential basis and that it would remain so, and all

information relating to the witnesses and the information provided by them is protected from

disclosure.

**E.    FOIA Exemption 7(F) Protects the Identities of Witnesses and Law
        Enforcement Persons for Safety Reasons.**

The personal information of witnesses and law enforcement officers was also properly

redacted under FOIA exemption (b)(7)(F), which permits the withholding of information

necessary to protect the physical safety of a wide range of individuals.  This exemption provides

broad protection to "any individual" when disclosure of information about him "could reasonably

28

be expected to endanger [his] life or physical safety." 5 U.S.C. § 552(b)(7)(F).  The dangers

present by Plaintiff and his organization towards witnesses and law enforcement officials is

readily ascertainable in this matter.  Graham Decl. at ¶ 64.  Providing personal information and

identifying information would result in retribution or revenge by Plaintiff and others for their

participation in the investigation, which presents a clear danger to the witnesses, law enforcement

officers, their families and associates.  Carbe v. Bureau of Alcohol, Tobacco and Firearms, 2004

WL 2051359, at 7 (D.D.C. 2004) (Exemption 7(F) permits withholding names and identifying

information of federal employees and third persons in connection with a particular law

enforcement matter); Brady-Lunny v. Massey, 185 F.Supp.2d 928,932 (C.D. Ill. 2002) (release of

federal detainees' names would endanger life and physical safety given security risks that are

always present in inmate populations).

## F.    Information Regarding Law Enforcement Techniques Was Properly Withheld.

Exemption 7(E) affords protection to all law enforcement information that "would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could

reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552 (b)(7)(E).

The ATF withheld all reports and notes that detail surveillance techniques that are not

widely known to the public, specifically, the circumstances under which the techniques were

used, the specific timing of their use, and the specific location where they were employed.   If

disclosed, this information would illustrate the agency's strategy in implementing these specific

techniques, including the timing of certain actions and the placement of certain agency resources

29

in the implementation of the technique.  This could lead to a decreased effectiveness in future

investigations by allowing potential subjects to anticipate the circumstances under which such

techniques could be employed and identify such techniques as they are being employed.

## V.    THE DOCUMENTS ARE NOT SEGREGABLE.

Under FOIA, agencies withholding records are required to release "any reasonably

segregable portion" thereof.  5 U.S.C. § 552(b).  When the agency has met its burden of show

that a category of records are exempt and related to the continuing investigation under Exemption

7(A), there are no non-exempt portions of the records to segregate, and the entire category is

protected.  Cucci, 871 F. Supp. at 512.

Moreover, even under the alternative exemptions set forth by Defendant, the information

is not segregable.  As is demonstrated in the Declaration of Avrill Graham, Plaintiff analyzes all

information obtained in his criminal matter, and, using mosaic-like processes, makes assessments

of who provided evidence against him or his friends, calculates his criminal behavior and

influences the criminal behavior of others associated with him.  Graham Decl. at ¶ 113.  Plaintiff

was convicted and/or is known to have murdered, conspired to, threatened to, and/or attempted to

murder suspected informants, police, prosecutors, and others who he perceived as having

interests adverse to his own.  Id.  Thus, even what may be considered non-relevant or

non-sensitive items would, if released, enable him to misuse information for criminal and

obstructive purposes designed to interfere with law enforcement proceedings and to commit

further crime, whether by himself or others he influences.  Seemingly innocuous materials would

fit within a mosaic or matrix of information he has acquired and retained, together with that of

his followers, enabling him to disrupt and obstruct orderly enforcement proceedings.  For

example, in regards to the grand jury witness who was assassinated pursuant to Plaintiff's order;

it was carried out because Plaintiff knew of the witness' other troubles with the law (i.e., had

intelligence about the matter) and evidently perceived that the pressure on the witness to

cooperate outweighed the assurances the witness attempted to provide that they would not testify

against him.  Graham Decl. at ¶ 113.  Thus, providing any information from the investigation file

would result in the retaliation toward persons that Plaintiff perceives to have worked against him

and his criminal enterprise.  Accordingly, the 1983 file is not reasonably segregable, and

judgment should be entered in favor of Defendant.

## **CONCLUSION**

For the above reasons, the Defendant's Motion for Summary Judgment should be granted

and judgment should be entered in favor of Defendant.

Respectfully submitted,

    /s/ Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

    /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. Bar No.  434122
Assistant United States Attorney

    /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

31

**CERTIFICATE OF SERVICE**

I certify I caused copies of the foregoing Defendant's Motion for Summary Judgment, the

Memorandum of Points and Authorities in Support thereof, and the Statement of Material Facts

as to Which There is No Genuine Dispute of Fact to be served by first class mail upon *pro se*

plaintiff at:

Jerry Lewis Bey
Reg. No. 22328-044
Federal Correction Institution
P.O. Box 725
Edgefield, SC 29824


on this 31st day of March, 2006.


   /s/ Darrell C. Valdez
DARRELL VALDEZ, D.C. Bar #420232
Assistant United States Attorney

32