UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JERRY LEWIS BEY, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 05-02241 (JGP) |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, | ) | |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

DECLARATION OF AVERILL P. GRAHAM,
CHIEF, DISCLOSURE DIVISION,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

I, Averill P. Graham, do hereby depose and say:

1.    I am the Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), a component of the United States Department of Justice (DOJ).  In this

capacity, I receive all requests made of ATF under the Freedom of Information Act (FOIA), 5

U.S.C. § 552, and the Privacy Act of 1974 (PA), 5 U.S.C. § 552a.   In this capacity, I also review

all requests referred to ATF from other agencies that have located ATF-originated documents in

their records while processing their FOIA and PA requests.  I am responsible for processing all

FOIA and PA requests, initiating searches relevant to such requests, supervising the

determination of what records should be disclosed, processing all documents referred to ATF and

to other agencies, and recording all administrative appeals filed with ATF.

2.    I declare that the statements made in this Declaration are on the basis of knowledge

acquired by me in the performance of my official duties.  I am familiar with the procedures

followed by this office in responding to plaintiff's FOIA request.  ATF believes that it properly

withheld certain information responsive to plaintiff's request under Exemption (b)(7)(A).

## Chronology

3.     On July 23, 1997, ATF's St. Louis Field Division received from plaintiff a FOIA request

dated July 4, 1997. By said letter plaintiff requested various ATF records pertaining to him.   A

copy of the July 4, 1997, letter is attached as Exhibit A.

4.     By letter dated August 14, 1997, ATF's Disclosure Division acknowledged receipt of

plaintiff's request.  The Disclosure Division informed plaintiff that under provisions of the FOIA

he would need to identify himself under a specific "category of requestor" to determine the fees

associated with his request.  Furthermore, the Disclosure Division informed plaintiff that no

action would be made until the fee issue was resolved.  A copy of the August 14, 1997, letter is

attached as Exhibit B.

5.     On September 9, 1997, ATF's Disclosure Division received by mail a letter from plaintiff

dated August 27, 1997, in which he provided that he was an "all other requestor." A copy of the

August 27, 1997, letter is attached as Exhibit C.

6.     By letter dated September 23, 1997, ATF's Disclosure Division informed plaintiff that

his letter dated August 27, 1997, identifying the category in which the FOIA should be processed

had been received. However, the Disclosure Division still required a firm agreement to pay costs

associated with that category. As such, plaintiff was asked to submit a firm agreement to pay

costs not to exceed an estimated cost of $56.00. A copy of the September 23, 1997, letter is

attached as Exhibit D.

7.     On October 10, 1997, the Disclosure Division received by mail a letter from plaintiff

dated September 29, 1997, in which he indicated an "intention" to pay all fees associated with

the processing of his FOIA request. A copy of the September 29, 1997, letter is attached as Exhibit E.

8.    By letter dated October 20, 1997, the Disclosure Division replied to plaintiff informing him that his "intention" to pay fees did not qualify as a firm agreement. The Disclosure Division again asked plaintiff for a firm agreement to pay all costs associated with processing his FOIA request. A copy of the October 20, 1997, letter is attached as Exhibit F.

9.    On November 5, 1997, the Disclosure Division received by mail a letter from plaintiff dated October 25, 1997, which included a firm agreement to pay all costs associated with processing his FOIA request.  A copy of the October 25, 1997, letter is attached as Exhibit G.

10.    By letter dated November 24, 1997, the Disclosure Division denied plaintiff's request pursuant to FOIA Exemption (b) (7) (A).  The Disclosure Division advised plaintiff that the information he sought related to on-going enforcement proceedings. Furthermore, plaintiff was advised that upon the completion of his 28 U.S.C. § 2255 action pending before the United States Court of Appeals (Eighth Circuit) he should resubmit his request. Finally, the Disclosure Division provided plaintiff with instructions on how to file an administrative appeal.  A copy of the November 24, 1997, letter is attached as Exhibit H.

11.    On April 24, 2000, twenty-nine months after the last correspondence from plaintiff, the Disclosure Division received a letter by mail dated April 4, 2000, indicating that plaintiff wished reconsideration of the November 24, 1997, denial of his FOIA request.  A copy of the April 4, 2000, letter is attached as Exhibit I.

12.    By cover-letter dated June 2, 2000, the Disclosure Division granted plaintiff's request in part. The Disclosure Division released 100 partially redacted pages and additionally, advised plaintiff that another 357 pages remained in the file which he could receive upon receipt of the

associated fee of $52.50. Redactions were made pursuant to FOIA Exemptions (b)(2), (b)(3) Fed. R. Crim. P. 6(e), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Finally, the Disclosure Division provided plaintiff with instructions on how to file an administrative appeal. A copy of the June 2, 2000, letter is attached as Exhibit J.

13.   By cover- letter dated June 10, 2000, plaintiff provided the Disclosure Division with a Western Union money order in the amount of $52.55, for the remaining records.  A copy of the June 10, 2000, letter is attached as Exhibit K.

14.   By letter dated July 3, 2000, the Disclosure Division released in part the remaining 357 pages to plaintiff. Portions of these documents were again redacted pursuant to FOIA Exemptions (b)(2), (b)(3) Fed. R. Crim. P 6(e), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Furthermore, plaintiff was provided with the procedures on how to file an administrative appeal. A copy of the July 3, 2000, letter is attached as Exhibit L.

15.   On July 27, 2000, the Disclosure Division received from plaintiff a letter dated July 17, 2000, acknowledging  receipt of the documents released under the FOIA. Plaintiff referenced his July 4, 1997, request and informed the Disclosure Division that he believed additional documents associated with an investigation from as early as 1983 continued to be maintained by ATF. A copy of the July 17, 2000, letter is attached as Exhibit M.

16.   On August 3, 2000, the Disclosure Division received a FOIA request by mail form plaintiff dated July 27, 2000, seeking records on a Mr. Fred Knox.[1] A copy of July 27, 2000, letter is attached as Exhibit N.[2]

17.   On August 14, 2000, the Disclosure Division received yet another FOIA request from plaintiff, also dated July 27, 2000. By this request plaintiff sought all records related to an

---

[1] Mr. Fred Knox was a grand jury witness plaintiff was convicted of murdering.
[2] This same request was also sent to the Departmental Office of the Department of the Treasury and eventually received by ATF on September 6, 2000. (Exhibit O)

alleged pen-register and surveillance conducted on him in 1986 by ATF. A copy of the July 27, 2000 letter is attached as Exhibit P.[3]

18. By letter dated August 30, 2000, the Disclosure Division acknowledged plaintiffs three FOIA requests (Exhibit's M, N, and P). The Disclosure Division informed plaintiff that a search was being conducted for the information he requested. A copy of the August 30, 2000, letter is attached as Exhibit R.

19. By letter dated September 29, 2000, the Disclosure Division addressed plaintiff's multiple requests for information. Specifically, the Disclosure Division informed plaintiff that (a) pen-register information was denied pursuant to FOIA exemptions (b) (7) (E) and (b) (7) (C) and that pursuant to a search no video appears to exists; (b) ATF does not maintain any file on plaintiff prior to 1988; and (c) documents related to Mr. Fred Knox were released in part. Portions of the released documents were redacted pursuant to Exemptions (b)(7)(C), (b)(7)(D), and (b)(7)(E). Additionally, plaintiff was provided with instructions on how to file an administrative appeal. Plaintiff never appealed this decision. A copy of the September 29, 2000 letter is attached as Exhibit S.

20. On June 18, 2001, the Disclosure Division received from plaintiff a letter dated May 11, 2001 requesting information on himself from an alleged 1983 investigation by ATF. A copy of the May 11, 2001, letter is attached as Exhibit T.

21. By letter dated June 20, 2001, the Disclosure Division sent plaintiff a letter informing him that as previously stated in a September 29, 2000, letter, no records relating to a 1983 investigation were located. A copy of the June 20, 2001, letter is attached as Exhibit U.

---

[3] This same request was also sent to the Departmental Office of the Department of the Treasury and eventually received by ATF on September 6, 2000. (Exhibit Q)

22.  By letter dated June 26, 2001, the Disclosure Division sent plaintiff a second letter informing him that no records relating to a 1983 investigation were located.  Additionally, the Disclosure Division advised plaintiff that they would continue to work with him to locate records if he provided more information.  A copy of the June 26, 2001, letter is attached as Exhibit V.

23.  On July 9, 2001, the Disclosure Division received by mail a letter dated July 5, 2001 from plaintiff requesting a report written by an unknown ATF Agent on May 23, 1983, and other various reports.  A copy of the July 5, 2001, letter is attached as Exhibit W.

24.  By letter dated July 23, 2001, the Disclosure Division again informed plaintiff that ATF had no records on a 1983 investigation.  The Disclosure Division also reminded plaintiff that in addition to the 1988 file he received, another 1988 file pertaining to the "Moorish Science Temple" was located and available upon request (ATF investigative file 33290 88 1540G).  A copy of the June 23, 2001, letter is attached as Exhibit X.

25.  On August 6, 2001, the Disclosure Division received from plaintiff a letter dated July 31, 2001, acknowledging receipt of our July 23, 2001 correspondence and requesting the aforementioned 1988 case file pertaining to the "Moorish Science Temple." A copy of the July 31, 2001, letter is attached as Exhibit Y.

26.  By letter dated August 13, 2001, the Disclosure Division informed plaintiff that the status of his case was verified and determined to be open on appeal.[4] Consequently, the request was denied pursuant to FOIA Exemption (b) (7) (A).  Additionally, plaintiff  was provided with instructions on how to file an administrative appeal.  A copy of the August 13, 2001 letter is attached as Exhibit Z.

---

[4] Upon consultation with the United States Attorney's Office (USAO) for the Eastern District of Missouri (EDMO).

27.   On August 28, 2001, the Disclosure Division received by mail a letter from plaintiff dated August 20, 2001, requesting reconsideration of the August 13, 2001, denial. A copy of the August 20, 2001, letter is attached as Exhibit AA.

28.   By letter dated September 10, 2001, the Disclosure Division advised plaintiff that his only recourse at this time would be an administrative appeal. A copy of the September 10, 2001, letter is attached as Exhibit BB.

29.   On September 25, 2001, the Disclosure Division received by mail a letter from plaintiff dated September 13, 2001, appealing the denial of his FOIA request.  A copy of the September 13, 2001, letter is attached as Exhibit CC.

30.   By letter dated September 26, 2001, the Disclosure Division acknowledged receipt of plaintiff's FOIA appeal received September 25, 2001. A copy of the September 26, 2001, letter is attached as Exhibit DD.

31.   By letter dated December 12, 2001, ATF's Assistant Director (Liaison and Public Information) upheld the Disclosure Division's August 13, 2001, decision. A copy of the December 12, 2001, letter is attached as Exhibit EE.

32.   On January 17, 2002, the Disclosure Division received a FOIA referral from the Executive Office for United States Attorneys (EOUSA) dated December 26, 2001. EOUSA advised that that they located records responsive to plaintiff's request which originated from ATF.   A copy of the December 26, 2001, letter is attached as Exhibit FF.[5]

33.   By letter dated January 16, 2002, the Disclosure Division received by mail a letter from plaintiff dated December 12, 2001, informing ATF that his case was no longer open on appeal.

_____

[5]   By letter dated January 23, 2002, the Disclosure Division directly responded to the plaintiff's EOUSA FOIA request.  The Disclosure Division informed Plaintiff that EOUSA had referred documents for processing and furthermore that parts of those documents were denied pursuant to FOIA Exemptions (b)(2),(b)(5), and (b)(7)(C). Finally, instructions on how to file an administrative appeal were provided.  A copy of the January 23, 2002, letter is attached as Exhibit HH.

A copy of a United States Court of Appeals (Eighth Circuit) Judgment, dated November 12, 2001, was attached to plaintiff's letter. A copy of the December 12, 2001, letter is attached as Exhibit GG.

34.    By letter dated January 24, 2002, the Disclosure Division informed plaintiff that ATF was advised his case remained pending and as such would continue to be denied under FOIA Exemption (b)(7)(A). The Disclosure Division further advised plaintiff that he should resubmit his request when all issues were adjudicated.  Finally, the Disclosure Division provided plaintiff with instructions on how to file an administrative appeal. A copy of the January 24, 2002, letter is attached as Exhibit II.

35.    On September 11, 2002, the Disclosure Division received by mail a letter from plaintiff dated August 5, 2002, again requesting a 1983 investigative case file regarding himself and the Moorish Science Temple of America.  A copy of the August 5, 2002, letter is attached as Exhibit JJ.

36.    By letter dated October 16, 2002, the Disclosure Division responded to plaintiff and informed him that his request was again denied. Upon consultation with the United States Attorneys Office, (EDMO), the Disclosure Division was advised that litigation relating to the requested file continued and could reasonably be expected to interfere with enforcement proceedings. As such, responsive information was denied pursuant to Exemption (b) (7) (A). Finally, appeal rights were again provided to plaintiff.  A copy of the October 16, 2002, letter is attached as Exhibit KK.

37.    On November 7, 2002, the Disclosure Division received by mail a letter from plaintiff dated October 28, 2002.  Plaintiff again pled that all appeals relating to his criminal conviction had been closed and no litigation remained pending. Plaintiff again requested that all records

responsive to his request be released. A copy of the October 28, 2002, letter is attached as Exhibit LL.

38.    By letter dated November 13, 2002, the Disclosure Division responded to the plaintiff's October 28, 2002 letter and informed him that by letter dated October 16, 2002, the records were denied and appeal rights were afforded. A copy of the November 13, 2002, letter is attached as Exhibit MM.

39.    On May 27, 2003, the Disclosure Division received by mail a letter from plaintiff dated May 15, 2003, in which he sought to re-submit his FOIA request for the same material. A copy of the May 15, 2003, letter is attached as Exhibit NN.

40.    By letter dated May 29, 2003, the Disclosure Division responded to plaintiff and again informed him that his request was denied due to a verified on-going proceeding. Plaintiff was also provided with instructions on how to file an administrative appeal. A copy of the May 29, 2003, letter is attached as Exhibit OO.

41.    On August 8, 2003, the Disclosure Division received by mail a letter (with enclosures) from plaintiff dated July 30, 2003, again requesting a copy of a June 7, 1983, ATF report.[6] In addition, plaintiff inquired if the 1988 ATF investigative file (33290 88 1540G) would be releasable. A copy of the July 30, 2003, letter is attached as Exhibit PP.

42.    By letter dated August 12, 2003, the Disclosure Division responded to plaintiff by informing him that ATF was advised the June 7, 1983, report was still related to an ongoing

---

[6] Based on the information provided by plaintiff in this July 30, 2003, letter, ATF was able to finally locate a responsive 1983 case file. This investigative file, 33920 83 1501Y, was located in ATF's St. Louis Field Division but did not, and continues not to be reflected in ATF's only indexed criminal database used prior to 1997, the Treasury Enforcement Communications System (TECS). The Disclosure Division relies on this database to provide a complete itemization of what exists in ATF Field Divisions. The 1983 file was located well outside of typical FOIA search procedures.

investigation and accordingly his request was denied. Exemptions and appeal rights were noted on the letter. A copy of the August 12, 2003, letter is attached as Exhibit QQ.

43.    On September 8, 2003, the Department of Justice's, Office of Information and Privacy (OIP) received by mail a letter from plaintiff dated August 24, 2003, appealing the Disclosure Divisions August 12, 2003, decision.[7]   A copy of the August 24, 2003, letter is attached as Exhibit RR.[8]

44.    By letter dated January 6, 2004, the Disclosure Division granted-in-part plaintiff's request for the June 7, 1983 report. Portions of the document were withheld pursuant to Exemptions (b)(2), (b)(7)(C), and (b)(7)(D). Furthermore, plaintiff was provided with appeal rights. A copy of the January 6, 2004, letter is attached as Exhibit SS.

45.    On February 2, 2004, the Disclosure Division received by mail a letter dated January 24, 2004, from plaintiff requesting ATF File No. 7665 0683 1501 L (01), part of the same 1983 file previously requested and denied pursuant to Exemption (b)(7)(A).[9] A copy of the January 24, 2004, letter is attached as Exhibit TT.

46.    On February 19, 2004, the Disclosure Division responded to the plaintiff informing him that once again, upon consultation with those familiar with the case, it was determined that judicial action was ongoing, subsequently his request was denied pursuant to Exemption (b)(7)(A).   Appeal rights were again provided to plaintiff.   A copy of the February 19, 2004, letter is attached as Exhibit UU.

47.    On March 9, 2004, the Disclosure Division received by mail a letter from plaintiff dated March 1, 2004, in which he asked the Disclosure Division to re-review the records, the status of

---

[7] Pursuant to the Homeland Security Act of 2002 (P.L. 107-296) ATF became part of the Department of Justice (DOJ). Under DOJ policy all administrative appeals are handled by OIP.
[8] OIP remanded a portion of plaintiff's request to the Disclosure Division with instructions to release the June 7, 1983 report.
[9] ATF File No. 7665 0683 1501 L (01) is in actuality a part of ATF File No. 33920 83 1501Y. See ¶41.

his litigation, and honor his FOIA request.  A copy of the March 1, 2004, letter is attached as Exhibit VV.

48.    By letter dated March 15, 2004, the Disclosure Division responded to the plaintiff informing him that his request continued to be denied as the information reasonably was expected to interfere with law enforcement proceedings.  Plaintiff was again provided with instructions on how to file an appeal.  A copy of the March 15, 2004, letter is attached as Exhibit WW.

49.    On June 22, 2004, the Disclosure Division received by mail a letter dated June 15, 2004, from plaintiff stating his petitions before the Court of Appeals were denied as of June 4, 2004, and he would like to resubmit his FOIA request.  A copy of the June 15, 2004, letter is attached as Exhibit XX.

50.    By letter dated July 28, 2004, OIP responded to the administrative appeal filed by plaintiff on August 24, 2003, affirming ATF's decision to withhold the 1983 investigative file pursuant to Exemption (b)(7)(A).  A copy of the July 28, 2004, letter is attached as Exhibit YY.

51.    By letter dated August 10, 2004, the Disclosure Division acknowledged receipt of plaintiff's June 15, 2004, request.  ATF again informed plaintiff that his request continued to be denied due to open judicial proceedings.  The letter further explained plaintiff's right to appeal.  A copy of the August 10, 2004, letter is attached as Exhibit ZZ.

52.    On September 1, 2004, the Disclosure Division received by mail a letter from plaintiff dated August 23, 2004, stating that his Court of Appeals case was closed as of July 7, 2004.  The plaintiff again requested all files related to him be released.  A copy of the letter dated August 23, 2004, is attached as Exhibit AAA.

53.    By letter dated September 30, 2004, the Disclosure Division responded to the plaintiff informing him that his request continued to be denied because the information reasonably was expected to interfere with law enforcement proceedings.  Plaintiff was again provided with instructions on how to file an appeal.  A copy of the September 30, 2004, letter is attached as Exhibit BBB.

54.    On May 2, 2005, the Disclosure Division received by mail a letter from plaintiff dated April 25, 2005, for the same records previously request.   A copy of the letter dated April 25, 2005, is attached as Exhibit CCC.

55.    On May 10, 2005, the St. Louis Field Division received by mail a letter dated April 28, 2005, from plaintiff requesting the same file previously requested by the April 25, 2005, letter to the Disclosure Division. A copy of the April 28, 2005, letter is attached as Exhibit DDD.

56.    On June 9, 2005, the Disclosure Division responded to the plaintiff's FOIA requests dated April 25, 2005 and April 28, 2005.  The letter explained that, pending the response from the Field Division, it was anticipated his request would be granted-in-part.[10]  A copy of the June 9, 2005, letter is attached as Exhibit EEE.

57.    By letter dated July 18, 2005, the Disclosure Division advised plaintiff that ATF had again contacted the United States Attorney's Office (EDMO) and was informed that plaintiff had ongoing appeals of his criminal conviction. Accordingly, the Disclosure Division denied plaintiff's request pursuant to Exemption (b)(7)(A). Finally, the letter provided plaintiff with instructions on how to file an administrative appeal. A copy of the letter dated July 18, 2005, is attached as Exhibit FFF.

---

[10] Plaintiff represented in his April 25, 2005, letter that the Eighth Circuit had denied his last appeal; it was therefore presumed that the underlying file could be released. However, follow-up between the Disclosure Division and the USAO (EDMO) revealed that plaintiff in fact still had on-going cases related to his conviction pending before the Eighth Circuit. Specifically, case 05-2447 was filed in the Eighth Circuit on May 26, 2005, and remains open at present.

58.   On August 10, 2005, OIP received by mail an appeal letter from plaintiff dated July 29, 2005. Specifically, plaintiff questioned the continued use of Exemption (b)(7)(A).  A copy of the July 29, 2005, letter is attached as Exhibit GGG.

59.   By letter dated August 16, 2005, OIP acknowledged the plaintiff's appeal. A copy of the August 16, 2005, letter is attached as Exhibit HHH.

60.   By letter dated September 6, 2005, OIP upheld the Disclosure Division's July 18, 2005, decision. A copy of the September 6, 2005 letter is attached as Exhibit III.

## Exemptions

### PRIVACY ACT
### (j)(2) EXEMPTION

61.   The records plaintiff requested concerning himself are located in a system of records entitled "Criminal Investigation Report System." See 28 C.F.R. § 16.106(a) (1) (2005).  This system of records is exempt from the access provision of the Privacy Act, 5 U.S.C. § 552a (d) (1), pursuant to subsection (j) (2) of the Act, as implemented by 28 C.F.R. § 16.106. Therefore, in order to provide plaintiff with the greatest possible access to these requested records, ATF reviewed all records for release under FOIA.

### FOIA EXEMPTION 7 THRESHOLD

62.   ATF is a criminal and regulatory enforcement agency within the Department of Justice and is responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968, 18 U.S.C. §§ 921-930, the Federal explosives laws, 18 U.S.C. Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter 53.  See 28 C.F.R. § 0.130.

### FOIA EXEMPTION (b)(7)(A)
### ON-GOING LAW ENFORCMENT PROCEEDINGS

63.   The primary legal basis for withholding the information challenged by plaintiff in this case is the exemption set forth in 5 U.S.C. § 552(b)(7)(A).  This exemption applies to records or

information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with law enforcement proceedings.

64.    In this instance, throughout the record plaintiff has had various appeals, petitions for rehearing, and 28 U.S.C. § 2255 motions before the U.S. District Court (EDMO) and the U.S. Court of Appeals (Eighth Circuit) all related to his convictions in 1993 for multiple murders, including that of a St. Louis Deputy Sheriff and a Grand Jury witness, along with participating in a criminal enterprise.[11] As a result of these convictions, plaintiff is serving multiple life sentences. I have been advised by the United States Attorney's Office (EDMO) that the plaintiff has a petition pending before the Eighth Circuit seeking to overturn his convictions. See. Jerry Lewis Bey v. United States, (05-2447) (Filed May 26, 2005).

65.    The records withheld from plaintiff are investigatory records compiled for law enforcement purposes as they pertain to an investigation conducted by multiple law enforcement agencies, including ATF, regarding plaintiff's large-scale criminal drug organization. A document by document review reveals that these records consist of ATF Reports of Investigation, the investigator's contemporaneous notes, and various activity reports. ATF was assisting the Federal Bureau of Investigation, the Drug Enforcement Agency and St. Louis Police Department in this investigation.

66.    The records withheld from plaintiff consist of Reports of Investigation prepared by ATF during the course of the investigation into plaintiff.  I have been informed by the Assistant United States Attorney (AUSA), who was the primary prosecutor in plaintiff's criminal investigation, the case remains open insofar as plaintiff continues to file petitions seeking to

---

[11] Cases before the Eighth Circuit included 93-3452, 01-1342, 02-1205, 04-1119, 04-1297, 04-2197, 04-4160; U.S. District Court cases include 01-0299, 03-1865, 04-1285.

overturn his conviction. [12] Any release of the information identified as (b)(7)(A) could reasonably be expected to interfere with these continued law enforcement proceedings. Specifically, the aforementioned AUSA, who has 28 years of prosecutorial experience, has asserted that the limited prior FOIA releases made by ATF and the FBI to plaintiff have interfered with the on-going proceedings. He provides that plaintiff takes matters (e.g., transcripts, reports) out of context, flatly misquotes them and makes illogical assertions based upon material he has previously received under the FOIA.

67.    More important, the reports of investigation contain summaries of the agents' activities, witness names and other identification, witness background information, information provided by witnesses, evidence inventory. As was shown at length in his criminal trial, plaintiff collects intelligence about himself, his co-racketeers, his competitors and law enforcement personnel (an exhibit at his trial was a seized massive compilation of news clippings, police reports/excerpts and like materials that his enterprise relied upon to help advance their crimes). The information plaintiff collects is used either to further criminal acts or circumvent the criminal discovery process. Plaintiff has been linked to criminal behavior outside of prison despite his being imprisoned since 1991. For example, I have been advised that narcotics investigators developed information, a few years ago, that plaintiff was involved in a narcotics distribution conspiracy while incarcerated at Leavenworth Federal prison, that allegedly influenced and conducted narcotics sales in the Kansas City and St. Louis areas. Testimony at plaintiff's trial indicated the investigation missed some $400,000 in drug proceeds which have never been found and which were removed from a hiding place by his associates; thus, his control over these funds, or the indebtedness of any who have benefited from them since his

---

[12] This AUSA was consulted throughout plaintiff's various FOIA requests starting in 1997 and as recent as March 22, 2005.

conviction, helps provide plaintiff influence which could enable him to retaliate against witnesses, informants, police and others who he merely believes are responsible for his conviction, whether or not his belief is accurate. For example, he is known to have caused the killing of person(s) he believed to be an informant(s).  I have been informed by the AUSA that plaintiff's transparent efforts to serve as a clearing house for information he has previously been provided under the FOIA is misused to the extent that he or his imprisoned peers (and/or his street loyalists) can misuse the information, and not just in his, or their, ill-fated legal proceedings, comports with his proven history of "counterintelligence" gathering to the detriment of his victims and public order.  I was advised by the USAO (EDMO) that Plaintiff was known to conduct pre-incarceration meetings with his co-racketeers in which they went over what was known or suspected, regarding, for example, who might be "snitches" or how a recent assassination had been conducted and what might be learned from the process, as assessed against other collected information, for future use. Should he ever gain a re-trial via his collateral attacks, it is more than reasonable to believe that witnesses and their families would be physically attacked and/or intimidated through use of information he would access if the underlying materials were released. See. United States vs. Jerry Lewis Bey, et al, No. 91-1CR(6) (E.D. Mo. June 15, 1993).

68.    ATF investigative notes describe what has transpired in an investigation during a particular reporting period along with detailed plans for future investigative activity.  The reports discuss the investigative efforts of other law enforcement officers in addition to ATF personnel.

69.    The activity reports in this case are accompanied by numerous witness statements, property transmittal reports (pertaining to photographs, fingerprints, handwritten letters, and

evidence submitted for laboratory analysis), local law enforcement incident reports, case summary reports, and property inventory reports.

70.   Premature release of witness statements has the very real potential to endanger such witnesses or cause harassment and harm to the witness' safety and/or reputation.  In addition, disclosure may well discourage future witnesses from cooperating with ATF. As previously stated, plaintiff has proven the extent to which he will retaliate against those who testify or provide information against him, including Grand Jury witnesses and law enforcement personnel.

71.   Disclosure of property transmittal reports would reveal investigative techniques and the scope, limits, and direction of the investigation against others in his organization who were convicted or are still targets.

72.   Disclosure of local law enforcement incident reports or investigative notes would also reveal investigative techniques, scope, limits, direction of the investigation, and the investigators mental impressions and strategy.  Disclosure of this material could interfere with future cooperative efforts with local law enforcement agencies.

73.   Case summary reports summarize investigative efforts and plans for future investigative activity, and would reveal the scope, limits, and direction of the investigation.

74.   Property inventory reports describe the handling of property seized by the Bureau during the course of an investigation.  Disclosure of this information would reveal the full scope, limits, and direction of the investigation of the Moorish Science Temple and others.

FOIA EXEMPTION (b) (2)
INTERNAL ADMINISTRATIVE MATTERS

75.   Exemption (b)(2) of FOIA protects from disclosure material "related solely to the internal personnel rules and practices of an agency," including predominantly internal matters the disclosure of which would risk circumvention of agency regulations or statutes.

76.   Information in the responsive records consists of internal administrative codes.  For instance, laboratory and property tracking numbers or general file numbers. This information is for either administrative and/or law enforcement purposes only and is of no legitimate interest to the public.  Disclosure of this material is either trivial and of no public interest or, if disclosed, would risk circumvention of the law.

77.   Exemption (b)(2) is being invoked for information contained in the Treasury Enforcement Communications System (TECS), a law enforcement database used by ATF to conduct criminal history checks. The data displayed on screen prints of TECS records is redacted for the following reasons. Information displayed identifies the terminal from which a query was accomplished by a terminal ID and a logical unit ID to show its mainframe connection. The remaining data relates to the software applications that identify how the displayed record was retrieved: specifically, the software program mapping code, the routing codes within the program that allows the query to move from screen to screen, and the codes that allow movement to other programs from the displayed screen.  These sensitive codes are information that, in the hands of computer literate individuals with mainframe knowledge, could provide information on the structure of the mainframe system used and expose the system to circumvention.  Further, disclosure could facilitate unauthorized access to TECS and interfere with investigations and law enforcement activities at all levels.

78.    The documents withheld from plaintiff also include computer codes from other Federal law enforcement computer databases (e.g. NCIC, NLETS) and law enforcement computer databases maintained by the State of Missouri. The principles described in ¶77 regarding ATF's TECS Database apply equally to these databases.

FOIA EXEMPTION (b) (3)<br>DISCLOSURE PROHIBITED BY STATUTE

79.    Exemption (b)(3) of FOIA permits withholding information prohibited from disclosure by another statute only if one of two disjunctive requirements are met.  The statute either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  A statute thus falls within the Exemption's coverage if it satisfies any one of its disjunctive requirements.  Plaintiff's file contained material subject to Fed. R. Crim. P. 6(e) and 26 U.S.C. §6103 both of which clearly fall under Subpart (A) of Exemption (b)(3).

FED. R. CRIM. P. 6(e) THRESHHOLD

80.    Fed. R. Crim. P. 6(e) meets the threshold of Exemption (b) (3) because it exempts matters before the Grand Jury from disclosure.

81.    The scope of the secrecy that must be afforded Grand Jury material is necessarily broad, and consequently encompasses not only the direct revelation of Grand Jury transcripts but also the disclosure of information which would reveal the identities of witnesses or jurors, the substance of the testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.

82.    The information in the excluded material includes investigative techniques and the

identities of potential witnesses. If disclosed, this material would reveal protected inner

workings of Grand Jury proceedings, including, most significantly, the substance of the Grand

Jury's investigation and the evidence it considered.

26 U.S.C. §6103 THRESHOLD

83.    26 U.S.C. §6103 meets the threshold of Exemption (b) (3) because it exempts material

collected pursuant to the Internal Revenue Code (IRC) from disclosure.

EXEMPTION (b) (3)<br>26 U.S.C. §6103

84.    Some information contained in ATF investigative file 33920 83 1501Y is tax information

not related to the plaintiff. Among ATF's responsibilities under the IRC is the enforcement of the

National Firearms Act. See 26 U.S.C. §§5801-5891. This includes tax liability for the possession

of certain firearms including, but not limited to, machineguns, silencers, and sawed-off shotguns.

Section 6103 of the IRC provides that "Returns and return information shall be confidential, and

except as authorized by this title -- (1) no officer or employee of the United States . . . shall

disclose any return or return information obtained by him in any manner in connection with his

service as such an officer or employee or otherwise or under the provisions of this section." 26

U.S.C. § 6103(a). Although § 6103 provides for a number of exceptions to the general rule that

return information may not be disclosed, § 6103 does not permit the disclosure of such

information in response to a FOIA request. Accordingly, ATF is prohibited by Federal statute

from disclosing some of the responsive information plaintiff requested under the FOIA, and

therefore, such information constitutes "return information" as defined in § 6103(b)(2) of the IRC.

FOIA EXEMPTION (b)(7)(C)<br>UNWARRANTED INVASION OF PERSONAL PRIVACY

20

85.   FOIA Exemption (b)(7)(C) protects records or information compiled for law enforcement purposes, production of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. §552(b)(7)(C).

86.   Exemption (b)(7)(C) requires a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties. The requester's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing test.

87.   The individuals' names and identifying information contained in the investigative files were compiled in connection with an investigation into violations of various crimes, including multiple murders, drug trafficking, and a continuing criminal enterprise, and as such meet Exemption 7's threshold requirement of "records or information compiled for law enforcement purposes."

88.   Revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties. On balance, the Disclosure Division determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest that would be served by its release. Since this is the higher of the two standards of invasion of privacy, the release of this information would be "unwarranted" as required by 5 U.S.C.§552(b)(7)(C).

89.   FOIA Exemption (b)(7)(C) protects from disclosure records or information compiled for law enforcement purposes to the extent that the disclosure of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of privacy. 5 U.S.C.§ 552(b)(7)(C).

90.    ATF withheld the names, titles, and other identifying information related to third party individuals and witnesses interviewed by ATF during the course of the investigation, law enforcement officers, and other private individuals merely mentioned in ATF's files.

91.    The third parties referenced in the responsive files are described in sufficient detail to allow for the identification of those third parties by persons familiar, and in some instances, unfamiliar with the circumstances and facts of ATF's investigation.  ATF determined that third parties could reasonably be expected to be embarrassed and humiliated by being associated with this investigation.  Further, ATF determined that releasing information regarding the witnesses referenced in plaintiff's files has the very real potential to endanger such witnesses or cause harassment and harm to the witnesses' lives and reputations.  In addition, disclosure may well discourage future witnesses from cooperating with ATF.  After balancing the interests at stake, ATF determined that the types of personal information contained within its files must be withheld because disclosure of the information could reasonably be expected to cause the third parties referenced in its files and third party witnesses embarrassment, harassment, and harm, and would do little, if anything at all, to aid the public's understanding of the ATF.

92.    ATF also invokes Exemption (b)(7)(C) to protect the names and identifying information of third parties who were investigated by ATF.  ATF determined that the disclosure of this information could reasonably be expected to constitute an unwarranted invasion of these third parties' privacy, because being associated with ATF's criminal investigation into plaintiff's unlawful actions carries a stigmatizing and negative connotation.  Thus, ATF determined that the third parties possess a substantial privacy interest in not having this information disclosed.  After ATF identified the substantial privacy interests at stake, ATF balanced those interests against any public interest in the disclosure.  ATF determined that because the disclosure of the names and

identities of these third parties would not shed any light on ATF's activities, it could not identify any discernible public interest in the disclosure.

93.   ATF asserts Exemption (b)(7)(C) to protect the identities of ATF Special Agents and other law enforcement personnel, such as supervisory and technical personnel who were involved in law enforcement operations.  The identities of ATF Special Agents and other law enforcement personnel that appear in law enforcement records are protected since disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned or subject them to unwarranted harassment.

94.   In determining whether to identify ATF Special Agents and other law enforcement personnel, ATF balanced the interest in disclosure against the individuals' privacy interest. Plaintiff did not assert any discernible public interest in this particular type of information.  ATF determined that the privacy interests of law enforcement personnel substantially outweigh any public interest, and that the names of law enforcement personnel would not be disclosed.  The fact that the plaintiff may know, or be able to independently determine the identities of some agents or other law enforcement personnel whose names have been withheld, does not diminish the exemption's protection of these individuals.  As stated previously plaintiff has been convicted of murdering a law enforcement officer. Consequently, the deleted information is exempt under FOIA Exemption (b)(7)(C).

FOIA EXEMPTION (b)(7)(D)
CONFIDENTIAL SOURCE

95.   Exemption (b)(7)(D) protects from disclosure information compiled for law enforcement purposes, the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source.

96.   The ATF reports contain interviews and accounts of interviews of named sources of

information that provided information regarding specifics about plaintiff's criminal activity.

97.   When a source has not expressly been granted a promise of confidentiality, certain circumstances characteristically support an inference of implied confidentiality.  The character of the crime being investigated and the source's relation to the nature of the crime are the primary factors in determining whether implied confidentiality exists.

98.   It is the experience of ATF that violations of the Federal firearm laws often consist of, or are accompanied by acts of violence, and that individuals who provide information concerning these crimes face a very real possibility of violent reprisal.  In this instance, because plaintiff was convicted of murdering a grand jury witness and multiple individuals involved with plaintiff's trial were placed into the witness protection program, ATF determined that the disclosure of this information could place the person that provided information to ATF in danger.  It is clear that if any information provided by a source was to be released, the sources identity would be discernable to plaintiff.

99.   It is reasonable to infer that at the time the individual's cooperation was secured, the individual expected that his/her identity and the information he/she provided was on a confidential basis and that it would remain so.  I have also been informed by ATF Special Agents that the release of the names of cooperating individuals such as the one in the underlying criminal case at issue here could jeopardize future ATF operations by deterring similarly situated individuals from providing needed information.

100.  The individual who cooperated under the assumption of confidentiality relied on ATF for maintaining his or her anonymity and should be afforded the protection of Exemption (b)(7)(D).

## FOIA EXEMPTION (b)(7)(E)
## LAW ENFORCEMENT TECHNIQUES

101.  Exemption (b)(7)(E) affords protection to all law enforcement information that "would

disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552 (b)(7)(E).

102. The Disclosure Division invokes Exemption (b)(7)(E) to protect from disclosure the details of surveillance techniques that are not widely known to the public, specifically, the circumstances under which the techniques were used, the specific timing of their use, and the specific location where they were employed. If disclosed, this information would illustrate the agency's strategy in implementing these specific techniques, including the timing of certain actions and the placement of certain agency resources in the implementation of the technique. This could lead to a decreased effectiveness in future investigations by allowing potential subjects to anticipate the circumstances under which such techniques could be employed and identify such techniques as they are being employed.

FOIA EXEMPTION (b)(7)(F)
<u>Threat To Physical Safety</u>

103. ATF also asserts exemption (b)(7)(F) to withhold from disclosure the identities of law enforcement persons and other third parties to protect against endangerment of their lives and safety. Exemption (b)(7)(F) provides protection to "any individual" where disclosure of information about him "could reasonably be expected to endanger [his] life or physical safety." 5 U.S.C. § 552(b)(7)(F), as amended by Pub. L. No. 99-570, § 1802 (1986). Agencies may withhold information if there is a reasonable possibility that disclosure could cause harm to someone.

104. The records plaintiff seeks contain information about individuals; thus, the safety of these persons must be weighed against the public interest in disclosing the information identifying them. The plaintiff has not articulated any public interest in releasing the documents, and his

25

personal interest in obtaining disclosure is not relevant in balancing the competing interest under

the FOIA. Also, it is well settled that there is no public interest in the disclosure of the identity

of law enforcement agents. Conversely, the individuals mentioned in these records have an

interest in the nondisclosure of the documents, in that disclosure might subject them to

unwarranted public attention, harassment, or criticism.

105. ATF Special Agents and other ATF and state law enforcement personnel conduct official

inquiries into violations of various criminal statutes. They conduct searches and make arrests,

both of which constitute reasonable, but nonetheless, serious intrusions into people's lives. Many

of the people investigated by ATF Special Agents or state law enforcement personnel carry

grudges that last for years and seek any excuse to harass the responsible employees.

Furthermore, any publication of an employee's name in connection with a particular investigation

could rekindle animosity toward the individual. In addition, disclosure of the names of ATF

Special Agents and other state law enforcement personnel may, in certain cases, diminish their

effectiveness in their current assignments or increase the potential of physical harm to their

persons. Balancing the plaintiff's interest in disclosure against the individuals' safety interests in

nondisclosure, the privacy interest clearly prevails. To the extent that information in the

documents may have been previously disclosed during judicial proceedings or by the United

States Attorney's office, such disclosure does not waive any claim of privacy under the FOIA.

106. In this instance it is evident from plaintiff's prior convictions that it is extremely

reasonable to believe that he would cause harm to law enforcement personnel or witnesses.

## Adequacy of Search

107. ATF's Disclosure Division executed an independent and thorough search for all

materials responsive to plaintiff's FOIA request.  All indices and file systems, including TECS, that would contain information pertaining to plaintiff were reasonably searched.

108.  Upon receipt of plaintiff's FOIA request the Disclosure Division executed an independent and thorough search for all responsive materials. The first step that was taken in conducting the search was to query the Treasury Enforcement Communications System (TECS).[13]  TECS is a text-based database, owned by the Bureau of Customs and Border Protection, Department of Homeland Security, which contains information that may be of interest to law enforcement agencies. TECS is a computerized information system designed to identify individuals and businesses suspected of or involved in violation of federal law. TECS is also a communications system permitting message transmittal between Federal law enforcement offices and other international, state, and local law enforcement agencies. TECS provides access to the FBI's National Crime Information Center (NCIC) and the National Law Enforcement Telecommunication Systems (NLETS) with the capability of communicating directly with state and local enforcement agencies. ATF uses TECS to locate records within the Department of Justice's Privacy Act system of records entitled "Criminal Investigation Report System."

109.  ATF records located within TECS include: wanted persons and fugitives; known and suspected violators of laws falling within the jurisdiction of ATF; felons and dishonorably discharged veterans who have requested relief to own firearms and/or explosives under the Gun Control Act of 1968; violent felons; and gangs and terrorists. The TECS system contains seven record subsections: People, Businesses, Aircraft, Firearms, Vehicles, Vessels, and Things. Bureau-wide, ATF performs an average of 130,000 queries per month against records in the following subsections: People, Businesses, Firearms, and Vehicles.  These queries reveal ATF

---

[13] The TECS database is utilized by ATF to locate records within our Criminal Investigation Report System of Records.  See 68 Fed. Reg. 3553.

Investigation numbers that correspond to a specific field division where any files would be located. Accordingly, because the TECS database contains the names of the individuals ATF has investigated; it was the place most likely to locate responsive records.

110. By searching under plaintiff's full name, all records related to plaintiff were determined to be located in ATF's St. Louis Field Division and retrievable under Criminal Investigation Number 33920 88 1510X. This is the only ATF file associated with plaintiff's name in the TECS database and was released in June 2000 with Exemptions. See ¶12. Additionally, another TECS search using the term "Moorish Science Temple" resulted in investigative case file 33920 88 1540G, also a St. Louis Field Division case file. Pursuant to a request from the Disclosure Division, ATF's St. Louis Field Division undertook a search that located all criminal case files within their office that were retrievable by the plaintiff's full name and Criminal Investigation Number 33920 88 1510X.

111. ATF criminal investigation 33920 83 1501Y does not appear in the TECS database. Multiple searches of plaintiff's name and other identifying information such as Social Security Number and date of birth were used multiple times over the seven years of correspondence with plaintiff. The investigative file was eventually located through inquiries with the St. Louis Field Division personnel who had some historical knowledge of that particular Field Division's investigative cases. This file, as all ATF files, are in most cases located through a TECS database search and not through the methods employed in this particular instance.

112. I have been informed by the St. Louis Field Division that, to the best of my knowledge, I have been provided with all records responsive to plaintiff's request. As such, and for the reasons described above, ATF has conducted a search of all locations likely to contain responsive documents using methods reasonably expected to uncover all relevant documents.

## Segregability

113.    My staff reviewed each page of the material identified as responsive to determine

whether all non-exempt, reasonably segregable information was released to plaintiff. In

consultation with the aforementioned AUSA it was determined that plaintiff analyzes all

information and, using mosaic-like processes, makes assessments of who provided evidence

against him or his friends, calculates his criminal behavior and influences the criminal behavior

of others associated with him.  Plaintiff was proven and/or is known to have murdered, conspired

to, threatened to, and/or attempted to murder suspected informants, police, prosecutors,

and others who he perceived as having interests adverse to his own.  Thus, even what may be

considered non-relevant or non-sensitive items would, if released, enable him to misuse

information for criminal and obstructive purposes designed to interfere with law enforcement

proceedings and to commit further crime, whether by himself or others he influences.

Seemingly-innocuous materials would fit within a mosaic or matrix of information he's acquired

and retained, together with that of his followers, enabling him to disrupt and obstruct orderly

enforcement proceedings. For example, in regards to the Grand Jury witness who was

assassinated pursuant to plaintiff's order; it was carried out because plaintiff knew of the witness'

other troubles with the law (i.e., had intelligence about the matter) and evidently perceived that

the pressure on the witness to cooperate outweighed the assurances the witness attempted to

provide. As a result of this review, it has been determined that all non-exempt, reasonably

segregable information has now been provided to plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this _30_

day of March, 2006.

_Averill P. Graham_
Averill P. Graham
Chief, Disclosure Division