UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JERRY LEWIS BEY,                )
                               )
            Plaintiff,          )
                               )
-v-                            )
                               )   Civil Action No.  05-2241  (JGP)
                               )
U.S. DEPARTMENT OF JUSTICE,     )
                               )
            Defendant.          )
                               )
                               )

## PLAINTIFF'S MOTION IN OPPOSITION TO SUMMARY JUDGEMENT

COMES NOW, Plaintiff Jerry Lewis Bey, pro se, and Respect-
fully file his Motion in Opposition to Defendant's Motion for
entry of Summary Judgement on the grounds that the records re-
quested by Plaintiff pursuant to the Freedom of Information
Act, 5 U.S.C. § 552 ("FOIA" or the "Act"), were improperly with-
held under the Act as Exemption 7(A) was misapplied.   In sup-
port of its Motion, the Plaintiff refers this Court to the  ac-
companying Material Facts showing bad faith by Averill P. Graham
in his Declaration which bad faith statements are incorporated
in Defendant's Motion for Summary Judgement.   Plaintiff also
refer this Court to the accompanying Memorandum of Law and the
Affidavit of Plaintiff.   Plaintiff states as follows:

**RECEIVED**

APR 2 4 2006


NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Summary Judgement should not be awarded to an agency in a FOIA case solely on the basis of agency affidavits (or declarations) "if the affidavits are impunged by evidence ... of bad faith on part of the agency." Public Citizen Inc. v. Department of State, 100 F. Supp.2d 10, 16 (D.C. Cir. 2000)(quoting McGee v. Central Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).    A showing of "bad faith" can defeat a motion for summary judgement in a FOIA case." Twist v. Ashcroft, 329 F. Supp.2d 50, 54 (D.C. Cir. 2004).

## I.  PEN-REGISTER INFORMATION

Defendant [p.3] in its Motion for Summary Judgement correctly states that on July 17, 2000 Plaintiff sought pen-register information from the 1983 ATF investigation file on himself and his organization the Moorish Science Temple of America (MSTA) and that after the request was denied, plaintiff did not administratively appeal the denial. [see also p. 9]   It's undeniably clear that plaintiff could not appeal a denial on information [pen-register] that was in the 1983 ATF file that Averill P. Graham's Disclosure Division claimed could not be located.    Plaintiff took that representation as true, however, it's clear that the Defendant failed to conduct a search reasonably claculated to uncover the relevant pen-register records. Kowalczyk v. Department of Justice, 73 F.3d 386, 388 (D.C. Cir. 1996).    It's undisputed that plaintiff first sought these

-2-

records in July 1997 and was falsely told that the 1983 ATF
file could not be located, however, the pen-register release
was denied, even though it was part of the 1983 file which
clearly show the 1983 file was located way back in 1997, how-
ever, ATF had no intention of releasing information from this
file.    Indeed, the withholding of the pen-regiser and the mis-
representation that the 1983 file could not be located show
bad faith on behalf of the ATF.  Public Citizen Inc., 100 F.
Supp.2d at 16.

## I.  THE REMAINING PORTIONS OF THE 1983 ATF FILES ARE NOT PROTECTED FROM DISCLOSURE PURSUANT TO EXEMPTION 7(A)

Defendant's Motion for Summary Judgement contains other
false statements and omissions as shown [p.11] as Defendant
acknowledge that the 1983 file sought by Plaintiff was created
as a result of that investigation, however, defendant deceptive-
ly misquote [pp.11-12] Graham's Declaration [at 64] that "the
results of the investigation is now pending post-conviction
proceedings in the Eighth Circuit."    Graham's Declaration
[at 64] clearly states that "he have been advised by the United
States Attorney's Office [EDMO] that the plaintiff has a peti-
tion pending before the Eighth Circuit seeking to overturn his
conviction in cause Jerry Lewis Bey v. United States (05-2447)
(Filed May 26, 2005)."  There is no mention that the results
of the 1983 ATF investigation is now pending before the Eighth
Circuit.    Furthermore, plaintiff conviction is not due to the

-3-

results of the 1983 investigation, rather, plaintiff stands
convicted as a result of a July 24, 1989 Organized Crime Drug
Enforcement Task Force (OCDETF) investigation.   Defendant too
conviently omits from its motion and Graham's declaration that
the 1983 investigation was officially closed on April 7, 1987
by the ATF, who was the lead agency of that OCDETF investiga-
tion, and that the investigation been closed for nineteen years.
[Attached Ex. D]    In support of its Motion for Summary Judge-
ment, Defendant cites Cucci v. Drug Enforcement Administration,
871 F. Supp. 508, 511 (D.D.C. 1994), which is inapplicable to
the instant case as it involves a plaintiff's request under
the FOIA for records relating to an "on-going criminal investi-
gation."    In addition, the Court in withholding the records,
noted that the FBI identified the threat to the continued safety
and cooperation of witnesses and confidential sources that could
be disclosed to subjects of continuing FBI investigations if
the documents were disclosed. Id. at 511.    There exist no
on-going investigation by the ATF regarding the 1983 investi-
gation which been closed for nineteen years, thus, there exist
no threat to any witness nor confidential source regarding their
safety if the records from this closed file be release to plain-
tiff.    Indeed, Defendant has misapplied Exemption 7(A) and
has not followed the dictate of Bevis v. Department of State,
801 F.2d 1386 (D.C. Cir. 1986), nor met its burden of showing
that all its records in the 1983 ATF file are exempt and relates

-4-

to the 1989 OCDETF investigation that included drugs and murders,
which led to plaintiff's January 9, 1991 RICO indictment.  It's
clear from the May 20, 1987 FBI airtel, that the 1983 OCDETF
investigation that included the ATF, was investigating informa-
tion it had recieved regarding plaintiff and other members in-
volvement in illicit drug trafficking, which was a seperate
OCDETF investigation and unrelated to the July 24, 1989 case.
[Ex. D]    It's also clear that the Assistant United States
Attorney (AUSA) who prosecuted plaintiff's criminal case has
filed a motion with the Clerk of the Court for the Eighth Cir-
cuit Court of Appeals on November 7, 2005, acknowledging that
the 1983 investigation was a differently-composed and unrelated
to the July 24, 1989 investigation on the JLO.  [Attached Ex.
G]    The reference to the JLO in the AUSA's motion refers to
what he called the "Jerry Lewis Organization" which investiga-
tion was opened by the DEA and FBI on July 24, 1989.  [Attached
Ex. N]    It's again noteworthy to point out that only the 1983
records from the ATF file is the subject of plaintiff's FOIA
suit pending before this Court.   Plaintiff do not seek any
information that would constitute a clearly unwarranted invasion
of personal privacy, identify names and identifying information
of any third party who were investigated by the ATF back in
1983 up to the time (April 7, 1987) the investigation was of-
ficially closed.    Nor do plaintiff seek any names of ATF
Special Agents or other lawenforcement personel who was involved

-5-

in the investigation nor of any confidential sources and the information they provided, as it's clear the information did not result in an indictment.   Defendant's assertion [p.14] that disclosure of investigator's notes would interfere with enforcement proceedings as plaintiff would be able to act to interfere with or improperly thwart the investigation and prosecution is not only misleading, but deceptively false.   Again, there is no investigation relating to any notes from the 1983 case that could be thwarted or interfered with after nineteen years  of being closed.   Plaintiff will point out for this Court that the records Defendant is attempting to withhold improperly under 7(A), has been released (1,825 redacted pages) to plaintiff pursuant to the FOIA by the FBI on February 29, 2000 and on May 31, 2000 and at no time in the past six years has plaintiff attempted to harass or harm any alleged informant from the 1983 investigation and even assuming plaintiff wanted to, their names was deleted by the FBI who at no time attempted to invoke exemption 7(A).  [Attached Ex.M-1 thru 8]

### III.   THE 1983 DOCUMENTS ARE SEGREGABLE AND SHOULD BE RELEASED PURSUANT TO FOIA

Plaintiff again submits that his request is only for information pertaining to himself that is being maintained in a twenty-three year old 1983 ATF case file which request defeats the Defendant's claim that disclosure would interfere with enforcement proceedings.   In addition, the ATF should redact

-6-

all names of witnesses and lawenforcement agents and personel,
which should constitute a far lower threat of invasion of any
privacy.    The fact that plaintiff has a judicial proceeding
pending and may obtain documents via FOIA that should have been
procured through discovery, had it not been for misconduct by
the prosecutor, does not in and of itself constitute interference
with a law enforcement proceeding, rather, the government must
show that disclosure of those documents would in some particu-
lar, discernible way, disrupt, impede, or other wise harm the
enforcement proceeding.    North v. Walsh, 881 F.2d 1088, 1097
(D.C. Cir. 1989).    This has not been done in the instant case,
as the records sought is from the 1983 ATF file which file been
closed for nineteen years and disclosure of these documents
would in no discernible way disrupt, impede nor harm the appli-
cation plaintiff's has pending before the Eighth Circuit as
plaintiff seeks permission to file a second 28 U.S.C. § 2255
motion in the district court and the application is pursuant
to the Antiterrorism Effective Death Penalty Act of 1996 (AEDPA).
In addition, Defendant misapplies 7(A), as this exemption
applies only to particular planned or pending law enforcement
proceedings.    See Manna v. United States Department of Justice,
51 F.3d 1168 n.2 (3rd Cir. 1995).

Defendant [p.28] motion for Summary Judgement and Graham's
Declaration [p.14], claim that plaintiff was convicted for mur-
dering a police officer and a grand jury witness is also mis-
leading, as plaintiff was convicted under the RICO Act for
racketeering and not murder.    As an element of that charge,

-7-

the jury found that the government proved that plaintiff was
responsible for these murders, however, what is omitted from
defendant's motion and Graham's declaration is that plaintiff
was in fact indicted for these murders and those charges was
dismissed on December 14, 1995, thus, plaintiff has never been
convicted of those murders. [Attached Ex. O]    It must again
be pointed out that there was no evidence at trial that any
murders, attempt murders nor conspiracies was the results of
any information obtained pursuant to the FOIA nor information
obtained through the regular trial discovery process.    What
is also omitted from the defendant's motion is that the grand
jury witness prior to his death had met with plaintiff's
attorney and advised counsel that the government prosecutor
was attempting to have him appear before the grand jury and
give false and misleading testimony.      This information was
recorded on tape and introduced at plaintiff's trial who has
always maintained his innocense.      In addition, what defendant
motion omits is that new information recieved from the FBI pur-
suant to the FOIA that was also concealed at plaintiff's trial
show that prior to the off-duty deputy sheriff murder, he was
a FBI informant, which information is part of plaintiff's appli-
cation pending before the Eighth Circuit.    Plaintiff has no
intention of using any FOIA information to interfere with any
post-conviction motion he may file, as it's clear that had the
information in the 1983 FBI file and ATF files been released
at trial, plaintiff's suit would not be before this Court, nor

-8-

would the defendant be improperly invoking 7(A) and providing
this Court with omissions and false and misleading statements.

Defendant's motion for summary judgement [p.28] asserts
that multiple individuals involved with plaintiff's trial were
placed into the witness protection program, thus it's reasonable
to infer that at the time the individual's cooperation was se-
cured, the individual expected that his/her identity and the
information he/she provided was on a confidential basis and that
it would remain so, and all information relating to the witness
and the information provided by them is protected from disclo-
sure.    Again, this argument is misleading as the witnesses
from plaintiff's trial that was placed into the witness protec-
tion program was four codefendants who was indicted with plain-
tiff who decided to cooperate.    Also there was two unindicted
coconspirators who entered the witness protection program that
was indicted as part of an April 1989 heroin conspiracy indict-
ment, who was unindicted coconspirators in plaintiff's indict-
ment.    These six individuals identity was known and is a part
of the trial's public record, as was the information they pro-
vided to the government, which was disclosed pursuant to Rule
16 and Brady v. Maryland, 373 U.S. 83 (1963).    What is un-
disputed is that these witnesses and the information they pro-
vided and their testimony, "had nothing to do with the informa-
tion gathered by another task force during the 1983 investiga-
tion, which records is the subject of plaintiff's request."
Defendant is again attemting to mislead this Court as plain-
tiff is not seeking any information that was provided by any

-9-

witness who was placed in the witness protection program, as
it's clear those individuals is not part of the 1983 ATF case
file investigation.    It's also clear that whoever the indivi-
duals was that provided the information during the 1983 investi-
gation, the information did not result into indictments.

Defendant [pp.13-14] in its motion for summary judgement
asserts that according to Graham's Declaration [at 67], plaintiff
has been linked to criminal behavior outside of prison dispite
plaintiff being imprisoned since 1991 which includes a narcotic
distribution conspiracy while he was incarcerated at Leavenworth
Federal prison that allegedly influrenced and conducted narcotics
sales in the Kansas City and St. Louis areas.    This bald asser-
tion, which is based on a false representation by the AUSA who
was the lead prosecutor in plaintiff's case, who is only concerned
with keeping this file from being released to plaintiff.    Bureau
of Prison (BOP) records conclusively show that since plaintiff
entered the BOP in 1991, he has been identified as a model in-
mate who has recieved no disciplinary reports which conduct in-
cludes the U.S. Penitentiary at Leavenworth.    What is undis-
puted is that plaintiff has been rewarded by the BOP for his
good behavior by being allowed to tranfer to a medium Federal
Correctional Institution (FCI) at Edgefield, South Carolina,
where plaintiff continues to be a model inmate.    [See Attached
Ex. H-1,2 and 3]    Had plaintiff been involved in any criminal
conduct while at Leavenworth, he would have been placed in the
Special Housing Unit (SHU) and not been allowed to tranfer, and
the AUSA who has provided this false information, had he possessed

-10-

any information that linked plaintiff to a drug conspiracy, he
would not have hesitated to seek an indictment.    It's note-
worthy to point out that plaintiff left Leavenworth nearly five
years ago.    This false allegation is part of the on-going pat-
tern of misconduct by the AUSA who has interfered with the FOIA
process as he also know that 7(A) is being used as a cover to
conceal the 1983 records that he withheld back in 1991 prior
to plaintiff's trial, as he knowingly charged the 1983 investi-
gation time frame in plaintiff's indictment.    Defendant's reason
for not releasing these records from the twenty-three year old
ATF file  is absurd  as the Disclosure Division on July 3, 2000,
released 100 segregable portions of ATF investigation records
from a 1988 file that led to plaintiff's indictment, and this
disclosure was made even though plaintiff's case was under judi-
cial review in case titled United States v. Jerry Lewis Bey,
et. al., No. 4:91 CR(1) (CDP) (E.D.Mo.).    This case was filed
on January 8, 1997 and was denied on November 27, 2000.    In
releasing the above records from the case file that led to plain-
tiff's indictment on January 9, 1991, defendant did not find
that the release of these records could interfere with the pend-
ing judicial proceeding.    In addition, on July 3, 2000, the
Disclosure Division released an additional 357 pages from the
same 1988 ATF investigation file as the above motion was still
pending before the U.S. District Court.    On September 29, 2000,
the Disclosure Division again released documents on a Fred Knox,
that also came from this 1988 file and plaintiff's motion was

-11-

still pending as it was not denied until two months later on November 27, 2000.   It should be clear to this Court that Averill Graham's action regarding misapplying 7(A) and denying the release of the records from the 1983 ATF file has nothing to do with "enforcement proceeding", as the Disclosure Division had no intention beginning in 2000 of releasing this information.

Defendant [pp.30-31] asserts in its motion for summary judgement that the 1983 file is exempt as defendant has met its burden by showing that a category of records are related to the continuing investigation under Exemption 7(A) and that there is no non-exempt portions of the records to segregate and the entire category is protected.   Again, this argument is flawed, and misleading as there is no continuing investigation that has anything to do with the closed 1983 ATF file.   Assuming there was an investigation that was on-going that was related to plaintiff and individuals he once associated with, that investigation would seem to be more related to the 1988 investigation that led to plaintiff's indictment than the 1983 investigation that led to no indictments.   Defendant also argues [p.31] that to provide any information from the 1983 file would result in the retaliation toward persons that plaintiff perceives to have worked against him and his criminal enterprise, thus, the 1983 file is not reasonably segregable, and judgement should be entered in favor of Defendant.   This argument is also misleading and flawed, as has had in his possession over 1800 pages since February 29, 2000 and May 31, 2000 that was released by the FBI that was in its 1983 file which file was related to the

-12-

same 1983 task force investigation that was led by the ATF,
and at no time since the release of those 1800 pages, has there
been any alleged retaliation toward any person or persons that
plaintiff may have percieved provided information against him.
[Ex. K & L]    It must also be pointed out that Defendant's
argument [p.31] that the retaliation would be the results of
persons percieved to have worked against plaintiff in his crimi-
nal enterprise is also misleading, as it's undisputed from the
1983 investigation that the task force found no evidence of
any criminal enterprise related to plaintiff nor members of
his organization, the Moorish Science Temple of America (MSTA).
[Ex. D]

Defendant has failed to meet its burden of showing that
a category of records from the twenty-year old closed 1983 ATF
file are exempt under 7(A).    Neither do these records relate
to any continuing investigation where release could interfere
with plaintiff's judicial proceeding before the Eighth Circuit.
Indeed, there exist non-exempt portions of records from this
closed file that can be segregated and should be released to
plaintiff. Bevis, 801 F.2d at 1386; Dickerson v. Department
of Justice, 992 F.2d 1426, 1432-33 (6th Cir. 1993).    Because
the Declaration of Averill P. Graham and the attachments thereto
demonstrates that Defendant has not met its obligation under
the FOIA, as the assertions in the above attachments has been
contradicted by documentary evidence presented by Plaintiff,
this Court should not grant Summary Judgement to defendant as
a matter of law. see Twist v. Ashcroft, 329 F. Supp.2d 50, 54
(D.C. Cir. 2004).

## MEMORANDUM OF LAW

"[A]s a rule, the public interest in exposing government corruption and wrongdoing is the primary rationale for FOIA." See Manna v. U.S. Department of Justice, 51 F.3d 1158, 1169 n.3 (3rd Cir. 1995)(quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978)).

In the instant case, Defendant's rationale given for applying Exemption (b)(7)(A), that to release non-exempt records from a 22 year old ATF case file that was closed nineteen years (April 7, 1987) ago could reasonably be expected to interfere with an on-going enforcement proceeding violates the spirit of the FOIA and erodes citizen faith in government. See, Bright v. Attorney General John Ashcroft, Federal Bureau of Investigation And U.S. Department of Justice, 259 F.Supp.2d 502, 503 n.1 (E.D. Louisana 2003)("district court held that the government must disclose exculpatory FBI file that related to defendant's conviction which is not exempt from disclosure under 552 (b)(7) (A) as the file relates to the possibility of defendant's innocernce and should have been disclosed prior to trial under Brady v. Maryland, 373 U.S. 83 (1963)"). According to records from the FBI 1983 task force file, which records is part of the same 1983 ATF task force file that is the subject of plaintiff's request, there exist exculpatory information that relates to plaintiff's 1993 RICO conviction which records is not exempt from disclosure under 552 (b)(7)(A) as the file relates to the possi-

-14-

bility of plaintiff's innocence and should have been disclosed
prior to plaintiff's trial under Brady and the May 15, 1991
district court order. [Attached Ex.O]

Plaintiff has recieved nearly 2000 pages from the EBI 1983
file pursuant to the FOIA which reveal that the ATF was the
lead agency in the investigation that was opened on May 23,
1983 investigating plaintiff and other members of the MSTA.
These records show that after four years, the ATF on April 7,
1987, officially closed the investigation after failing to
gather evidence for an indictment showing the existence of an
organized criminal enterprise trafficking in drugs. [Attached
Ex. D]    Additional records released pursuant to the FOIA to
plaintiff show that another task force investigation was open
on plaintiff and his associates on July 24, 1989 which led to
the January 9, 1991 indictment.    The indictment charged as
part of the drug conspiracy the time frame of the May 1983-
April 7, 1987 investigation and at plaintiff's trial, the AUSA
hid the 1983 file and related records, which has caused ATF
Disclosure Division Chief Averill Graham to engage in miscon-
duct with the AUSA by improperly withholding the 1983 file
pursuant to 7(A).    The withholding this information since
1997 has been crucial to plaintiff's ability to obtain redress
through the courts, as it's clear that defendant has withheld
these records to frustrate plaintiff's right to court and has
caused such a delay which has caused plaintiff to file multi-
ple petitions, application and motions in the courts which has

-15-

substantially reduced the likelihood of plaintiff obtaining
the relief to which he is entitled, which has violated plain-
tiff's due process constitutional right.  See, Swekel v. City
of River Rouge, 119 F.3d 1259, 1261-64 (6th Cir. 1997)(citing
Ryland v. Shapiro, 708 F.2d at 769-70 (5th Cir. 1983)).

    In Mapother v. U.S. Department of Justice, 3 F.3d 1533,
1540 (D.C. Cir. 1993), this Circuit held that to invoke Ex-
emption (7)(A), "the agency must show that their disclosure
could reasonably be expected to interfere with enforcement
proceedings that are "pending" or "reasonably anticipated."
In the instant case, plaintiff has an application pending be-
fore the Eighth Circuit pursuant to the AEDPA of 1996 seeking
permission to file a second 2255 motion in the district court,
which is not the "actual contemplated enforcement proceeding"
that Congress had in mind when drafting Exemption 7(A).  see
City of Chicago v. U.S. Dept. of Treasury, 287 F.3d 628, 634
(7th Cir. 2002)(quoting Robbin Tire, 437 U.S. at 224, 98 S.
Ct. 2311).    Plaintiff's application is not any pending nor
reasonably anticipated proceeding whereas 7(A) should be in-
voked to exempt an entire 23-year old ATF investigation file
that has been closed for nineteen years by the ATF.    In ad-
dition, Congress did not intend that 7(A) be used to exempt
records from a case file that has been closed for nineteen
years where there is no on-going investigation relating to that
file nor where applying (7)(A) would be justified to protect
a witness or witnesses from intimidation or where the witness

-16-

desire to maintain confidentiality or where premature disclo-
sure would create a chilling effect on potential witnesses
and dry up sources of information. see Grasso v. IRS, 785 F.2d
70, 76-77 (3rd Cir. 1986)(citing J.P. Stevens & Co. Inc. v.
Perry, 710 F.2d 136, 143 (4th Cir. 1983)).   It's undeniably
clear that the only individual who would be protected by ex-
empting these records under 7(A) is the AUSA in plaintiff's
criminal case, as the release would expose his corrution and
wrongdoing. Manna, 51 F.3d at 1169 n.3

The Supreme Court has made it clear that the most obvious
risk of interference with lawenforcement proceedings is that
witnesses will be coerced or intimidated into changing their
testimony or not testifying at all. NLRB, 437 U.S. at 239,
98 S.Ct. at 2325.   There exist no on-going investigation re-
lating to the closed 1983 ATF file where a premature release
would interfere with the on-going investigation as the release
would enable plaintiff to intimidate or coerce a witness to
change their mind.

Under the the FOIA, exemption 7(A) was not to be used to
sheild government wrongdoing nor to withhold records that would
interfere with the wrong doing by exposing it.  Defendant has
denied plaintiff access to this file by improperly invoking
7(A) to sheild the AUSA wrongdoing as he falsely represents
to this Court that there is an on-going investigation, when
in fact defendant know that the records sought is from a file
that been closed for nineteen years.  In Bevis, this Circuit

-17-

made it clear that "agency must show that an on-going proceeding do in fact exist to exempt records under 7(A) and even with this finding, the entire file cannot be exempt. 801 F.2d at 1381. Defendant has not shown that there is an on-going proceeding that Congress had in mind when drafting exemtion 7(A) or that plaintiff seeks records from an open file that relates to the on-going investigation. Dickerson v. Department of Justice, 992 F.2d 1426, 1432-33 (6th Cir. 1993). Nor has defendant shown that this is a situation where 7(A) apply to exempting documents from disclosure that relates to a criminal investigation and the release would reveal the scope of the ATF case against plaintiff or his associates and reveal names of witnesses and could lead to tampering with evidence. Lewis v. IRS, 823 F.2d 375, 378 (9th Cir. 1987). This Circuit has held that Exemption 7(A) is designed to block the disclosure of information that will genuinely harm the government's case in an enforcement proceeding or impede an investigation. North v. Walsh, 881 F.2d 1088, 1098 (D.C. Cir. 1989); see also, Alyeska Pipeline Service Co. v. United States EPA, 856 F.2d 309 (D.C. Cir.1988)("this Circuit held that exemption 7(A) permitted the withholding of documents related to an on-going investigation from the investigation target.") Defendant has not identified any on-going investigation and its clear that plaintiff was the task force target during the 1983 investigation, however, that investigation is not on-going as it was closed by the ATF on April 7, 1987, which was nineteen years ago.

-18-

As Senator Hart, who introduced the amendment to FOIA that became exemption 7(A), explained, the exemption was intended to apply "whenever the government's case in court, a concrete prospective law enforcement proceeding would be harmed by the premature release of evidence or information not in the posse-ssion of known or potential defendants.  This would also apply where the agency could show that the disclosure of such informa-tion would substantially harm such proceedings by impeding any necessary investigation before the proceeding. 120 CONG. REC. 517, 033 (May 30, 1974).   It's undisputed that the case pend-ing before the Eighth Circuit was initiated by plaintiff, not the government and that the disclosure of records from the closed 1983 file would not harm the proceedings nor impede an investi-gaton that been closed for nineteen years.

In enacting exemption 7(A), "Congress recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investi-gations or placed at a disadvantage when it come time to pre-sent their case." City of Chicago, 287 F.3d at 634; Robbin Tire, 437 U.S. at 224, 98 S.Ct. 2311.    However, Congress did not intend to preclude disclosure of any investigatory records, rather, Congress sought to protect against interference with investigatory files "prior" to the completion of an actual or contemplated enforcement proceedings.  Id. at 232, 98 S.Ct 2311; City of Chicago, 287 F.3d at 634.    Defendant has not identified a single concrete lawenforcement proceeding that could be endangered by the release of the records from this

-19-

closed twenty-two year old ATF file.  It's undisputed that the ATF itself is not and does not plan to conduct any relevant investigation and it's highly improbable that any revelation of this information could endanger an investigation that do not exist.  Exemption 7(A) was not intended to "endlessly protect material simply because it was in an investigatory file such as in the instant case." Id. at 635; Robbin Tire, 437 U.S. at 230, 98 S.Ct. 2311.

Indeed, the revelation of this information would not endanger any investigation, rather, it would expose a cover-up of misconduct by the AUSA who prosecuted plaintiff and Averill Graham the Disclosure Division Chief who has over the past five years improperly applied 7(A) to keep the misconduct concealed.    On March 1, 2004 plaintiff in a letter to Averll Graham, accused him of allowing the AUSA who was assigned to plaintiff's criminal case to interfere with the release of records from the 1983 file and the spirit of the FOIA.   On August 3, 2005, plaintiff in a motion filed with the Eighth Circuit requested a restraining order be issued to prevent the AUSA from interfereing with the release of records from the 1983 ATF file.  Cover-ups that prevent a person who has been wronged from vindicating his rights violates the right of access to the courts protected by the substantial due process clause." see, Estate of Smith v. Marasco, 318 F.3d 497, 511 (3rd Cir. 2003)(quoting Swekel v. City of River Rouge, 119 F.3d at 1261-64).    The public interest is insubstantial as the misconduct

by the AUSA and Averill graham is justification alone for the
release of the requested records from the 1983 closed ATF file,
as the information in this file is necessary to confirm plain-
tiff's claim that defendant has misapplied 7(A) to prevent
these records from revealing the misconduct of the AUSA who
vilated a U.S. Magistrate Judge May 15, 1991 court order to
disclose the information in the 1983 file and any other infor-
mation that was favorable to plaintiff. see Davis v. Department
of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992).    The public
at large has an important stake in ensuring that criminal jus-
tice is largely administered to the extent disclosure may remedy
and deter Brady violations in which society stands to gain.
Ferri v. Bell, 645 F.2d 1213, 1218 (3rd Cir. 1981)("prisoner
sought information pursuant to the FOIA to overturn a conviction,
although the motivation behind Ferri's request is ... personal,
a FOIA request for material implicating the Brady rule simul-
taneously advances an in direct public purpose satisfying the
second prong of the test for disclosure under one of the pri-
vacy based exemptions."); see also, Manna, 51 F.3d at 1169 n.3
This Court in the interest of justice and fairness should de-
termine whether a Brady claim exist that is sufficiently color-
able so that the public interest in fair administration of
justice warrants disclosure despite the exemption 7(A), which
exemption is clearly being misapplied.    Ferri, 645 F.2d at 1213.

-21-

Indeed, the Defendant's actions over the past 60 months to conceal the contents of the 1983 ATF file that relates to the possibility of Plaintiff's innocence of the RICO enterprise charge should have been disclosed to Plaintiff prior to his RICO trial under the clear instruction of the Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963).  See, Bright v. Federal Bureau of Investigation, 259 F.Sp..2d 502 (E.D. La.2003).  The failure by Plaintiff's prosecutor to disclose the contents of this file before his RICO trial as he was ordered to do by a 1991 court order, and to be allowed thirteen years after trial to interfere with the release of this information pursuant to the FOIA, rasies the stakes of the public interest and pays little currency to any claim that to release this information could reasonably be expected to interfere with lawenforcement proceeding.  Id. at 503.  In addition, such tactics violates the spirit of the FOIA and erodes citizen faith in government. Id. at 503 n.1

## CONCLUSION

For the above reasons, the Defendant's Motion For Summary Judgement should be denied and Jtidgement should be entered in favor of Plaintiff that all segregable portions of the records from the closed 1983 ATF files No. 7665 0683 1501 L (01) and NO. 33 920 83 1501Y be released to Plaintiff as required pursuant to the FOIA.

Respectfully submitted,

*Jerry Lewis Bey*

JERRY LEWIS BEY/# 22328-044
PRO SE PLAINTIFF
FCI
P.O. BOX 725
EDGEFIELD, S.C. 29824

## CERTIFICATE OF SERVICE

I, Jerry Lewis Bey, the pro se plaintiff do affirm that I have caused a copy of the foregoing instrument to be mailed to the following:

> DARRELL C. VALDEZ, D.C.  BAR # 420232
> ASSISTANT UNITED STATES ATTORNEY
> JUDICIARY CENTER BUILDING
> 555 4TH STREET, N.W.,  CIVIL DIVISION
> WASHINGTON, D.C.  20530

This _19th_ day of April, 2006.

*Jerry Lewis Bey*

JERRY LEWIS BEY // #22328-044
PRO SE  PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JERRY LEWIS BEY,                    )
                                    )"
            Plaintiff,              )
                                    )
                                    )
        -v-                         )    Civil Action No.   05-2241   (JGP)
                                    )
                                    )
U.S. DEPARTMENT OF JUSTICE,         )
                                    )
            Defendant.              )
                                    )

## AVERILL P. GRAHAM'S DECLARATION

Defendant's Motion for Summary Judgement is based on the Declaration of Averill P. Graham, Chief, Disclosure Division, which contains numerous omissions, false, misleading and conclusory statements used to improperly exempt an entire 1983 ATF investigation file as he misapplied (b)(7)(A) to this file that been closed for nineteen years.

1.    Graham's Decl. [p.3 at 10] claim that on November 24, 1997 Plaintiff had a 28 U.S.C. 2255 action pending before the United States Court of Appeals (Eighth Circuit).   It's undisputed that on November 24, 1997 Plaintiff had a Fed. R. Crim. P. Rule 33 Newly Discovered Evidence Motion pending in the

U.S. District Court before U.S. District Court Judge George F. Gunn Jr., filed on January 8, 1997. [Ex. A]

2.    Graham's Decl. p.3 at 11-12] claims that on April 24, 2000 Disclosure Division recieved Plaintiff's April 4, 2000 letter indicating that Plaintiff wished reconsideration of his office's November 24, 1997 denial of Plaintiff's FOIA request, and that by cover-letter dated June 2, 2000, the Disclosure Division granted Plaintiff's request in part by releasing 100 partially redacted pages.    Defendant's assertion is misleading as it too conviently omits that the 100 pages was only released after Plaintiff advised Graham that he never filed a 2255 motion nor had any intention of filing one and that Plaintiff's request involved "questions about the government's integrity".    Plain-tiff also directed Graham to the Department of Justice Office of Public Affairs February 3, 1994 Memorandum which prompted the release of these records.    [Defendant Ex. I]    Second, the 100 pages was from a 1988 ATF investigation file which is not to be confuse with the 1983 closed ATF file.    Third, Plain-tiff still had his Rule 33 motion pending before the district court when the 100 pages was released and at no time did the Disclosure Division invoke 7(A).[1]    Fourth, not only was the 100 pages from a 1988 ATF investigation file, but was from the investigation file that led to Plaintiff's RICO indictment on

---

1. Plaintiff's Rule 33 motion was denied on November 27, 2000. [Ex. B]

-2-

January 9, 1991.    Amongst the 100 pages was property transmittal
reports, property inventory reports, investigative techniques,
ATF investigation reports and reports showing the direction of
the investigation as well as the scope, which is the same infor-
mation [Graham's Decl. p.17] claim that to release could inter-
fere with future cooperative efforts with local lawenforcement
agancies and reveal the full scope, limits and direction of the
investigation of the Moorish Science Temple of America (MSTA).
See [Attached Ex. C-1 through C-14]

        3.    Graham's Decl. [p.4] also omitted that when the Dis-
closure Division released an additional 357 pages on July 3, 2000
that these records contained the direction of the 1988 investi-
gation, the scope, property and transmittal reports, as well
as some ATF agents names and other individuals under investiga-
tion or who was informants.  [Ex. C-1 through14]    Second,
Plaintiff still had his Rule 33 motion pending and again, there
was no mention that the release could interfere with this motion
pending before the district court.

        4.    Graham's Decl. [p.5] show that on September 29, 2000,
the Disclosure Division released other documents on a Fred Knox
pursuant to another FOIA request.    What was omitted was that
Knox records also came from the 1988 file and that Plaintiff's
Rule 33 motion was still pending.    Again, this was the investi-
gation file that led to Plaintiff's indictment.

-3-

5.   Graham's Decl. [p.8] claim that by letter dated October 16, 2002, the Disclosure Division upon consultation with the United States Attorney Office [EDMO] his office was advised that litigation relating to the requested 1983 file continued and could reasonably be expected to interfere with enforcement proceedings.   This assertion is false as there was no litigation pending in the district court nor appeal court in 2002 relating to the 1983 file.   In addition, Plaintiff had an application pending before the Eighth Circuit in 2002 seeking permission to file a second habeas petition in the district court which was denied on March 12, 2002 case [02-1205].[2]

6.   Graham's Decl. [p.9] again claim that by letter dated August 12, 2003 the Disclosure Division advised Plaintiff that the June 7, 1983 report was still related to an on-going investigation.   This assertion is also false as the June 7, 1983 report was from the 1983 investigation that was officially closed on April 7, 1987 by the ATF, and in 2003 there was no on-going investigation that could be related to an investigation that was over twenty-years old at that time and had been closed for sixteen years.   [Ex. D]   Even the 1988 investigation that led to Plaintiff's indictment was officially closed by the ATF on February 4, 1997.   [Ex. E]   It's undisputed that had there

---

[2.]  Graham throughout his Declaration states that Plaintiff was provided with the procedures on how to file an administrative appeal.   However, what is omitted is that Plaintiff was also advised that although he had that right, it would be in plaintiff's best interest to resubmit his FOIA request at a later date as the appeal process could be quite lengthy.   Plaintiff took Graham's advise in good faith and decided to forgo any appeal.   See,[Defendant's Ex. KK,QQ,UU,WW,ZZ, and FFF.

been an on-going investigation in 2003, it would have related to the 1988 investigation which led to Plaintiff's indictment, not the 1983 investigation where there was no indictment of Plaintiff nor any members of the MSTA. [Ex. C & D]

7.    Graham's Decl. [p.10] show that the Disclosure Division on January 6, 2004 released a copy of the June 7, 1983 report to Plaintiff.    Again, what is too conviently omitted is that the 1983 file as of 2004, had been officially closed by the ATF for seventeen years as it was closed on April 7, 1987.  Second, there was no mention that by releasing this report from the 1983 closed file that it could reasonably be expected to interfere with Plaintiff's on-going judicial proceeding that was pending before the Eighth Circuit that was denied on July 7, 2004.

8.    Graham's Decl. [pp. 11-12] acknowledge that there was no judicial proceedings pending relating to Plaintiff, however, the Disclosure Division again denied Plaintiff request for the 1983 file, which clearly showed that it never intended to re-lease this file.    Second, what was also clear is that Graham would use "enforcement proceeding" and "judicial proceeding" interchangeable when denying Plaintiff's FOIA request over the years.

9.    Graham's Decl. [p.12 n.10] falsely asserts that it was presumed that the 1983 file could be released to Plaintiff after Plaintiff had represented that the Eighth Circuit had denied his last appeal, however, follow-up revealed Plaintiff in fact still had on-going cases related to his conviction pending be-

fore the Eighth Circuit in case 05-2447 which was filed on May 26, 2005.   This claim is misleading, as Plaintiff appeal before the Eighth Circuit was denied on April 19, 2005 and a week later, on April 25, 2005, Plaintiff resubmitted his FOIA request for the 1983 file, thus, it's clear that as of April 25, 2005, Plaintiff had no on-going cases before any court.   It was only after Plaintiff resubmitted his FOIA claim that he file the May 26, 2005 application with the Eighth Circuit.

10.   Graham's Decl. [p.14] claim that the records withheld from Plaintiff pertains to an investigation conducted by multiple lawenforcement agencies, including ATF, regarding Plaintiff's large-scale criminal drug organization.   Again, what Graham too conviently omits is that the records withheld is from an investigation conducted  between. (May 23, 1983-April 7, 1987) and that the task force, which was led by the ATF, failed to find any evidence of an alleged large-scale drug organization involving Plaintiff nor any member of the MSTA. [Ex. D] Nor do Graham mention that Plaintiff was never indicted from this investigation even though there was indictments of others who was not related to Plaintiff nor the MSTA. [Ex. C & D]

11.   Graham's Decl. [pp. 14-15] asserts that he had been informed by the AUSA who was the primary prosecutor in Plaintiff's criminal investigation that "the case remains open" in so far as Plaintiff continues to file petitions seeking to overturn his conviction.    Again, this assertion is misleading as

-6-

the requested 1983 file was officially closed on April 7, 1983.
Moreover, the same AUSA has filed a November 7, 2005 motion with
the Eighth Circuit in another matter, advising the Court that
records from the 1983 FBI file (which is related to the 1983
ATF file) was a different, uninvolved investigative agency in-
vestigating narcotic laws and not related to the JLO investiga-
tion that led to Plaintiff's indictment.  [Ex. G pp. 17,24,26
and 27]

    12.   Graham's decl. [p.15] continue to be misleading as
he asserts that the release of the information identified as
(b)(7)(A) could reasonably be expected to interfere with "these
continued law enforcement proceedings as the reports of investi-
gation contains summaries of agents activities, witnesses names
and othet identifications, information provided by witnesses,
and evidence inventory.   First, there are no continued law
enforcement proceeding regarding the information in the 1983
file as contemplated by 7(A).    Second, the Disclosure Division
has in fact disclosed the information described above in its
releases on June 2, 2000 and July 3, 2000 which considt of 457
total pages from the 1988 file that led to Plaintiff's indict-
ment, and at no time was it stated that the release of this in-
formation could reasonably be expected to interfere with any
proceeding.   Third, Graham again uses "law enforcement pro-
ceeding" when in fact the only kind of proceeding that been pend-
ing throughout Plaintiff's numerous request was "judicial pro-
ceedings".    Fourth, it must be noted that Plaintiff's Ex. C-1

-7-

through C-14 contains summary reports of agents activities, agents
names, inventory evidence and information provided by witnesses.

    13.    Graham's Decl. [p.15] assert that he has been advised
(by an unnamed source) that narcotic investigators developed
information, a few years ago, that Plaintiff was involved in
a narcotic distribution conspiracy while incarcerated at Leaven-
worth Kansas Federal prison in the St. Louis and Kansas City
area.    First, it can be assumed that the source of this false
and misleading information is the AUSA in Plaintiff criminal
case.    Second, Plaintiff did five and half years at Leavenworth
and was considered a model prisoner as he has been since his
arrival in the Bureau of Prisons (BOP) in 1993, as Plaintiff
has never recieved any incident reports.  [Ex. H-1,2 and 3]
In addition, Plaintiff has been rewarded by the BOP for his good
behavior by being allowed to tranfer from one of the highest
security federal prisons in the nation to a medium security at
the Federal insitution Edgefield, South Carolina, where he re-
mains a model inmate to this day.    Furthermore, had Plaintiff
been involved in any criminal drug conspiracy outside or inside
Leavenworth, it's clear that Plaintiff being a high profile in-
mate, prison security had access to his recorded telephone con-
versations, out-going and in-comming mail and to his visitor
list.    Indeed, Plaintiff would have been under investigation
not only by investigators outside the prison, but would have
been placed in the Special Housing Unit (SHU) and it's without
question the AUSA would have found some way to have Plaintiff

-8-

indicted.[3]

14.    Graham's Decl. [p.16] argues that should Plaintiff
ever gain a re-trial via his collateral attacks, it is more than
reasonable to believe that witnesses and their families would
be physically attacked and/or intimidated through use of infor-
mation he would access if the underlying materials were released.
First, it now clear that the motive behind the withholding of
the 1983 file is that Plaintiff may get his conviction overturned
and get a new trial, not that its release could reasonably in-
terfere with any lawenforcement proceeding.    Second, and of
most importance, is that no witness nor their families would
be in any danger if the 1983 file was released, as this file
had nothing to do with any witness testimony as this file was
suppressed at Plaintiff's trial.    Third, There has not been
one incident regarding any confidential source, nor witness
being attacked or intimidated due to release of any documents
pursuant to the FOIA to plaintiff.    Fourth, Plaintiff has ob-
tained information from two government witnesses who testified
at his trial revealing that investigators allowed them "secret"
sex favors with their wives while they was waiting to enter the
witness protection program in 1991 and prior to their 1992-93
trial testimony.  [Ex. I and J]    One of these same witnesses

_____

3. The AUSA in Plaintiff's criminal case did not hesitate
to indict Plaintiff's codefendants Noble Bennett, Gary Hamell EL,
Raymond Amerson Bey, Gerald Hopkins Bey and Sam Petty on three
seperate occassions from 1985 through January 9, 1991.

has also acknowledged that the AUSA provided him with statements of other witnesses to review before his testimony. [Ex. I ] Thus, it's clear that the only purpose Plaintiff uses any newly released documents is to try to over turn his conviction and prove his innocence. [4]

15.    Graham's Decl. [p.17] claim that disclosure of investigation reports, property inventory reports, case summary reports, etc., would reveal the full scope, limits and directions of the investigation of the MSTA and others.    First, this assertion is false as the only investigation on the MSTA was officially closed on April 7, 1987 by the ATF, thus, it's clear that there is no scope nor direction of an investigation to be revealed. Second, the investigation that led to Plaintiff's indictment was not on the MSTA, rather, was on"Plaintiff and his associates" according to Plaintiff's trial AUSA who filed a motion on November 7, 2005 with the Eighth Circuit.[Ex.G]    Furthermore, a July 24, 1989 FBI memorandum which the FBI was part of the investigation that led to Plaintiff's indictment show that the investigation was on "Plaintiff and his associates" not the MSTA. [Ex.N]

16.    Graham's Decl. [p.21] claim that the individual's name and identifying information contained in the investigative files "were compiled in connection with an investigation into viola-

---

4.    It's noteworthy to point out to this Court that four of the government witness and their families left the witness protection program back in 1995 and been living back in St. Louis for over a decade and no harm has come to any witness nor their families.

tions of various crimes, including multiple murders, drug traf-
ficking and continuing criminal enterprise." First, this asser-
tion is also false and misleading as the information in the 1983
file was not complied in connection with the investigation of
murders, drugs and a criminal enterprise that led to Plaintiff's
indictment.   The 1988 ATF file, and the July 24, 1989 task
force file are related to the same investigation as both investi-
gations combined led to Plaintiff's indictment and the 1983 in-
vestigation failed to obtain any indictments on Plaintiff and
other members of the MSTA. [Ex. D,G and N]

    17.   It's also noteworthy to point out to this Court that
during the 1983 investigation by the task force which included
the ATF,FBI, and other federal and local lawenforcement agencies,
the FBI also maintained a file and on February 29, 2000, released
over 1100 pages and later another 600 pages from its 1983 file.
[Ex. K & L]    Included amongst these pages were reports showing
grand jury subpoenas, toll records on MSTA members, surveillance
logs, pen-register installation record, undercover surveillance
apartment, investigation strategy reports, video surveillance
camera purpose and location and the names of AUSA, etc.   Ex.
M-1 through 8]    These records details the surveillace techni-
ques, specifically the circumstances under which the techniques
were used, the specific location where employed and in making
these disclosures, the FBI was not concern with exemption 7(A)
in releasing records from a 1983 file that had been closed at
that time for thirteen years.  see[Motion For Summary Judgement
p.29]

18.    Averill Graham's Decl. [p.29] contends that all non-exempt, reasonably segregable information has now been provided to plaintiff.    This assertion is false as it clear from his Decl. [p.10] that the only record that was released from the 1983 file was the June 7, 1983 report.    The remaining records has been withheld improperly under exemption 7(A), even though the file is over twenty-three years old and been closed for nineteen years.

For the above reasons, Defendant's Motion For Summary Judgement should be denied and Judgement should be entered in favor of Plaintiff that all segregable portions of records being maintained in the 1983 ATF task force file No. 7665 0683 1501 L (01) and No. 33920 83 1501Y be released to Plaintiff pursuant to 5 U.S.C. 552(b).[5]

Respectfully submitted,

JERRY LEWIS BEY R/G.# 22328-044
PRO SE PLAINTIFF
P.O. BOX 725
EDGEFIELD, S.C. 29824

---

5.   This Court should grant Plaintiff's relief sought not just solely on the fact the records from the 1983 file was withheld at his trial in violation of Brady and the May 15, 1991 court order, rather, relief should be granted based on 7(A) was mis-applied to a case that has been officially closed for nineteen years.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JERRY LEWIS BEY,                    )
                  Plaintiff,        )
                                    )
                                    )
-v-                                 ) Civil Action No.  05-0224 (JGP)
                                    )
                                    )
U.S. DEPARTMENT OF JUSTICE,         )
                  Defendant.        )
                                    )

## AFFIDAVIT OF JERRY LEWIS BEY

I, Jerry Lewis Bey, being duly affirm on oath, states as follows:

1.   I am over the age of eighteen years and is the Plaintiff in the captioned cause who has first hand knowledge of the facts stated below.

2.   Since July 2000, I have requested records from the Bureau of Alcohol, Tobacco, Firearms And Explosive (BATFE) pursuant to the Freedom of Information Act ("FOIA") that is being maintained in a twenty-three year old BATFE Organized Crime Drug Enforcement Task Force (OCDETF) investigation case file, titled Jerry Lewis Bet, et.al.

3.   The Disclosure Division Chief, Averill P. Graham has over the years claimed that this file could not be located, and once it was located, has denied the release of records from this file by misapplying 7(A) as he claim the release of these records could reasonably interfere with on-going law enforcement pro-ceedings.

4.   On February 29, 2000, I recieved 1,177 pages from the Federal Bureau of Investigation (FBI) which records was from its portion of the same 1983 OCDE task force investigation, and according to a May 20, 1987 FBI airtel that was from the 1,177 pages, the task force investigation was opened on May 23, 1983 and the BATFE was the lead agency investigating allegations of illicit drug trafficking by me and members of my organization known as the Moorish Science Temple of America (MSTA).

5.   The airtel states that four years later, on April 7, 1987, the ATF after the task force failed to develope any evidence of drug trafficking, closed the investigation.   On May 20, 1987, the FBI also closed the investigation.   The information gathered resulted in no indictments on petitioner nor any members of the MSTA.

6.   Two years later, on July 24, 1989, another OCDE task force investigation case was opened on me and my associates, which investigation led to a RICO indictment on Janusry 9, 1991.

7.  Plaintiff had no idea that he had been the subject of a 1983 task force investigation nor that the time frame of that investigation was incorporated in the January 9, 1991 indict-

-2-

ment as part of the charged drug conspiracy and RICO enterprise by the AUSA who would hide the 1983 task force (ATF and FBI) files.

8.   In September 1992 I would be charged in a superceding RICO indictment that also incorporated the 1983 investigation time frame as part of the charged drug conspiracy and RICO enterprise.

9.   In October 1992 my trial began and in June 1993 I was found guilty and would be sentence to life in prison in September 1993.

10.   On November 22, 1995 my conviction was affirmed by the Eighth Circuit.

11.   On January 8, 1997 I would file a joint Rule 33 motion for a new trial with some of my codefendants based on evidence I obtained during my state case in 1994-95.

12.   On February 4, 1997 The ATF acknowledged that my criminal case was officially closed.   Ex. E

13.   On November 27, 2000, the district court denied my Rule 33 motion and acknowledged that my criminal case was closed.

14.   Defendant since september 29, 2000 has claimed that the 1983 file could not be located, yet, located the pen-register that was being maintained in the 1983 file. [Defendant's Satements of Facts p.2 at6]

-3-

15.    Defendant [Graham's Decl. p.11] acknowledged that Plaintiff's August 30, 2004 letter was recieved by his office, regarding the Eighth Circuit denying my motion on July 7, 2004. However, Defendant omits that I attached a copy of the July 7, 2004 order.

16.    Defendant [Graham's Decl. p.12] after recieving my August 30, 2004 and the attached court order still denied my resubmitted request for the 1983 file.

17.    Defendant has no intention of releasing any records from the 1983 file as the AUSA who prosecuted my case has lied to him over the years about the investigation being open, even though on November 7, 2005 this same AUSA filed a "Government Response Motion" in another matter pending before that Court stating that records filed by me that came from the FBI 1983 file (which the ATF was the lead agency) is totally unrelated to the investigation that led to my RICO indictment. Ex.G pp. 17,24,26 and 27]   Defendant after being in consultation with this same AUSA, now attempts to argue before this Court that the two investigation are related and release of the records could reasonably interfere with the application I have before the Eighth Circuit.

Affiant Further Sayeth Naught.

This 19th day of April, 2006.

NOTARY PUBLIC

JERRY LEWIS BEY/#22328-044
PRO SE PLAINTIFF

MY COMMISSION EXPIRES: March 20, 2011

-4-