UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| JERRY LEWIS, <br> a/k/a JERRY LEWIS-BEY, <br><br> Petitioner, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | No. 05-2447 EMSL |

**GOVERNMENT'S RESPONSE TO APPLICATION
TO FILE SUCCESSIVE SECTION 2255 MOTION**

By its undersigned attorneys, the United States files its response to petitioner's application to file a successive motion pursuant to Title 28, United States Code, Section 2255.

1. Petitioner's application falsely captions itself as one "seeking authorization to file a second habeas petition in the district court...;" however, in truth, petitioner seeks to file what is at least his fifth separate Section 2255 motion or its equivalent. As will be seen, petitioner's most recent collateral attack fails to establish entitlement to authorization and is untimely, as well. Thus, petitioner's application must denied.

**PROCEDURAL CONTEXT**

2. This petitioner remains well-known to this Court and to the District Court, where he was the lead defendant convicted of multiple counts after a lengthy trial establishing his control over an extremely violent, long-term racketeering enterprise dealing in narcotics and murder. A summary of facts established a**RECEIVED**

Ex. G

NOV 7 2005

U. S. COURT OF APPEALS
EIGHTH CIR

authorship) that petitioner is "currently living with a girlfriend" evidently at the location where a pen register was authorized "on 4/1/86" simply does not reveal anything false about Sgt. Kelly's testimony. The exhibit does not show Sgt. Kelly knew, or would have known, anything different than his testimony on this point. Even if Sgt. Kelly somehow knew (or it could have been pointed out to him) that someone in the FBI apparently may have thought petitioner on 4/4/86 "currently" lived at a particular location, that does not impeach Sgt. Kelly's testimony describing his understanding that, at some undisclosed time prior to utilization of the pen register, petitioner was a visitor to the apartment. That Sgt. Kelly may have aided in, or known of, an earlier proposed[8] Organized Crime Drug Enforcement Task Force (OCDETF) investigation of whether petitioner and the Moorish Science Temple of America (MSTA) violated narcotics laws simply had no bearing on that which he did testify about and petitioner's exhibits do not show otherwise.

---

[8] Ex. H-2 is a June, 1983, memorandum recounting possible investigative strategy "should" an OCDETF [referred to in the memo as a "Narcotics Task Force"] investigation of the MSTA be approved. Petitioner seems unaware that the primary effect of approval is to permit federal funding to pay for state or local agencies' overtime expenses, if any. This administrative distinction disproves nothing of Sgt. Kelly's testimony.

17

that, in a different and years-earlier FBI investigation, that agency acquired "subscriber information and long distance toll records" for a telephone issued in petitioner's name at a particular address in Florissant, Missouri, for a period in 1985, which would include the time Thomas Bey made the post-Tiari murder call. Yet not only did Thomas Bey's testimony not recount which telephone number he called, nor which residence or address of petitioner's, his testimony revealed that he made a <u>local</u> call, not a long distance one (yet "long distance" records are what petitioner's exhibits C-4 show the FBI had requested). Moreover, the prosecution at petitioner's 1992-1993 trial rested primarily upon DEA and St. Louis Metropolitan Police Dept. (SLMPD) investigation. No reasonable discovery obligation could require disclosure to the defense of seven-plus year old toll records held by a different, uninvolved investigative agency when the records have no recognizable apparent impeaching or exculpatory impact. In any event, petitioner had the ability before and throughout his trial to subpoena his telephone company if he thought its records would help his cause. <u>United States v. Williams</u>, 902 F.2d 678, 681-82 (8th Cir. 1990) (defendant could subpoena his own telephone records). Since he evidently did not, it is unsurprising that the prosecution also would not recognize that such records had any exculpatory value. Since the records requested by the FBI evidently would not account for 3-way calls from a local halfway

24

Tiari killing at a time the wife was not present or that she was unaware of an incoming call at a time the next day after police left. The wife's statements, possessed by the Government, incriminated petitioner or showed the wife's absence of knowledge and were to be used to cross-examine her, should she testify for the defense. To extract a paragraph or two out of a context, as does petitioner, ignores the import of her 1989 interview and what it would have cost petitioner (in terms of additionally-incriminating evidence being admitted against him) to put her on the stand simply to imply he was not at their home part of the day after Tiari's killing. Villasana v. Wilhoit, 368 F.3d 976, 979 (8th Cir. 2004), cert. denied, 125 S. Ct. 1345 (2005) ("Brady limited to evidence a reasonable prosecutor would perceive as the time as being material and favorable to the defense"). There was no knowing or unknowing failure to disclose documents having apparent utility to petitioner's defense. In any event, the overwhelming weight of the proof of petitioner's guilt on multiple counts would not be undercut by the documents upon which petitioner relies.

    (g)   Alleged Becker Falsehoods?

According to petitioner, Special Agent (S/A) Dennis Becker testified that, in 1983, he obtained a pager company's records pertaining to petitioner and two others, but was lying on this point. Apart from petitioner never explaining how, if this was a

26

lie, it tended to wrongly incriminate him or had any significance whatsoever, the petitioner plucks words and pages out of context and labels them his exhibits D, H-2 and J-1, then argues they somehow establish S/A Becker lied. Only J-1 possibly relates to S/A Becker's testimony and it shows, consistently with his 1992 testimony, that he reviewed pager company records in June, 1983 (he testified based on his own report, see Vol. 16, p. 100; he could not properly be impeached with J-1, someone else's statement). That a second agent may have been with S/A Becker at the time is hardly a material matter, especially since J-1 does not indicate which, if any, of the paging company's records the second agent may have reviewed. Further, petitioner ignores that H-2, by its terms, refers to an April, 1983, planning conference for a then-not-approved OCDETF investigation of an entity (the MSTA) different from the JLO. Moreover, while petitioner would be included in an investigation of the MSTA, he wrongly emphasizes file-closing conclusionary statements by an unnamed author of ex. D.[14] Not only is petitioner wrong in claiming that <u>In re Beech Aircraft v. Rainey</u>, 488 U.S. 153 (1988), would make such statements admissible, the statements are not exculpatory, in any case. The earlier investigation of the MSTA, according to ex. D., was closed <u>not</u> because its individuals were not drug dealers but because, at that

---

[14] Ex. D. indicates it is from "SAC, St. Louis" and is an FBI document. Since S/A Becker, an ATF agent, was not the Special Agent in Charge (SAC) of the St. Louis Division of the FBI, ex. D is plainly not his statement nor does it impeach his testimony.

testimony, the information is not material. <u>Id</u>. (citation omitted). Likewise, "speculations do not satisfy the reasonable probability requirement..." <u>United States v. Gary</u>, <u>supra</u> at 834. Thus, impeachment evidence that is merely cumulative or collateral, as here, is insufficient to establish prejudice under <u>Brady</u>. See <u>United States v. Dumas</u>, 207 F.3d 11, 16 (1st Cir. 2000). "[F]ailure to disclose may be disregarded if there is no reasonable probability that had the evidence been disclosed, the result would have been different." <u>United States v. Jackson</u>, 345 F.3d 59, 77 (2nd Cir. 2003), <u>cert</u>. <u>denied</u> <u>Mazyck v. United States</u>, 540 U.S. 1157 (2004). The telling inquiry is whether this evidence "can reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." <u>Kyles</u>, 514 U.S. at 435; <u>United States v. Josleyn</u>, 206 F.3d 144, 156 (1st Cir. 2000). Because petitioner's attacks do not undermine that confidence and fail to establish "a reasonable probability" that "the result of the proceeding would have been different," <u>United States v. Gary</u>, <u>supra</u>; <u>United States v. Ryan</u>, 153 F.3d 708, 711 (8th Cir. 1998); in view of the evidence and verdicts summarized in Attachments A and B, his application must be denied.

                      Respectfully submitted,

                      CATHERINE L. HANAWAY
                      United States Attorney

                      MICHAEL K. FAGAN, #6617

49

       Assistant United States Attorney
       111 South 10th Street, Room 20.333
       St. Louis, Missouri 63102
       (314) 539-2220


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was mailed to:

  Jerry Lewis Bey
  Reg. 22328-044
  FEDERAL PRISON CAMP
  P.O. Box 725
  Edgefield, SC 29824

this 7th day of November, 2005.

       _____
       MICHAEL K. FAGAN, #6617
       Assistant United States Attorney