UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. S1-91-1CR(6) |
| v. ) | |
| ) | Judge George F. Gunn |
| JERRY LEWIS-BEY, et. al. ) | |

### AFFIDAVIT OF "MLB"

I, "MLB", being duly sworn on oath, states as follows:

1. I am over the age of eighteen years, and I am competent to testify. I have personal knowledge of the facts alleged herein, and if called as a witness would testify consistent with these facts.

2. I was a defendant in the captioned cause. I entered a plea agreement with the government to testify in the captioned cause, and did so testify. My testimony in the captioned cause is the subject of this affidavit.

3. I am giving this statement under the pseudonym of "MLB" because I am fearful that the prosecuting attorneys and/or the case agents involved in this case will kill me should they know my identity because I am now telling on them.

4. I am giving this statement freely and voluntarily. There have been no money, gifts, or anything else of value given or offered to be given to me by anyone. I have not been threatened in any way with death or bodily harm to myself or my family in order to coerce me into giving this statement.



Ex. I

I

5. I have not taken any drugs, alcohol, or medication that might interfere with my ability to know and understand what I am doing.

6. I am presently in the federal witness protection program, but I have never disclosed the location or any other information regarding my location or how to reach me, to the attorney who took this statement.

7. The attorney who took this statement advised me that giving this statement could result in the government bringing perjury charges against me. I was further advised that giving this statement might result in the government filing charges to violate my parole. I was further advised that giving this statement might result in problems with the government maintaining me in the witness protection program. I was asked whether I had discussed my decision to give this statement with my lawyer, or a lawyer of my choice, to which I responded "no". I was asked whether I wanted to have a lawyer present with me when I gave this statement, to which I responded "no". I was asked whether anyone was present for this statement that I was fearful of, to which I responded "no". I knew, but I was also informed, that the attorney with whom I met, was the attorney for another defendant in the captioned case, and I was further informed that this attorney was not acting as my lawyer, and could not act in my behalf, to which I responded "I understand". I was further advised that any information that I provided that would be helpful to the attorney.'s client, might also be helpful to all of the defendants in the captioned case, including Jerry Lewis-Bey, to which I responded "I understand".

-2-

8. I have not been given, nor promised anything by Jerry Lewis-Bey, and I have not been threatened in any way by Jerry Lewis-Bey, to cause me to provide this statement.

9. I personally contacted, by telephone, the lawyer to whom I am giving this statement. I never disclosed my location to the lawyer, and the lawyer received no fees to speak with me.

10. When I began cooperating with the government, I was always guaranteed and assured, by Prosecutor Fagan, Agents Dwyer, Madrella, and Cira, that I would not do more that 1,2,3 or 4 years, even though my plea agreement called for a sentence of 15 years. I was threatened by the prosecution that if I backed out, I would never see the streets again. So when questioned at trial about the plea agreement I testified falsely that there were no secret or different agreements.

11. I was told to be creative in my testimony. Even though I repeatedly told the government prosecutors and agents that I was never involved in any aspects of anybody's drug business, I was told that in order to make me more believeable, I had to say that I was involved in the drug business. The testimony that I gave implicating myself in drug dealing was false.

12. Just before my plea agreement was signed, I was given a polygraph examination at the jail at St. Genevive. I was attached to some type of machine, an examiner asked me questions, as he made notes. I was never informed of the results of the polygraph. I spoke with other government witnesses, Michael Shepherd-Bey and Ronnie Thomas-Bey, who informed me that they, too, had been given polygraph examinations.

-3-

13. During the time that I was in custody, after I agreed to cooperate, I was removed from jail, under the authority of a Court Order to be brought to the federal building to meet with the government. I would in fact be allowed to dress in my own clothing, and when I arrived at the federal building I would be allowed to ride with my wife, uncuffed, in an unmarked car, to a Motel 6 off Interstate 55, where I would be allowed several hours of conjugal visits with my wife. The room was always prepaid, and I would be given the key, and provided with Kentucky Fried Chicken during these outings. When questioned about special meals and other benefits, I testified falsely that I was not allowed any such things as a government witness.

14. I met with government agents many, many times. I recall meeting with Mr. Fagan and Agent Mendrella twice in New York. I met with Agents Dwyer, Mendrella, and Mr. Fagan 3-4 times a week at Arnold, Missouri. At each of this meetings, the prosecutor and the agents took notes. There were many times when they would bring notes from other cooperating witnesses for me to review. AT many of these meetings I was warned " you don't see us taking any notes". I understood this to mean that should I be asked by any defense lawyer whether notes were taken at my meetings with the government, that I should say "no". I was specifically contacted in New York, by Washington D.C., with a message to call Mr. Hoag at the U.S. Attorney's Office at a certain hour. When I called Mr. Hoag, he told me that they did not intend to "give them notes, we're going to give them what we want them

-4-

to have...yours comes to about 1½ pages." I understood this to mean that the notes that I had seen them writing would not be given to the defense attorneys.

15. OTher benefits I received from the government included being allowed to call the U.S. Attorney's Office, collect and without restrictions, any have them make three way calls to my family and friends. My calls were always accepted by Agents Dwyer, Cira, Mr. Fagan, or the secretary.

16. I met with Ronnie Thomas-Bey ad Michael Shepher-Bey when they were discussing and deciding which murders they would "put" on whom. I informed Mr. Fagan that they were meeting and having such discussions, but Mr. Fagan did not appear concerned or interested.

17. I know that Michael Shepherd-Bey was still using drugs while at the St. Clair County Jail, which drugs were smuggled in by his wife. After I began cooperating with the government, I informed them that although Shepherd-Bey was a cooperating witness, that he was using drugs at the jail. I do not know whether any drug test or any action was requested by the government after I made them aware of this fact.

18. Because I was told by the government to be creative in my testimony, there were many facts involving drugs, murders, and conversations, to which I testified falsely.

FURTHER AFFIANT SAYETH NOT.

"MLB"

-5-

STATE OF *Missouri* )
                    )
COUNTY OF *St. Louis* )

The undersigned, A Notary Public in and for the above County and State, certifies that the person signing "MLB" personally known to me, appeared before me in person and acknowledged that he signed and delivered the said affidavit as his free and voluntary act, for the use and purposes therein set forth.

Dated: *September 29, 1995*

_____
NOTARY PUBLIC

JO-ANN HUDDLESTON
NOTARY PUBLIC STATE OF MISSOURI
ST. LOUIS COUNTY
MY COMMISSION EXP. APR 5, 1997

-6-