### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JERRY LEWIS BEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2241 (JGP)** |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF JUSTICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM  ORDER

This matter is before the Court on **Defendant's Motion For Summary Judgment** [14]. Having considered the motion, plaintiff's opposition, and the entire record, the Court will grant the motion in part.

### BACKGROUND

The Bureau of Alcohol, Tobacco and Firearms ("ATF"), in conjunction with federal and local agencies, participated in an investigation of plaintiff and his organization, the Moorish Science Temple of America, during the 1980's.[1] *See* Compl. ¶ 5; Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mot."), Declaration of Averill P. Graham ("Graham Decl."), Ex. M (July 17, 2000 letter to A.P. Graham).  This action concerns an investigatory file, referred to as the 1983 file, created by the

---

[1]     According to its website (www.atf.gov), effective January 24, 2003, the law enforcement functions of the Bureau of Alcohol, Tobacco and Firearms were transferred from the United States Department of the Treasury to the United States Department of Justice.  The entity's name was changed to the Bureau of Alcohol, Tobacco, Firearms and Explosives.

ATF as part of its investigation.  Plaintiff and ATF have been engaged in a multi-year dispute over the disclosure of the contents of the 1983 file under the Freedom of Information Act.  The history of their dispute is as follows.

Plaintiff submitted three requests to ATF for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in July 2000.  Compl. ¶¶ 5-6.  In his first request, dated July 17, 2000, plaintiff "requested all pen registers, surve[i]llance logs, and toll records" for the period of "April 1986 to July 1986."  Graham Decl., Ex. M.  Plaintiff believed that this information would be found in the ATF's "1983 investigation file."  Compl. ¶ 5.  In his second request, dated July 27, 2000, plaintiff sought "information maintained in your files on a Fred Knox, who was killed in St. Louis, Missouri on October 3, 1990," including "interviews of Mr. Knox and ATF agents in St. Louis between April 1989 and November 1990."  Graham Decl., Ex. N (July 27, 2000 request to Department of the Treasury, ATF).  In his third request, which was also dated July 27, 2000, plaintiff requested "all records of a pen-register that the ATF . . . had on [his] telephone . . . from April 1986 through July 31, 1986," including "all surve[i]llance logs, notes, and any debriefing reports and photos."  Graham Decl., Ex. P (July 27, 2000 letter to Department of the Treasury).

ATF responded to plaintiff's three July 2000 requests in one letter.  *See* Graham Decl., Ex. S.  In regards to plaintiff's first and third requests, the agency refused to release pen register records under FOIA Exemptions 7(C) and 7(E).  The agency also denied the existence of a 1983 investigation file, claiming that it did not, contrary to his assertions, maintain a file on the plaintiff at anytime prior to 1988.  Graham Decl. ¶ 19.  In regards to his second request, the agency reminded plaintiff that information pertaining to Mr. Knox already had "been released in

part," and advised plaintiff that the ATF maintained no videotapes.  The agency did, however,

release partially redacted documents that concerned Mr. Knox.  Graham Decl. ¶ 19 & Ex. S

(September 29, 2000 letter from A.P. Graham, Ref. 00-2239).  The agency advised plaintiff that

he had "the right to file an administrative appeal."  *Id.*  Plaintiff did not appeal this decision.  *Id.*

¶ 19.

Months later, plaintiff submitted another FOIA request for information about himself and

the Moorish Science Temple of America "that was gather[ed] by [ATF] on or about June 1983 by

[an] ATF Special Agent."  Compl. ¶ 8; Graham Decl. ¶ 20 & Ex. T (May 11, 2001 letter to

Department of the Treasury).  Plaintiff sought "all ATF investigation reports and any other

related information concerning the [1983] investigation."  Graham Decl., Ex. T.  ATF responded

to plaintiff the same way it had before – by denying the existence of the 1983 investigation file.

Graham Decl. ¶ 21 & Ex. U (June 20, 2001 letter from A.P. Graham, Ref. 01-1718); Ex. V (June

26, 2001 letter from A.P. Graham, Ref. 01-1718).  The agency flatly stated that it had "not been

able to identify responsive records relating to a <u>1983 investigation</u> of you or the Moorish Science

Temple."  Graham Decl., Ex. V.

Plaintiff's next correspondence with ATF was a request for "a report written by an

unknown ATF agent on May 23, 1983, where [plaintiff] was the subject of the investigation as

well as the Moorish Science Temple of America."  Graham Decl. ¶ 23 & Ex. W (July 5, 2001

letter to A.P. Graham).  Again, ATF responded that it did not possess any records pertaining to a

1983 investigation.  But ATF did notify plaintiff that it did have a file pertaining to a 1988

investigation of the Moorish Science Temple.  *Id.* ¶ 24 & Ex. X (June 23, 2001 letter from A.P.

Graham, Ref. 01-1869)).  In response, Plaintiff submitted a new FOIA request for this 1988 file.

*Id.* ¶ 25 & Ex. Y (July 31, 2001 FOIA request).  Relying on FOIA Exemption 7(A), ATF refused

to release the 1988 file pertaining to the Moorish Science Temple of America because plaintiff's

criminal case remained open on appeal.  Graham Decl. ¶ 26 & Ex. Z (August 13, 2001 letter

from A.P. Graham, Ref. 01-2089).  ATF's decision was affirmed on administrative appeal.  *Id.* ¶¶

30-31 & Ex. EE (December 12, 2001 letter from M. Logan, Asst. Dir., Liaison and Public

Information, ATF).  ATF denied plaintiff's repeated requests for release of this 1988 file, noting

each time that plaintiff had litigation pending in the Eighth Circuit and that release of the

information was reasonably likely to interfere with these "enforcement proceedings."  *Id.* ¶¶ 33-

34, 36-40.

     Not one to quit, in spite ATF's assertions that it did not exist, Plaintiff again requested

release of information from the 1983 file.  Graham Decl., Ex. PP.  By letter dated July 30, 2003,

plaintiff specifically requested "a copy of a June 7, 1983 ATF report written by [a] Special Agent

. . . of the Bureau of Alcohol, Tobacco and Firearms.  *Id.*  Plaintiff provided both the name of the

special agent who wrote the report and the agent's "sworn testimony," which was introduced at

Plaintiff's criminal trial.  Plaintiff suggested that this information might "assist" the ATF in

locating the report.  *Id.*  And it did.  For the first time in three years the ATF located the 1983

file, ATF File No. 33920 83 1501 Y.  Graham Decl. ¶ 41 n.6.  According to the declarant, the

"investigative file . . . was located in ATF's St. Louis Field Division but . . . [was] not reflected

in ATF's only indexed criminal database."  *Id.*  ATF apparently relies on its indexed criminal

database, known as TECS, when responding to FOIA requests, which explains, according to

4

ATF, why its prior searches had not uncovered the file.[2]  *Id.*  Notwithstanding that it had finally located the 1983 file after denying its existence for so many years, ATF nonetheless refused to release the report to the plaintiff.  ATF refused to release the report under Exemption 7(A) because it "related to an ongoing investigation."  *Id.* ¶ 42 & Ex. QQ (August 12, 2003 letter from A.P. Graham, Ref. 03-2174).  Plaintiff appealed this decision administratively, and the matter was remanded to ATF.  *Id.* ¶ 42 n.8.  ATF released portions of the June 7, 1983 report after having redacted portions under FOIA Exemptions 2, 7(C), and 7(D).  *Id.* ¶ 44 & Ex. SS (January 6, 2004 letter from A.P. Graham, Ref. 03-2174).

Plaintiff's next FOIA request was for ATF File No. 7665 0683 1501 L (01), which pertained to plaintiff and the Moorish Science Temple of America.  Compl. ¶ 24; Graham Decl. ¶ 45 & Ex. TT (January 24, 2004 FOIA request).  This file was part of the larger 1983 file, ATF File No. 33920 83 1501 Y, which had been withheld under Exemption 7(A).  Graham Decl. ¶¶ 41, 45.  ATF refused to release the requested file under Exemption 7(A).  *Id.* ¶ 46 & Ex. UU (February 19, 2004 letter from A.P. Graham, Ref. 04-777).  Plaintiff's subsequent requests for this information were denied on the same ground, as were the corresponding administrative

---

[2]        The declarant explained why ATF initially failed to locate the 1983 file:

ATF criminal investigation 33920 83 1501Y does not appear in the TECS database.  Multiple searches of plaintiff's name and other identifying information such as Social Security Number and date of birth were used multiple time over the seven years of correspondence with plaintiff.  The [1983] investigative file was eventually located through inquiries with the St. Louis Field Division personnel who had some historical knowledge of that particular Field Division's investigative cases.  This file, as all ATF files, are in most cases located through a TECS database search and not through the methods employed in this particular instance.

Graham Decl. ¶ 111.

appeals.  *Id.* ¶¶ 47-60.

## DISCUSSION

ATF moves for summary judgment on the ground that the 1983 investigative file, the

subject of plaintiff's numerous FOIA requests, was properly withheld under several FOIA

exemptions.[3]  Def.'s Mot. at 1.  With respect to plaintiff's request for pen register records, ATF

argues that plaintiff is barred from raising this claim because he did not seek an administrative

appeal of the agency's decision.  *Id.* at 9-10.  With respect to the remaining portions of the 1983

file that were withheld, ATF argues that they are protected from disclosure under FOIA

exemption 7(A).  Alternatively, ATF argues the 1983 file is protected from disclosure under

FOIA exemptions 2, 3, 7(C), 7(D), 7(E), and 7(F).

### A.    Summary Judgment Standard

To obtain summary judgment in a FOIA action, an agency must show, viewing the facts

in the light most favorable to the requester, that there is no genuine issue of material fact with

regard to the agency's compliance with the FOIA.  *Steinberg v. United States Dep't of Justice*,

306 U.S. App. D.C. 240, 243, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. United

States Dep't of Justice*, 240 U.S. App. D.C. 339, 348, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

The Court may award summary judgment solely on the information provided in affidavits or

declarations when they describe "the justifications for nondisclosure with reasonably specific

detail, demonstrate that the information withheld logically falls within the claimed exemption,

and are not controverted by either contrary evidence in the record nor by evidence of agency bad

---

[3]       ATF also asserts its "search for responsive records is not at issue" in this case
because plaintiff is challenging "only the withholding of the contents of the [1983]
file."  Def.'s Mot. at 9.

faith."[4] *Military Audit Project v. Casey*, 211 U.S. App. D.C. 135, 149, 656 F.2d 724, 738 (D.C. Cir. 1981).

### B.    Exhaustion of Administrative Remedies

A plaintiff "may generally seek judicial review of his FOIA request only after he has exhausted all administrative remedies." *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir.), *cert. denied*, 516 U.S. 843 (1995). "Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Oglesby v. United States Dep't of the Army*, 287 U.S. App. D.C. 126, 130, 920 F.2d 57, 61 (D.C. Cir. 1990) (citing *McKart v. United States*, 395 U.S. 185, 194, 89 S. Ct. 1657, 1663 (1969)). A FOIA suit cannot proceed if a plaintiff fails to exhaust his administrative remedies. *See Hidalgo v. Fed. Bureau of Investigation*, 358 U.S. App. D.C. 104, 108, 344 F.3d 1256, 1260 (D.C. Cir. 2003) (remanding with instructions to dismiss FOIA claim under Fed. R. Civ. P. 12(b)(6) because plaintiff had not exhausted administrative remedies).

Here, ATF denied plaintiff's request for pen register records on the ground that this information was exempt from disclosure under FOIA exemptions 7(C) and 7(E). *See* Graham Decl., Ex. S. Although ATF's written response notified plaintiff of his right to pursue an

---

[4]    In support of its summary judgment motion, defendant submits the declaration of Averill P. Graham, Chief, Disclosure Division, ATF. Graham Decl. ¶ 1. In this capacity, Ms. Graham reviews requests made to ATF under FOIA, and reviews requests referred to ATF from other agencies. *Id.* She is responsible for processing FOIA requests, initiating searches for responsive records, supervising the determination of records to be disclosed, and recording all administrative appeals filed with ATF. *Id.* Ms. Graham is familiar with ATF's procedures in responding to plaintiff's FOIA requests. *Id.* ¶ 2.

administrative appeal of this decision, plaintiff chose not to do so.  *See* Graham Decl. ¶ 19.

Plaintiff concedes that he "did not administratively appeal the denial."  Plaintiff's Motion in

Opposition to Summary Judgment ("Pl.'s Opp'n") at 2.  However, he argues that an appeal

would not have been helpful in this situation because the requested pen register records were "in

the 1983 ATF file that [ATF's] Disclosure Division claimed could not be located."  *Id.*  He

further asserts that ATF "failed to conduct a search reasonably calculated to uncover the pen-

register records."  *Id.*

      ATF's decision to withhold the pen register records under Exemption 7(A) was a proper

ground for an administrative appeal.  An administrative appeal "allows the top managers of an

agency to correct mistakes made at lower levels and thereby obviates unnecessary judicial

review."  *Oglesby*, 287 U.S. App. D.C. at 130, 920 F.2d at 61 (citing *McKart*, 395 U.S. at 194,

89 S. Ct. at 1663).  By eschewing administrative review, Plaintiff foreclosed any possibility that

ATF would reconsider its decision to withhold the records.  He attempts to excuse his failure to

exhaust his administrative remedies by arguing that an appeal would not have been helpful

because ATF's stated reason for denying his request (FOIA exemptions 7(C) and 7(E)) was a

pretext.  In plaintiff's opinion, ATF denied his request because it could not locate the pen register

records, which were part of the 1983 file.  Plaintiff concludes that ATF's search for the pen

register records  must have been unreasonable.  The Court does not find plaintiff's argument to

be convincing.  Assuming, as Plaintiff contends, ATF could not locate the pen register records

because it "failed to conduct a search reasonably calculated to uncover the relevant [records],"

Pl.'s Opp'n at 2,  this would have been a proper argument to raise on administrative appeal, and

does not excuse his failure to do so.  By failing to appeal, he forfeited the opportunity to have

ATF reevaluate whether its search for the pen records was reasonable.  Moreover, the Court is not prepared to accept plaintiff's unsupported assertion that ATF's response was a pretext.  ATF admitted numerous times that it was unable to locate the 1983 file.  ATF had no motive to deceive plaintiff with regards to the pen register records.  If it could not locate the records because they were part of the 1983 file, it would have acknowledged as much.  The Court therefore concludes that plaintiff's admitted failure to exhaust his administrative remedies bars his claim for the pen register records.  *See Wilbur v. Central Intelligence Agency*, 359 U.S. App. D.C. 380, 381, 355 F.3d 675, 676 (D.C. Cir. 2004) ("[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA,' which 'means that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response.'") (citations omitted).  *See also Hidalgo*, 358 U.S. App. D.C. at 107, 344 F.3d at 1259 ("FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review.").

### C.     Adequacy of Search

While, in general, an agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" *Valencia-Lucena v. United States Coast Guard*, 336 U.S. App. D.C. 386, 390, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 283 U.S. App. D.C. 86, 88, 897 F.2d 540, 542 (D.C. Cir. 1990)), and is obligated to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *Oglesby*, 287 U.S. App. D.C. at 137, 920 F.2d at 68 (citing *Weisberg*, 240 U.S. App. D.C. at 348, 745 F.2d at 1485), the adequacy of defendant's search is not at issue

9

here.  As defendant notes, and the Court agrees, "the adequacy of the ATF's search for responsive records is not at issue" because plaintiff does not challenge the search in his complaint.  Def.'s Mot. at 8-9.  Instead, plaintiff challenges ATF's decision to withhold portions of the 1983 file under FOIA Exemption 7(A). *See* Compl. ¶ 39; Pl.'s Opp'n at 1 ("Plaintiff Jerry Lewis Bey . . . [r]espectfully file[s] his Motion in Opposition . . . on the grounds that the records requested by Plaintiff pursuant to the Freedom of Information Act were improperly withheld under the Act as Exemption 7(A) was misapplied.").  The Court will therefore consider whether the records were properly withheld.

### D.    FOIA Exemptions

ATF claims that records from the 1983 investigative file were properly withheld under FOIA exemption 7(A) because "a law enforcement proceeding was pending or prospective at the time of Plaintiff's FOIA request."  Def.'s Mot. at 12.  While ATF acknowledges that the 1983 investigation was formally closed in 1987, it argues that a "law enforcement proceeding," as contemplated by FOIA, extends "until the [plaintiff's] conviction is final."  *Id*. at 12.  Thus, ATF reasons that it was justified in denying plaintiff's requests because he "had various appeals, petitions for rehearing, and 28 U.S.C. § 2255 motions" pending at the time of his numerous requests.  *Id*.  Alternatively, ATF claims that "portions of the file were properly withheld pursuant to multiple FOIA exemptions," including exemptions 2, 3, 7(C), 7(D), 7(E), and 7(F). *Id*. at 15-30.  The Court will examine ATF's claimed exemptions in turn.

#### 1.    FOIA Exemption 7

##### a.    *Law Enforcement Records*

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.[5]  5 U.S.C. § 552(b)(7); *Fed. Bureau of Investigation v. Abramson*, 456 U.S.

615, 622, 102 S. Ct. 2054, 2059 (1982).  In order to properly withhold material under Exemption

7, an agency must establish that the records at issue were compiled for law enforcement

purposes, and that the material satisfies the requirements of one of the subparts of Exemption 7.

*See Pratt v. Webster*, 218 U.S. App. D.C. 17, 22, 673 F.2d 408, 413 (D.C. Cir. 1982) ("[I]n all

cases Exemption 7 protects from disclosure investigatory records compiled for law enforcement

purposes, but only to the extent that one of the exemption's subparts applies.") (internal

quotation marks omitted).  In assessing whether records are compiled for law enforcement

---

[5]  FOIA Exemption (b)(7) provides:

(b) This section does not apply to matters that are --

. . . .

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) ***could reasonably be expected to interfere with enforcement proceedings***, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

5 U.S.C. § 552(b)(7) (emphasis added).

purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Justice*, 350 U.S. App. D.C. 337, 341-42, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotation marks omitted).

There is no dispute the records sought by plaintiff were "originally compiled for law enforcement purposes." *Abramson*, 456 U.S. at 623, 102 S. Ct. at 2059. Plaintiff readily admits that these records were generated as part of a governmental investigation. *See* Compl. ¶ 1. ATF also maintains the records "are investigatory records compiled for law enforcement purposes," noting that "they pertain to an investigation conducted by multiple law enforcement agencies, including ATF, regarding plaintiff's large-scale criminal drug organization."[6] Graham Decl. ¶ 65. It is clear both from plaintiff's FOIA requests and from defendant's description of the 1983 file that the records were compiled for law enforcement purposes. The issue before the Court, as a result, is whether these records "satisfy the requirements of one of the six subparts of Exemption 7." *Pratt*, 218 U.S. App. D.C. at 22, 673 F.2d at 413. Both plaintiff and defendant focus their arguments primarily on Exemption 7(A).

### b.    *Pending or Prospective Enforcement Proceedings*

"Once it is determined that a request pertains to 'investigatory records compiled for law enforcement purposes,' the next question is whether release of the material would involve one of the six types of harm specified in clauses (A) through (F) of amended exemption 7." *Pratt*, 218 U.S. App. D.C. at 22, 673 F.2d at 413. ATF claims that portions of the 1983 file were properly

---

[6]    ATF was assisting the Federal Bureau of Investigation, the Drug Enforcement Agency, and the St. Louis Police Department in this investigation. Graham Decl. ¶ 65.

withheld under exemption 7(A) because a law enforcement proceeding was pending at the time

of plaintiff's multiple requests. ATF notes that "at the time of Plaintiff's latest request, he had a

petition pending before the Eighth Circuit seeking to overturn his convictions." Def.'s Mot. at 12

(citing *Jerry Lewis Bey v. United States*, 05-2447 (8th Cir. May 26, 2005)). ATF asserts that

release of these records would have interfered with plaintiff's case if his petition were successful.

Exemption 7(A) protects law enforcement records "to the extent that production of such

law enforcement records or information [] could reasonably be expected to interfere with

enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A)

is to prevent disclosures which might prematurely reveal the government's cases in court, its

evidence and strategies, or the nature, scope, direction, and focus of its investigations, and

thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence."

*Maydak v. United States Dep't of Justice*, 342 U.S. App. D.C. 393, 395, 218 F.3d 760, 762 (D.C.

Cir. 2000), *cert. denied*, 533 U.S. 950 (2001) (citing *Nat'l Labor Relations Bd. v. Robbins Tire &*

*Rubber Co.*, 437 U.S. 214, 241-42, 98 S. Ct. 2311, 2326 (1978)). "Another recognized goal of

Exemption 7(A) is to prevent litigants from identifying and intimidating or harassing witnesses."

*Id.* (citation omitted).

"Exemption 7(A) does not require a presently pending enforcement proceeding." *Ctr. for*

*Nat'l Sec. Studies v. United States Dep't of Justice*, 356 U.S. App. D.C. 333, 341, 331 F.3d 918,

926 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1104 (2004). As long as a law enforcement

proceeding is reasonably anticipated, Exemption 7(A) applies.[7] *See Manna v. United States*

_____

[7]    "Reasonably anticipated" means a "concrete prospective law enforcement
proceeding." *See Bevis v. Dep't of State*, 255 U.S. App. D.C. 347, 350, 801 F.2d
(continued...)

*Dep't of Justice*, 51 F.3d 1158, 1165 (3d Cir.), *cert. denied*, 516 U.S. 975 (1995) (withholding

under Exemption 7(A) proper while prospective criminal or civil (or both) proceedings are

contemplated against plaintiff and other Genovese Crime Family members); *Mapother v. Dep't

of Justice*, 303 U.S. App. D.C. 249, 258, 3 F.3d 1533, 1542 (D.C. Cir. 1993); *Moorefield v.

United States Secret Service*, 611 F.2d 1021, 1025-26 (5th Cir.) (although Secret Service

investigations were not directed toward trials or hearings, "activities in investigating and

observing persons who present threats to Service protectees are enforcement proceedings for the

purposes of the FOIA"), *cert. denied*, 449 U.S. 909 (1980); *Pinnavaia v. Fed. Bureau of

Investigation*, No. 04-5115, 2004 WL 2348155 (D.C. Cir. Oct. 19, 2004) (per curiam) (affirming

grant of summary judgment where, although one field office closed its investigation, another

field office's records were part of investigatory files for separate, ongoing investigation).  "Under

this exemption, a court may [] take into consideration the requestor's identity."  *Manna*, 51 F.3d

at 1164.

    The declarant states that "plaintiff has had various appeals, petitions for rehearing, and 28

U.S.C. § 2255 motions before the U.S. District Court (EDMO) and the U.S. Court of Appeals

(Eighth Circuit) all related to his convictions in 1993."  Graham Decl. ¶ 64.  After having

consulted the Assistant United States Attorney "who was the primary prosecutor" in plaintiff's

criminal case, ATF claims that plaintiff's "case remains open insofar as plaintiff continues to file

petitions seeking to overturn his conviction."  *Id.* ¶ 66.  Plaintiff currently "has a petition pending

---

[7](...continued)
1386, 1389 (D.C. Cir. 1986) (quoting *Carson v. United States Dep't of Justice*, 203
U.S. App. D.C. 426, 436, 631 F.2d 1008, 1018 (D.C. Cir. 1980)).

before the Eighth Circuit seeking to overturn his convictions.'"[8]  *Id.* ¶ 64.  In opposition, Plaintiff

argues that ATF has failed to establish the existence of an ongoing criminal investigation.[9]  *See*

Pl.'s Opp'n at 4, 12, 19-20.  He notes that ATF's "1983 investigation [has] been closed for

nineteen years."  *Id.* at 4.  In plaintiff's view, ATF "misapplies 7(A), as this exemption applies

only to particular planned or pending law enforcement proceedings."  *Id.* at 7.

     The Court concludes that defendant has adequately shown that its decision to withhold

the requested records under Exemption 7(A) was proper.  To make a proper showing under 5

U.S.C. § 552(b)(7)(A), ATF is required to demonstrate two things; first, the existence of a

pending or prospective enforcement proceeding, and second, that release of the records could

reasonably be expected to interfere with this proceeding.  ATF has demonstrated the possibility

of a prospective enforcement proceeding by pointing the Court to plaintiff's pending petition in

the Court of Appeals for the Eighth Circuit.  Until plaintiff's conviction is final, there is a

possibility that a future enforcement proceeding will be held.  *Kansi v. United States Dep't of*

*Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) (finding prospective enforcement proceeding under

Exemption 7(A) where "Plaintiff's case [wa]s still on appeal") (citing *Helmsley v. United States*

---

[8]     According to plaintiff, this "petition" is a motion "seek[ing] permission to file a second 28 U.S.C. § 2255 motion in the district court and the application is pursuant to the Antiterrorism Effective Death Penalty Act of 1996 (AEDPA)."  Pl.'s Opp'n at 7.

[9]     Plaintiff also argues the 1983 file should be released because it may contain exculpatory evidence.  *See Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963).  He offers nothing more than a "bare suspicion" to support this claim, however, "which is not sufficient to overcome the presumption of legitimacy accorded to the Government's official conduct."  *Oguaju v. United States*, 363 U.S. App. D.C. 158, 160, 378 F.3d 1115, 1117 (D.C. Cir. 2004) (citations and internal quotation marks omitted).  Moreover, ATF notes that another federal court has heard and rejected a similar *Brady* argument made by plaintiff.

*Dep't of Justice*, No. 90-CV-2413 (D.D.C. September 24, 1992) (investigation still pending for

purposes of Exemption 7(A) when there is a motion for a new trial)).  Because plaintiff filed a

petition in the Eighth Circuit seeking to overturn his conviction, his case is not yet final.[10]  There

is a possibility that a prospective enforcement proceeding will be held in this matter.[11]

ATF has also demonstrated  how release of the records from the 1983 file might

"reasonably be expected to interfere" with a prospective enforcement proceeding.  5 U.S.C. §

552(b)(7)(A).  According to ATF, the records sought by plaintiff "contain summaries of agents'

activities, witness names and other identification, [and] witness background information."

Graham Decl. ¶ 67.  Sharing this information with the plaintiff is problematic because he has

been convicted of murdering both a law enforcement officer and a grand jury witness.  *See*

Graham Decl. ¶ 67.  He has also been convicted of murdering another person who "he believed

to be an informant."  *Id*.  As the ATF persuasively explains, "[plaintiff] has demonstrated that he

will use the information to identify and retaliate against persons who are involved in [a

government] investigation . . . [even from] within the prison walls."  Def.'s Mot. at 13.  This

potential harm is not strictly limited to government employees and informants.  The declarant

notes that "it is more than reasonable to believe that witnesses and their families would be

physically attacked and/or intimidated through the use of information he would access if the

---

[10]     The Court's own review of the Eighth Circuit docket confirms that plaintiff filed an Amended Petition for Permission to File a Successive Habeas Corpus on February 10, 2006.  This matter is still pending.

[11]     Plaintiff's claim that the 1983 investigation did not lead to his conviction is contradicted by his own affidavit.  *See* Affidavit of Jerry Lewis Bey ¶ 8 ("In September 1992 I would be charged in a superceding RICO indictment that also incorporated the 1983 investigation . . . as part of the charged drug conspiracy and RICO enterprise.").

underlying materials were released." *Id*. The Court therefore agrees that release of this information in this unique set of circumstances – where a FOIA plaintiff has been convicted of murdering a law enforcement officer and a grand jury witness, as well as a suspected government informant, *see* Graham Decl. ¶ 64, and seeks information that will give him the resources to do the same for other witnesses – potentially places several government officers, witnesses, and informants, and their friends and families, at risk should plaintiff's convictions be overturned. This, in turn, would have a chilling effect on witness testimony at a subsequent retrial.[12] *See Kansi*, 11 F. Supp. 2d at 44 (finding risk of "witness tampering"is present when "plaintiff's conviction is not final"). For these reasons, plaintiff's FOIA request was properly denied under 5 U.S.C. § 552(b)(7)(A).[13] *See Grasso v. Internal Revenue Serv.*, 785 F.2d 70, 76 (3d Cir. 1986) ("The usual rationale given for such holdings [under 7(A)] is the danger of witness intimidation, the witness' desire to maintain confidentiality, and concern that premature disclosure would create a chilling effect on potential witnesses and dry up sources of information.") (citations omitted).[14]

---

[12]    ATF indicated that plaintiff has been linked to criminal behavior outside of prison despite his incarceration. It has not indicated whether there is an investigation, present or prospective, into this alleged behavior.

[13]    The Court is not able to evaluate the merits of plaintiff's pending petition in the Eighth Circuit or predict whether his convictions will be overturned. Nonetheless, the "potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption exists at least until plaintiff's conviction is final." *Kansi, supra*.

[14]    The Court of Appeals for the Eighth Circuit noted that plaintiff and his co-conspirators have, in the past, possessed police reports and reports prepared by the Drug Enforcement Agency. *United States v. Darden*, 70 F.3d 1507, 1537 (8th Cir. 1995). Plaintiff had, and may in fact still have, "extensive intelligence-gathering operations" at his disposal. *Id*. This heightens the risk to potential witnesses if

(continued...)

2.    FOIA Exemptions 2, 3, 6, 7(C), 7(D), 7(E), and 7(F)

Plaintiff devotes the entirety of his opposition to Exemption 7(A).  He neither addresses ATF's factual assertions nor presents a legal argument in opposition to the agency's decision to withhold information under Exemptions 2, 3, 7(C), 7(D), 7(E), and 7(F).  The Court therefore treats these matters as conceded.  Fed. R. Civ. P. 56(e); LCvR 7(h).  *See, e.g.*, *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 322 U.S. App. D.C. 35, 40, 101 F.3d 145, 150 (D.C. Cir. 1996); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.) (citation omitted); *Bancoult v. McNamara*, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) ("[I]f the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case.") (citing *Sparrow v. United Air Lines, Inc.*, 1999 U.S. Dist. LEXIS 22054, *17 (D.D.C. July 23, 1999), *overruled on other grounds*, 342 U.S. App. D.C. 268, 216 F.3d 1111 (D.C. Cir. 2000); *Hanson v. Greenspan*, 1991 U.S. Dist. LEXIS 17451, *11 (D.D.C. Dec. 6, 1991)).

**E.    Segregability**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. United States Customs Serv.*, 336 U.S. App. D.C. 189, 195, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The Court errs if it "simply approve[s] the

---

[14](...continued)
plaintiff's convictions are overturned.

18

withholding of an entire document without entering a finding on segregability, or the lack

thereof." *Powell v. United States Bureau of Prisons*, 288 U.S. App. D.C. 384, 387, 927 F.2d

1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of California v. United States

Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

"In carrying its burden of demonstrating how the release of the withheld documents

would interfere with the [prospective enforcement] proceedings [under Exemption 7(A)], the

[ATF] need not proceed on a document-by-document basis, detailing to the court the interference

that would result from the disclosure of each of them." *Bevis v. Department of State*, 255 U.S.

App. D.C. 347, 350, 801 F.2d 1386, 1389 (D.C. Cir. 1986). Instead, ATF may take a more

generic approach, grouping documents into relevant categories. *Id*. (citing *Crooker v. Bureau of

Alcohol, Tobacco and Firearms*, 252 U.S. App. D.C. 232, 235, 789 F.2d 64, 67 (D.C. Cir.

1986)). If ATF "wishes to adopt the generic approach, [it] has a three-fold task." *Id*. "First,

[ATF] must define its categories functionally. Second, it must conduct a document-by-document

review in order to assign documents to the proper category. Finally, it must explain to the court

how the release of each category would interfere with enforcement proceedings." *Id*.

The Court concludes that ATF has failed to satisfy this three-part test. Specifically, ATF

has failed to meet its burden of demonstrating step three – that release of each category of

documents would interfere with a prospective enforcement proceeding. *See* 5 U.S.C.

§ 552(b)(7)(A). ATF divides the retained documents into three categories: (1) ATF Reports of

Investigation; (2) investigator's contemporaneous notes; and (3) activity reports.[15] Graham Decl.

---

[15]    The Court finds that ATF has conducted document-by-document review of
the records. *Bevis*, *supra*.

¶ 65. The agency adequately describes why the first category of documents, ATF Reports of Investigation, should be withheld. These reports "contain summaries of the [ATF] agents' activities, witness names and other identification, witness background information, information provided by witnesses, [and] evidentiary inventory." *Id*. at ¶ 67. This is exactly the type of information that plaintiff could use to intimidate or silence government witnesses and informants. Category one documents were properly withheld.

The next two categories of documents, by contrast, are too nebulously defined to be of much use to the Court. Category two documents, referred to as ATF investigative notes, supposedly "describe what has transpired in an investigation during a particular reporting period along with detailed plans for future investigative activity." *Id*. at ¶ 68. This is too ambiguous to be helpful. The declarant does not describe what these notes contain, except to say that they "discuss the investigative efforts of other law enforcement officers in addition to ATF personnel." *Id*. While the Court is certainly hesitant to provide plaintiff with the names of government officers, witnesses or informants, this does not give ATF license to withhold every document without adequate justification. This two-sentence explanation is insufficient. Category three documents, referred to as activity reports, are also insufficiently explained. The declarant does not even state what an activity report is. Nor does he explain what information it contains, or how this information might hamper a prospective proceeding. Rather than address this category head on, the declarant states that activity reports contain "numerous witness statements, property transmittal reports . . . local law enforcement incident reports, case summary reports, and property inventory reports." *Id*. at ¶ 69. While the Court agrees that "[p]remature release of witness statements has the very real potential to endanger such witnesses,"*id*. at ¶ 70, it

is not clear how the other items listed by the declarant would impede a future enforcement

proceeding.[16] *Bevis*, *supra*. "These [terms] provide no basis for a judicial assessment of the

[ATF's] assertions that release of the documents so categorized would interfere with enforcement

proceedings." *Id*. The "hallmark of an acceptable category," the Court of Appeals has explained,

is that "it allows the court to trace a rational link between the nature of the document and the

alleged likely interference." *Crooker*, 252 U.S. App. D.C. at 235, 789 F.2d at 67. The Court

cannot trace this link for categories two and three.

Although ATF has failed to show the non-disclosed records were properly withheld in

their entirety under Exemption 7(A), it also relies on Exemptions 2, 3, 6, 7(C), 7(D), 7(E), and

7(F) to justify the nondisclosure. ATF's justification for these exemptions is partially

convincing. Having reviewed its motion and supporting declaration, the Court concludes that

ATF has established that the names of and identifying information about third parties, including

law enforcement personnel, properly are withheld under Exemption 7(C), *see* Graham Decl.

¶¶ 87-94, that the names of and information provided by confidential sources properly are

withheld under Exemption 7(D), *see id.* ¶¶ 69-100, and that identifying information about third

parties properly is withheld under Exemption 7(F) due to reasonable concerns for their physical

safety, *see id.* ¶¶ 104-06. Further, ATF properly withheld information about its surveillance

techniques under Exemption 7(E). *See id.* ¶¶ 101-02.

---

[16]     For example, the declarant states that case summary reports "summarize investigative efforts and plans for future investigative activity, and would reveal the scope, limits, and directions of the investigation." Graham Decl. ¶ 69. It is not self-evident how an investigative plan created in the 1980's would interfere with a future trial. "The [ATF] cannot carry its burden with such irrelevant classifications." *Bevis*, 255 U.S. App. D.C. at 350, 801 F.2d at 1389. *See also* Graham Decl. ¶¶ 71-74.

21

However, ATF has withheld more than just the information protected by these exemptions.  It has withheld nearly all of the requested 1983 file.  This runs counter to the general FOIA principle hat "an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  *Mead Data Central, Inc. v. Dep't of the Air Force*, 184 U.S. App. D.C. 350, 368, 566 F.2d 242, 260 (D.C. Cir. 1977).  "It has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Id.*  The declarant attempts to circumvent this principle by stating that ATF cannot disclose *any* information to the plaintiff because he will use *every* piece of information to his criminal advantage.  In the declarant's own words:

> [P]laintiff analyzes all information and, using mosaic-like processes, makes assessments of who provided evidence against him or his friends, calculates his criminal behavior and influences the criminal behavior of others associated with him. . . . Thus, even what may be considered non-relevant or non-sensitive items would, if released, enable him to misuse information for criminal and obstructive purposes designed to interfere with law enforcement proceedings and to commit further crime, whether by himself or other he influences.  Seemingly-innocuous materials would fit within a mosaic or matrix of information he's acquired and retained, together with that of his followers, enabling him to disrupt and obstruct orderly enforcement proceedings.

Graham Decl. ¶ 113.  The declarant concludes that "all non-exempt, reasonably segregable information has now been provided to plaintiff."  *Id.*

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" for its non-segregability.  *Mead Data Central, Inc.*, 184 U.S. App. D.C. at 369, 566 F.2d at 261.  ATF has not done this.  The declarant states that "all information," even "[s]eemingly-innocuous" "non-relevant or non-sensitive" material, must be withheld because plaintiff will put it to "misuse."  Graham Decl. ¶ 113.  This

22

justification for non-disclosure is too broad to be helpful. It is a dubious proposition to say that every piece of information in the file will be put to misuse. The Court cannot accept such an expansive, yet vague, justification without more detail regarding the types of information contained in the file, and how this information will be put to "misuse."[17] Based on the current record, the Court cannot conclude that no reasonably segregable material can be released.

## CONCLUSION

The Court concludes that ATF has established that non-disclosed portions of the requested records were properly withheld under Exemptions 2, 3, 7(A), 7(C), 7(D), 7(E), and 7(F). However, ATF has not shown that all reasonably segregable portions of the file have been released to plaintiff. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [14] is **GRANTED IN PART**. ATF has established that portions of the requested records were properly withheld under Exemptions 2, 3, 7(C), 7(D), 7(E), and 7(F), and category one documents for Exemption 7(A);[18] it is further

**ORDERED** that a ruling on defendant's motion, with respect to category two and

---

[17]    ATF is not, in essence, arguing that "non-exempt portions of a document . . . are inextricably intertwined with exempt portions." *Mead Data Central, Inc.*, 184 U.S. App. D.C. at 369, 566 F.2d at 261. Instead, it seems to suggest that all information contained in the file, regardless of whether it falls into a particular exemption, is exempt.

[18]    In regards to Exemption 7(A), defendant has shown that category one documents, referred to as ATF Reports of Investigation, were properly withheld. Defendant has not, however, provided the Court with sufficient detail for category two documents, referred to as investigator's contemporaneous notes, or category three documents, referred to as activity reports. Defendant's motion is granted with respect to all category one documents.

category three documents, *see supra* note 18, that were withheld under Exemption 7(A), is held in abeyance pending the defendant's submission of a supplemental declaration or report (see below); and it is further

ORDERED that within 45 days of entry of this Order, defendant shall either: (1) file a supplemental declaration that explains, in more detail,[19] why the remaining portions of the 1983 file were properly withheld,[20] or (2) file a report to the Court on the status of its disclosure of segregable records to plaintiff.

SO ORDERED.


DATE: March 30, 2007                                JOHN GARRETT PENN
                                                   United States District Judge

---

[19]    As described *supra*, the Court has determined that category two and category three documents were inadequately described under Exemption 7(A). Defendant may wish to clarify these categories if it decides to file a supplemental declaration. Defendant should explain to the Court how the release of each category would interfere with a prospective enforcement proceedings.

[20]    If Defendant intends to file a supplemental declaration, but concludes that providing additional detail regarding the information contained in the 1983 file may potentially interfere with a prospective enforcement proceeding, place an individual at risk, or otherwise provide plaintiff with information that has the potential to be misused, it may file the declaration *in camera*. Should Defendant file the declaration *in camera*, it should, by hand delivery, deliver a copy of the declaration to chambers with a "Court's Eyes Only" designation. The declaration should not be publicly filed.