**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————

| | |
|---|---|
| **JERRY LEWIS BEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **U.S. DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| **Defendant.** | ) |

**Civil Action No. 05-2241  (GK)**

———————————————————————

## DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendant United States Department of Justice

("Defendant"), through the United States Attorney for the District of Columbia, respectfully

moves this Court to enter Summary Judgment on the grounds that all responsive and disclosable

records requested by Plaintiff pursuant to the Freedom of Information Act,  5 U.S.C. §552

("FOIA" or the "Act"), were provided, and that any information not provided was properly

withheld under the Act.  In support of its Motion, the Defendant refers this Court to the

accompanying Memorandum of Point and Authorities, Statement of Material Facts as to Which

There is No Genuine Dispute, the First Declaration of Averill Graham attached to Defendant's

initial Motion for Summary Judgment, and the Second Declaration of Averill Graham attached

hereto.

A proposed Order is also attached.

Plaintiff should take notice that any factual assertions contained in the accompanying

Declaration and other attachments in support of Defendant's Motion will be accepted by the

Court as true unless Plaintiff submits his own declaration or other documentary evidence

contradicting the assertions in Defendant's attachments.  See Neal v. Kelly, 963 F.2d 453 (D.C.

Cir. 1992), Local Rule 7.1, and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**JERRY LEWIS BEY,**                      )
                                          )
                **Plaintiff,**            )
                                          )       **Civil Action No. 05-2241  (GK)**
        **v.**                            )
                                          )
**U.S. DEPARTMENT OF JUSTICE,**           )
                                          )
                **Defendant.**            )
_____)

**FEDERAL DEFENDANTS' STATEMENT OF MATERIAL FACTS
<u>NOT IN GENUINE DISPUTE</u>**

**<u>Background</u>**

1.      Plaintiff is a federal prisoner at the Federal Correctional Institution ("FCI") at
Edgefield, South Carolina.  Complaint at ¶ 3.  Plaintiff was convicted of multiple murders,
including the murder of a St. Louis Deputy Sheriff and a grand jury witness.  Declaration of
Avrill Graham attached to Defendant's initial Motion for Summary Judgment ("First Graham
Decl.") at ¶¶ 64.

2.      Subsequent to his conviction, Plaintiff has engaged in multiple post-conviction
proceedings, including appeals to the Eighth Circuit Court of Appeals, and multiple petitions for
rehearings and petitions for _habeas corpus_ before the United States District Court for the Eastern
District of Missouri.  First Graham Decl. at ¶ 64 and n. 10.

3.      The history of Plaintiff's FOIA requests to the Federal Bureau of Alcohol,
Tobacco, and Firearms and Explosives ("ATF") extends as far back as 1997, and continues
through the matters at issue here.  <u>See</u> <u>generally</u> First Graham Decl. at ¶¶ 3-58.

**<u>Plaintiff's FOIA Requests for Pen Register Information And Toll Records</u>**

4.      On July 17, 2000, Plaintiff sought pen register information, survelliance (sic) logs, and toll records from a 1983 investigation file of Plaintiff and his organization called the Moorish Science Temple of America.  Exh. M.[1/]  Plaintiff subsequently modified his FOIA request to information maintained by the ATF for the period of May 1, 1986 through July 31, 1986, which was alleged to be maintained in a 1983 AFT investigation file, including all survelliance (sic) logs, notes, debriefing reports, photos, and pen register information and computer print outs.  Exh. O.

5.      In response, ATF informed Plaintiff, on September 29, 2000, that his request for pen register information was denied pursuant to FOIA exemptions (b)(7)(E) and (b)(7)(C).  Def. Exh. S.  ATF further advised Plaintiff that it could not locate any surveillance video or any investigative files prior to 1988.  Def. Exh. S.  ATF advised Plaintiff of his administrative appeal rights and obligations.  Id.

6.      Plaintiff did not administratively appeal the denial of the pen register information or any other portion of ATF's response.  First Graham Decl. at ¶ 19.

**Plaintiff's Initial Request for the 1883 File**

7.      On May 11, 2001, Plaintiff made FOIA requests to the ATF for information on himself and the Moorish Science Temple of America gathered by ATF Special Agent Dennis Becker on or about June, 1983.  Def. Exh. T.  On June 20, 2001 the ATF referred Plaintiff to the Agency's September 29, 2000 letter, in which Plaintiff was informed that no ATF records were

---

[1/]      The first Declaration of Averill Graham and Exhibits A - LLL are attached to Defendant's initial Motion for Summary Judgment (Dkt. No. 14).  Exhibits MMM and NNN are attached to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. No. 18).  Those exhibits are incorporated by reference herein.

located for a file for that year.  See First Graham Dec. ¶ ¶ 20, 21 and Exh. U.

8.      Plaintiff, in a July 5, 2001, letter narrowed his request regarding information gathered by ATF in 1983.  Def. Exh. W.  Specifically, Plaintiff requested a report by an unknown ATF agent, written on May 23, 1983, in which the Plaintiff and the Moorish Science Temple were investigated; a May 1, 1986, report in which ATF Special Agent Clark Young installed a 24-hour time lapse video camera in a vacant apartment across from Plaintiff's apartment at 11882 San Remo; a June 4, 1986, report of surveillance of Plaintiff by Special Agent Young; and a May 5, 1988 report by an unidentified ATF special agent to U.S. Attorney Thomas Dittmeier identifying Raymond Amerson, Gerald Hopkins Bey, and Gary Hammell El as "top lieutenants of Jerry Lewis Bey...."  See First Graham Dec. ¶ 23 and Def. Exh. W.

9.      On July 23, 2001, Plaintiff was again informed that the ATF could not locate a 1983 file.  Def. Exh. X.  The agency, however, informed Plaintiff that a 1988 file had been located.  Id.

**Plaintiff's Request for the 1988 File**

10.     On July 31, 2001, Plaintiff requested the 1988 ATF investigative file.  Def. Exh. Y.  ATF's Disclosure Division, in an August 13, 2001, letter, denied Plaintiff's request because the case was "open on appeal" and release of that case's information could jeopardize law enforcement proceedings.  See First Graham Dec. ¶ ¶ 24, 25 and 26 and Def. Exh. Z.

11.     Plaintiff, in a August 20, 2001, letter requested reconsideration of the August 2001 denial.  Def. Exh. AA.  On September 10, 2001, ATF's Disclosure Division advised him to file an administrative appeal.  Def. Exh. BB.  Plaintiff appealed the denial in a September 13, 2001 letter.  Def. Exh. CC.  In a December 12, 2001, letter, ATF's Assistant Director of Liaison

and Public Information affirmed the Disclosure Division's August 2001 denial.  See Def. Exh. EE.

12.     On December 16, 2001, Plaintiff sent a letter to the ATF stating that his case was no longer on appeal, and that he was requesting a 1988 ATF file on himself and the Moorish Science Temple of America.  Def. Exh. GG.  Plaintiff enclosed a copy of a November 12, 2001, judgment from the United State Court of Appeals for the Eighth Circuit.  Id.

13.     On January 24, 2002, the Disclosure Division informed Plaintiff that his criminal case was, in fact, still open and that his FOIA requests would continue to be denied under FOIA Exemption (b)(7)(A).  Def. Exh. II.  Plaintiff was advised to resubmit his request upon adjudication of all issues in his criminal case and also was provided instructions on how to file an administrative appeal.  Id.

**Plaintiff's Renewed Request for the 1983 File**

14.     On August 5, 2002, Plaintiff resubmitted his request for the 1983 investigative file regarding him and the Moorish Science Temple of America.  Def. Exh. JJ.  ATF's Disclosure Division, after consultation with the United States Attorney's Office for the Eastern District of Missouri, was advised that litigation related to the requested file continued and that release of the file would interfere with law enforcement proceedings.  Pursuant to Exemption (b)(7)(A), release of the information was denied.  Def. Exh. KK.  Plaintiff, in a October 28, 2002, letter, insisted there was no pending litigation in his criminal case and renewed his request for responsive records.  Def. Exh. LL.  The Disclosure Division, in a November 13, 2002, letter, again denied Plaintiff's request and advised him of his appeal rights.  Def. Exh. MM.

15.     On May 27, 2003, Plaintiff resubmitted his request for the 1983 file.  Def. Exh.

4

NN.  In a May 29, 2003, letter, the Disclosure Division denied Plaintiff's request because of on-going proceedings in his criminal case.  Def. Exh. OO.  Instructions for an administrative appeal were provided.  Id.

16.     In a July 30, 2003, letter, Plaintiff requested a copy of a June 7, 1983, ATF report in file 33920 83 1501Y located in ATF's St. Louis Field Division,[2] and further inquired as to whether a 1988 ATF investigative file on Plaintiff and the Moorish Science Temple of America was cleared for release.  Def. Exh. PP.  In an August 12, 2003, letter, ATF's Disclosure Division denied Plaintiff's request because the report was related to a continuing investigation.  Def. Exh. QQ.  Plaintiff appealed the denial to the Department of Justice's Office of Information and Privacy (OIP) in a August 24, 2003 letter.  Def. Exh. RR.  In a January 6, 2004, letter, the Disclosure Division partially granted Plaintiff's request for the June 7, 1983, report.  Def. Exh. SS.  Pursuant to Exemptions (b)(2), (b)(7)(C), and (b)(7)(D), portions of the document were withheld.  Id.  A description of Plaintiff's appeal rights were included in the letter.  Id.

17.     On January 24, 2004, Plaintiff requested ATF file No. 7665 0683 1501 L (01), which is part of the file containing the June 7, 1983 report requested earlier by Plaintiff.  Def. Exh. TT.  Because of ongoing litigation in Plaintiff's criminal case, the request was denied under Exemption (b)(7)(A).  Def. Exh. UU.

18.     On March 1, 2004, Plaintiff requested a review of the records and the status of the litigation in his criminal case by the Disclosure Division.  Def. Exh. VV.  In his letter, Plaintiff

---

[2]     This file was not, and continues not to be reflected in the Treasury Enforcement Communications System, the only indexed database of criminal information ATF's Disclosure Division used to search ATF Field Divisions.  The search for the file was outside typical FOIA search parameters. First Graham Decl. at ¶¶ 107-111.

addressed the past denials under Exemption (b)(7)(A) by accusing the Assistant United States Attorney assigned to his criminal matter of "obstruct[ing] justice by interfering with the spirit of the FOIA process."  Def. Exh. VV.

19.     At the time of Plaintiff's March 1, 2004 letter, he did, in fact, have a pending matter before the Eighth Circuit Court of Appeals regarding his criminal conviction.  See Jerry Lewis Bey v. United States, 04-1297 (Docket attached as Def. Exh. JJJ).

20.     By letter dated March 14, 2004, the Disclosure Division denied Plaintiff's request because release of the information could interfere with law enforcement proceedings.  Def. Exh. WW.

21.     On June 15, 2004, Plaintiff renewed his request, asserting that the Eighth Circuit Court of Appeals had denied his collateral petition.  Def. Exh. XX.

22.     On August 10, 2004, the ATF denied Plaintiff's renewed request for the 1983 investigative file pursuant to Exemption (b)(7)(A).  Def. Exh. ZZ.  Plaintiff was advised of his right to appeal.  Id.

23.     On August 23, 2004, Plaintiff renewed his request for the 1983 file, asserting that his appellate case had closed July 7, 2004.  Def. Exh. AAA.

24.     In a September 30, 2004 letter, the Disclosure Division of the ATF denied release of the file because that information could interfere with law enforcement proceedings.  Def. Exh. BBB.

**The Present FOIA Requests**

25.     Plaintiff submitted two more FOIA requests for the ATF 1983 file in letters dated April 25 and 28, 2005.  Def. Exhs. CCC and DDD.  In the April 25, 2005 letter, Plaintiff stated

6

that the U.S. Eighth Circuit Court of Appeals denied his last appeal.  Id.  In reliance upon

Plaintiff's assertion, the Disclosure Division advised Plaintiff in a June 9, 2005 letter that it

expected to partially grant Plaintiff's request, pending a response from the Field Division.  Def.

Exh. EEE.  However, after consultation with the United State Attorney's Office for the Eastern

District of Missouri, the ATF discovered that Plaintiff had, in fact, initiated another post-

conviction proceeding before the Eighth Circuit Court.  See Jerry Lewis Bey v. United States, 04-

4160 (Def. Exh. KKK).  Accordingly, the ATF denied Plaintiff's request because of ongoing

appeals in Plaintiff's criminal case.  Def. Exh. FFF.

26.    On July 29, 2005, Plaintiff appealed the denial of his request to the Department of

Justice Office of Information and Privacy ("OIP").  Def. Exh. GGG.  In his appeal, Plaintiff

admitted, for the first time, that he did in fact have matters pending before the Eighth Circuit

Court of Appeals.  Id.

27.    OIP denied Plaintiff's appeal on September 6, 2005, affirming the ATF Disclosure

Division's decision not to release the 1983 file pursuant to Exemption (b)(7)(A).  Def. Exh. III.

**Procedural Background and ATF's Subsequent Production**

28.    Plaintiff filed this civil action on November 17, 2005.  See Complaint.

29.    On March 31, 2006, the ATF moved for summary judgment.  Defendant's Motion

for Summary Judgment (Dkt. No. 14).  The matter was fully briefed by both parties.  Dkt. Nos.

16 and 18.

30.    On March 30, 2007, the Court granted the motion in part.  The Court found that

Plaintiff did not file an administrative appeal of the denial of his request for pen register

information and toll records, and accordingly, failed to exhaust his administrative remedies as to

7

that portion of his request. Memorandum Opinion (Dkt. No. 19) at 8-9. The Court further held that Plaintiff failed to oppose the Defendant's application of Exemptions 2, 3, 6, 7(C), 7(D), 7(E), and 7(F), and upheld the denial of Plaintiff's request with respect to all identifying information about third parties and confidential sources, and to its surveillance techniques. Id. at 21. Finally, the Court held that the remainder of Plaintiff's request for the 1983 file fell within the protection of Exemption 7(A) because Plaintiff had a collateral proceeding pending in the Eighth Circuit Court of Appeals, and the circumstances of Plaintiff's conviction (including the murder of a law enforcement officer and a suspected government informant) necessitated the need to withhold the file. Id. at 17. However, the Court found that the affidavits and other evidence submitted by the ATF did not provide sufficient "detailed justification" for a finding of "non-segregability for two categories of documents withheld under Exemption 7(A) (Category 2 - investigator's contemporaneous notes, and Category 3 - Activity Reports). Id. at 22. Accordingly, the Court ordered that the Defendant either submit a supplemental declaration or report explaining in more detail why Category 2 and Category 3 documents should be withheld in full, or file a status report on the disclosure of segregable records to Plaintiff. Id. at 23-24.

31.    While preparing its supplemental declaration to the Court, Defendant discovered that Plaintiff's collateral matter before the Eighth Circuit Court of Appeals, which formed the basis for the Exemption 7(A) claim, was dismissed by the Circuit Court on April 9, 2007. Status Report (Dkt. No. 23). Accordingly, the Defendant informed the Court that the ATF had begun processing Plaintiff's FOIA request for segregability and disclosure pursuant to the FOIA, including the Category 1 documents that the Court held were protected by Exemption 7(A). Id.

32.    On August 8, 2007, Defendant completed the processing of the file and

determined that approximately 337 pages were responsive to Plaintiff's request.  Status Report
(Dkt. No. 24); <u>see also</u> Vaughn Index attached to Second Declaration of Averill P. Graham
("Second Graham Decl.").  Defendant provided approximately 300 pages to Plaintiff and
withheld four documents (consisting of 7 pages) in full pursuant to FOIA exemption 7(C), and
Fed. R. Crim. P. 6(e).  Vaughn Index.  Some documents that were provided to Plaintiff were
redacted pursuant to FOIA exemptions 2, 3 (Public Law 108-447), 5, 7(C), 7(D) and 7(E).  <u>Id</u>.
The production was provided without cost to Plaintiff.  <u>Id</u>.

    34.    Plaintiff has recently filed a new Petition for Permission to file a Successive
Habeas Petition on January 3, 2008 with the Eight Circuit Court of Appeals.  <u>See</u> Eighth Circuit
Court of Appeals Docket Report, attached as Exh.  OOO.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

JERRY LEWIS BEY,                              )
                                              )
              Plaintiff,                       )
                                              )        Civil Action No. 05-2241  (GK)
       v.                                     )
                                              )
U.S. DEPARTMENT OF JUSTICE,                    )
                                              )
              Defendant.                       )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant United States Department of Justice, through undersigned counsel, submits

this memorandum of points and authorities in support of its Motion for Summary Judgment.

**INTRODUCTION**

At issue in this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, case is whether

the United States Department of Justice ("Defendant") and the Federal Bureau of Alcohol,

Tobacco, Firearms and Explosives ("ATF") properly withheld material responsive to Plaintiff's

FOIA request.  As discussed below and in the attached Declaration,[1] the documents and

information were properly withheld pursuant to the exemptions found in the FOIA.  Defendant's

Motion for Summary Judgment should therefore be granted, and judgment should be entered in

favor of Defendant.

_____

[1]    The Vaughn Index usually consists of a detailed affidavit or declaration, the
purpose of which is to permit the court system effectively and efficiently to evaluate the factual
nature of disputed information.  See John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989).
In the instant case, the declaration of Ms. Graham and the attached spreadsheet will serve as the
ATF's Vaughn Index.  "Vaughn Index" is a term derived from Vaughn v. Rosen, 484 F2d 820
(D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

## BACKGROUND

### A. Procedural History

Plaintiff, a *pro se* prisoner, brought this action pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 553 and the Privacy Act 5 U.S.C. § 522(a), seeking disclosure of a 1983 investigation file of the Bureau of Alcohol, Tobacco, Firearms and Explosives regarding himself and his organization, the Moorish Science Temple of America.  The Defendant had earlier denied Plaintiff's FOIA request in its entirety pursuant to Exemption 7(A) of the FOIA which prohibits disclosure of documents and information when the disclosure "could reasonably be expected to interfere with law enforcement proceedings, and other exemptions

Defendant filed a Motion for Summary Judgment on March 31, 2006 which the Court granted in part in its Memorandum Order on March 30, 2007.  The Court held the remainder of its decision in abeyance, pending Defendant's submission of a supplemental declaration or report providing further justification for the application of FOIA exemption 7(A) to two categories of documents left in question, or file a report with the Court explaining the status of the disclosures or segregable records to Plaintiff.

While preparing its supplemental declaration to the Court explaining that the two remaining categories of documents were protected by FOIA Exemption 7(A), Defendant discovered that Plaintiff's collateral matter before the Eighth Circuit Court of Appeals, which formed the basis for the Exemption 7(A) claim, was dismissed by the Circuit Court on April 9, 2007.  Accordingly, the Federal Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF") began processing Plaintiff's FOIA request for segregability and disclosure pursuant to the FOIA, including the first category of documents that the Court held were protected by

2

Exemption 7(A).

Defendant completed the processing of the file requested and found that approximately 337 pages were responsive to the Plaintiff's request. On August 8, 2007, Defendant provided approximately 300 pages to Plaintiff and withheld four documents (consisting of seven pages) in full pursuant to FOIA exemption 7(C) and Fed. R. Crim. P. 6(e). Thirty pages of documents were provided to Plaintiff were redacted pursuant to FOIA exemptions 2, 3, 5, 7(C), 7(D), and 7(E). The production was provided without cost to the Plaintiff.

On August 28, 2007, Defendant filed a Status Report informing the Court of the production. Plaintiff objected to the production, arguing that he was entitled to pen register information and toll records the request for which has already been found to be beyond the scope of this case, and further arguing that he was entitled to the information redacted or withheld.

In an ordered dated July 7, 2008, this Court ordered that the Defendant file a Motion for Summary Judgment to clarify and resolve the outstanding matters. Dkt. No. 32.

### B. Plaintiff's FOIA Request.

Plaintiff is a federal prisoner at the Federal Correctional Institution ("FCI") at Edgefield, South Carolina. Complaint at ¶ 3. Plaintiff was convicted of multiple murders, including a St. Louis Deputy Sheriff and a grand jury witness. First Declaration of Avrill Graham ("First Graham Decl.") at ¶¶ 64. Subsequent to his conviction, Plaintiff has engaged in multiple post-conviction proceedings, including appeals to the Eighth Circuit Court of Appeals, and multiple petitions for rehearings, and habeus corpus petition before the United States District Court for the Eastern District of Missouri. First Graham Decl. at ¶ 64 and n. 10. Plaintiff has had four post-conviction matters before the Eighth Circuit Court of Appeals. Jerry Lewis Bey v. United States,

3

04-1297 (Petition to File a Successive Habeas Corpus); Jerry Lewis Bey v. United States, 04-

4160 (Application for Certificate of Appealability); Jerry Lewis Bey v. United States, 05-2447

(Petition to File a Successive Habeas Corpus), court dockets attached to Defendant's initial

Motion for Summary Judgment as Def. Exh. JJJ, KKK, and LLL, respectively, and Jerry Lewis

Bey v. United States, 08-1022, attached hereto as Exh. OOO.

    The history of Plaintiff's FOIA requests to the ATF extends as far back as 1997, and

continues through the matters at issue here.  See generally First Graham Decl. at ¶¶ 3-58.[2]

However, the specific information at issue in this matter was first requested by Plaintiff on July

17, 2000.  Complaint at ¶ 5.  Since that time, Plaintiff made repeated requests to the ATF for the

1983 file regarding himself and the Moorish Science Temple of America, and then falsely

---

    [2]    Plaintiff made the first of his Freedom of Information Act requests to the Bureau
of Alcohol, Tobacco, Firearms and Explosives (ATF) in July 1997 by seeking information on the
Moorish Science Temple of America gathered by ATF Special Agents Clark Young and
Theodore J. Heitzler.  Also requested were an application for a copy of a federal court order for a
"pen register" for an apartment at Country Side Apartment Complex in the St. Louis metropolitan
area. See First Graham Decl. at ¶ 3 and Exh. A.  Although ATF acknowledged Plaintiff's firm
agreement to pay all associated costs with processing his FOIA request, the request was denied
on November 24, 1997, pursuant to FOIA exemption (7) (A) "because release of these records
could reasonably be expected to interfere with [law] enforcement proceedings." Id.  Plaintiff
was advised to resubmit his request upon resolution of a pending habeas corpus matter in his ongoing
criminal matter before the Eighth Circuit Court of Appeals.  See First Graham Decl. at ¶ 10 and
Exh. H.
    On April 4, 2000, Plaintiff requested reconsideration of the November 1997 denial of his
FOIA request.  Exh. I.  In that request, Plaintiff advised the ATF that all matters before the courts
had been resolved.  Id.  Based upon Plaintiff's representations, ATF partially granted Plaintiff's
April 2000 request, and released 100 partially redacted pages and advised 357 additional pages
would be released on payment of $52.50 for copying costs.  First Graham Decl. at ¶ 12 and Exh.
J.  Redactions were made pursuant to FOIA Exemptions (b)(2), (b)(3), Fed. R. Crim. P. 6(e),
(b)(7)(C), (b)(7D), and (b)(7)(E).  Id.  Plaintiff was advised of his right to file an administrative
appeal.  Id.  ATF's FOIA Disclosure Division partially released the remaining 357 pages to
Plaintiff, once again redacting portions of the releasable documents pursuant to FOIA
Exemptions (b)(2), (b)(3), Fed. R. Crim. P. 6(e), (b)(7)(C), (b)(7D), and (b)(7)(E).  See First
Graham Dec. ¶ 14, and Exh. L.  Plaintiff did not administratively appeal this production.

represented that his post-conviction matters before the United States Court of Appeals for the Eighth Circuit were ended.  The 1983 file was eventually located through inquiries with the St. Louis Field Division personnel who had some historical knowledge of that particular Field Division's investigative cases.  First Graham Decl. at ¶ 111.  However, Plaintiff's requests were denied by the ATF Disclosure Division after the ATF discovered that Plaintiff did, in fact have a pending proceeding, and accordingly the disclosure of the information would interfere with the pending proceedings.

On July 29, 2005, Plaintiff appealed the denial of his request to the Department of Justice Office of Information and Privacy ("OIP").  Def. Exh. GGG.  In his appeal, Plaintiff admitted, for the first time, that he did in fact have matters pending before the Eighth Circuit Court of Appeals. Id.  OIP denied Plaintiff's appeal on September 6, 2005, affirming the ATF Disclosure Division's decision not to release the 1983 file pursuant to Exemption (b)(7)(A).  Def. Exh. III.  Plaintiff filed this civil action on November 17, 2005.  See Complaint.

During the pendency of this matter, the Plaintiff's collateral matter before the Eighth Circuit Court of Appeals, which formed the basis for the earlier Exemption 7(A) claim, was dismissed by the Circuit Court.  Accordingly, the ATF began processing Plaintiff's FOIA request for segregability and disclosure pursuant to the FOIA, including the first category of documents that the Court held were protected by Exemption 7(A).

Defendant completed the processing of the file and determined that approximately 337 pages were responsive to the Plaintiff's request.  On August 8, 2007, Defendant provided approximately 300 pages to Plaintiff and withheld seven pages in full pursuant to FOIA exemption 7(C) and Fed. R. Crim. P. 6(e).  Thirty pages of documents provided to Plaintiff were

5

redacted pursuant to FOIA exemptions 2, 3, 5, 7(C), 7(D), and 7(E).  The production was

provided without cost to the Plaintiff.  See attached Second Declaration of Averill Graham and

accompanying Vaughn Index of Deletions for a detail justification for withholding and redacting

those documents.

Plaintiff failed to notify the Court that he filed another Petition for Permission to File a

Successive habeas Petition with the Eight Circuit Court of Appeals on January 3, 2008.  Exh.

OOO.

## ARGUMENT

I.    **LEGAL STANDARDS.**

A.    **Summary Judgment Standard**

Summary judgment is an appropriate method for a court to dispose of a FOIA complaint.

See Rugiero v. United States Department of Justice, 257 F.3d 534 (6th Cir. 2001); see also Jones

v. FBI, 41 F.3d 238,242 (6th Cir. 1994).  Under Rule 56(c) of the Federal Rules of Civil

Procedure, summary judgment is required when the pleadings and evidence demonstrate that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986);

Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Any factual assertions contained in

affidavits and other evidence in support of the moving party's motion for summary judgment

shall be accepted as true unless the facts are controverted by the nonmoving party through

affidavits or other documentary evidence.  Fed. R. Civ. P. 56(e).

While all evidence and the inferences drawn therefrom must be considered in the light

most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

6

475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits

"affirmative evidence that negates an essential element of the nonmoving party's claim" or

demonstrates "that the nonmoving party's evidence is insufficient to establish an essential

element of the nonmoving party's claim." High Tech Gays v. Defense Industrial Security

Clearance Office, 895 F.2d 563, 574, *reh'g denied*, 909 F.2d 375 (9th Cir. 1990) (*citing* Celotex,

477 U.S. at 331).

FOIA cases are typically decided on motions for summary judgment. See Cappabianca v.

Commissioner, U. S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once

documents in issue are properly identified, FOIA cases should be handled on motions for

summary judgment") (*citing* Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)).  To be entitled

to summary judgment, the agency must prove that each document was produced, not withheld, is

unidentifiable, or is exempt from disclosure.  Weisberg v. U. S. Dept. of Justice, 627 F.2d 365,

368 (D.C. Cir. 1980).

Under FOIA, federal courts may "enjoin the agency from withholding agency records and

[may] order the production of any agency records improperly withheld from the complainant." 5

U.S.C. § 552(a)(4)(B).  Requesters may prevail in a FOIA action only if an agency has (1)

improperly (2) withheld (3) agency records, and jurisdiction may only be invoked if "the agency

has contravened all three components of this obligation." Kissinger v. Reporters Committee for

Freedom of the Press, 445 U.S. 136, 150 (1980).  An agency satisfies the summary judgment

requirements in a FOIA case by providing the Court and the plaintiff with affidavits,

declarations, or other evidence showing that it has discharged its obligations under the FOIA.

Hayden v. National Security Agency Cent. Sec. Serv., 608 F.2d 1381, 1384 (D.C. Cir. 1979),

cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738,

742 (9th Cir. 1980). The declarations need not be overly detailed or otherwise provide

"meticulous documentation", but rather only need "explain in reasonable detail the scope and

method of the search conducted by the agency...." Perry v. Block, 684 F.2d 121, 127 (D.C.

1982).

Although an agency's denial of a FOIA request is reviewed by a District Court de novo,

see 5 U.S.C. ¶552(a)(4)(B), courts may accord deference to an agency whose primary mission is

law enforcement when the agency is performing a law enforcement function. See e.g., Pratt v.

Webster, 673 F.2d 408, 418 (D.C. Cir. 1982) ("we conclude that a court may apply a more

deferential attitude toward the claims of 'law enforcement purpose' made by a criminal law

enforcement agency.... [A] court can accept a less exacting proof from such an agency that the

purpose underlying disputed documents is law enforcement"). The BOP qualifies as a law

enforcement agency. See Duffin v. Carlson, 636 F.2d 709,713 (D.D.C. 1980) (finding that the

BOP is a criminal law enforcement authority).[3/] Moreover, an agency "may justify its claims of

exemption through detailed affidavits, which are entitled to a presumption of good faith."

Rugiero, 257 F.3d at 544 (citing United States Dept. of State v. Ray, 502 U.S. 164, 179 (1991)).

Because the declarations of Averill Graham and the attachments thereto demonstrate that

the Defendant has met its obligation under the FOIA, and that no genuine issue as to any material

fact exists, summary judgment should be granted to Defendants as a matter of law. See Perry v.

Block, 684 F.2d 121, 126 (D.C. Cir. 1982).

---

[3/]    Courts, in other non-FOIA litigation, have broadly determined that Bureau of
Prisons' employees are "law enforcement officers." See Chapa v. United States Dep't of Justice
et al., 339 F.3d 388 (5th Cir. 2003); Reed v. Reno, 146 F3d 392 (6th Cir. 1998).

B.      **The Purpose of the Freedom of Information Act.**

The Freedom of Information Act generally provides that any person has a right, enforceable in court, to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by any of the nine exemptions or three special law enforcement record exclusions.  While the FOIA's statutory objective is to achieve "the fullest responsible disclosure," see S. Rep. No; 89-813, at 3 (1965), the Supreme Court has emphasized that only "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose."  United States Dept. of Justice v. Reporters Comm. for Freedom of the Press,489 U.S. 749,773 (1989).

Thus, the identity of the FOIA requester does not matter. See e.g., EPA v. Mink, 410 U.S. 73, 86 (1973) (declaring that FOIA is "largely indifferent to the intensity of a particular requester's need"); Parsons v. Freedom of Info Act Officer, 1997 WL 461320, at *1 (6th Cir. Aug. 12,1997) (holding that plaintiff's argument of "legitimate need for the documents superior to that of the general public or the press" fails because identity of requester is irrelevant to the determination of whether an exemption applies); United Techs v. FAA, 102 F. 3d 688, 692 (2nd Cir. 1996) ("Congress created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis").  So long as FOIA "is fundamentally designed to inform the public about agency action and not to benefit private litigants," a requestor's rights under FOIA "are neither increased nor decreased by reason of the fact that it claims an interest in the [matter sought]" greater than that shared by the average

member of the public.  N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 143 n.10 (1975).[4/]

## II.    THE IDENTITIES AND OTHER INFORMATION REGARDING WITNESSES AND LAW ENFORCEMENT OFFICERS WERE ALREADY FOUND TO BE PROPERLY WITHHELD.

In its initial decision in this matter, the Court held that the names and identifying

information about third parties was properly withheld under Exemption 7(C) and 7(F); that the

names and information provided by confidential sources were properly withheld under

Exemption 7(D); and that the information regarding the ATF's surveillance techniques were

properly withheld under Exemption 7(E).  Memorandum Opinion (Dkt. No. 19) at 21.

Accordingly, Defendant will not address those matters in this motion.

## III.    PORTIONS OF THE 1983 FILE HAVE BEEN PROPERLY REDACTED AND RELEASED PURSUANT TO FOIA EXEMPTIONS  2, 3 AND 5.

### A.    The Defendant Properly Applied FOIA Exemption 2.

Title 5, United States Code, Section 552(b)(2) (" Exemption 2") exempts from mandatory

disclosure records "related solely to the internal personnel rules and practices of an agency."  5

U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency

matters so routine or trivial that they could not be "subject to . . . a genuine and significant public

interest;" and (2) internal agency matters of some public interest "where disclosure may risk

circumvention" of statutes or agency regulations.  Dept. of Air Force v. Rose, 425 U.S. 352, 369-

70 (1976); National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 528-30

(D.C. Cir. 1986); Crooker v. Bureau of Alcohol, Tobacco and Firearms, 670 F.2d 1051, 1073-74

(D.C. Cir. 1981).  Depending upon the nature of the information, documents will fall within

---

[4/]    The Court previously held that the adequacy of the ATF's search for responsive records is not at issue.  See Memorandum Opinion (Dkt. No. 19) at 9-10.

either the "high (b)(2) category" or the "low (b)(2) category."

In this case, exemption "high (b)(2)" is at issue.  Exemption "high (b)(2)" exempts from mandatory disclosure documents relating to more substantive internal matters.  See Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities.  See Crooker, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); Hardy v. ATF, 631 F.2d 653, 656 (9th Cir. 1980).

Here, the Defendant withheld information consisting of informant symbol number designations, informant file numbers and a sensitive administrative internal marking used as an identifier for a source of information.  See Second Graham Decl. at ¶¶ 75-76.  It has long been established that Exemption 2 supports withholding of symbols or numbers that would reveal the identities of confidential informants.  Lesar v. Dept. of Justice, 636 F.2d 472, 486 (D.C. Cir. 1980); Schrecker v. Dept. of Justice, 74 F. Supp.2d 26, 32 (D.D.C. 1999) (citing Lesar), aff'd in relevant part, 254 F.3d 162, 167 (D.C. Cir. 2001).

In addition, the internal codes and numbers include laboratory and property tracking numbers, information contained in the ATF's computer system that relate to various personnel, law enforcement, and firearms tracing databases.  Second Graham Decl. at ¶¶ 9-13.  As set forth in the Second Declaration of Averill Graham, the disclosure of the internal codes and information could specifically allow for navigation of law enforcement databases with ease and would compromise the security of the data in ATF's systems and could aid in the discovery other

11

law enforcement sensitive data, such as the identities of confidential informants, law enforcement techniques and information which would allow a criminal to evade justice for his bad acts.  Id. at ¶¶ 12-13.

**B.**    **The Identities and Statements of Grand Jury Witnesses, and Property Inventory Material are Protected from Disclosure Under Exemption 3.**

Exemption 3 of the FOIA permits the withholding of information "specifically exempted from disclosure by statute" if the statute (A) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue," or (B) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  In order to determine the applicability of Exemption 3, the Court must engage in a two-step analysis.  First, the Court must decide whether a statute qualifies as a withholding statute under Exemption 3.  Second, the Court must determine whether the material requested by plaintiff is "specifically exempted from disclosure" by the statute.  Medina-Hincapie v. Department of State, 700 F.2d 737, 740 (D.C. Cir. 1983).

With respect to subsection (A) of exemption 3, the Court of Appeals has held that the provision applies to "those statutes incorporating a congressional mandate of confidentiality" that is "absolute and without exception" to the specific information sought to be disclosed to the public, even where the agency is granted discretion to disclose the information to others not part of  "the public."  Medina-Hincapie, 700 F.2d at 741.  See also Landmark Legal Foundation v. I.R.S., 267 F.3d 1132, 1138 (D.C. Cir. 2001) (statute specifying that "return information shall be confidential" satisfies the requirements of Exemption 3 of FOIA with respect to information contained within the return).  Subsection B, on the other hand, applies where the statute provides specific criteria for withholding **or** refers to the particular types of information to be withheld.

12

De Laurentiis v. Haig, 686 F.2d 192, (3rd Cir. 1982) (emphasis added) (statute may fall under

either criteria of exemption 3(B)) (*cited with approval in* Medina-Hincapie, 700 F.2d at 741).

Exemptions 3(A) and 3(B) are not mutually exclusive.  "A statute can 'refer to particular matters'

(Exemption 3(B)) and, at the same time, require that those matters be withheld from the public in

terms that 'leave no discretion on the issue' (Exemption 3(A)).  Of course, a statute qualifies

under Exemption 3 if it meets the requirements of either 3(A) or 3(B)."  Medina-Hincapie, 700

F.2d at 742 n.21.

Here, the redacted documents contained information about persons who were grand jury

witnesses, including a description of the substance of their testimonies, as well as documents

from the Assistant United States Attorney regarding the grand jury proceedings.  Second Graham

Decl. at ¶¶ 15-18.  As such, the information is protected pursuant to Fed. R. Crim. P. 6(e).  See

Fund for Constitutional Government v. National Archives, 656 F.2d 856, 868-869 (D.C. Cir.

1981) (Fed. R. Crim. P. 6(e) meets the threshold of Exemption 3 because it exempts matters

before the Grand Jury from disclosure).

**C.     The Information Exposing the Attorney Work Product and/or the Deliberative Process of the Law Enforcement Officials is Protected from Disclosure Under Exemption 5.**

Exemption 5 of FOIA protects from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the

agency."  5 U.S.C. § 552(b)(5).  The Circuit Court has made clear that Exemption 5 protects

information normally privileged in the civil discovery context, including information protected

by the attorney work product privilege and the deliberative process privilege. Horowitz v. Peace

Corps, 428 F.3d 271, 276 (D.C. Cir. 2005); Judicial Watch, Inc. v. Department of Energy, 412

F.3d 125, 129(D.C. Cir. 2005); <u>Bureau of Nat'l Affairs v. Dep't of Justice</u>, 742 F.2d 1484, 1496

(D.C. Cir. 1984).

      To qualify as deliberative process material protected by Exemption 5, the agency must

demonstrate that the disclosure of materials would "expose an agency's decisionmaking process

in such a way as to discourage candid discussion within the agency and thereby undermine the

agency's ability to perform its functions." <u>Horowitz</u>, 428 F.3d at 276 (*quoting* <u>Dudman</u>

<u>Commc'ns Corp. v. Dep't of the Air Force</u>, 815 F.2d 1565, 1568 (D.C. Cir. 1987)). Thus, the

information or document withheld must be both "pre-decisional" and "deliberative," and, by the

terms of Exemption 5, it must also be an "inter-agency" or an "intra-agency" record. <u>Judicial</u>

<u>Watch</u>,412 F.3d at 129. Attorney work product extends to law enforcement investigations, when

the investigation "represents an attempt to garner evidence against a suspected wrongdoer."

<u>SafeCard Services v. SEC</u>, 926 F.2d 1197, 1202 (D.C. Cir. 1991).

      Here, the ATF withheld information from the documents under Exemption 5, in

conjunction with the attorney work product doctrine and the deliberative process privilege. <u>See</u>

Second Graham Decl. at ¶¶ 19-21and Vaughn Index (referencing part of Documents 166, 168

and 187). The material withheld as attorney work product reflects such matters as investigative

strategy, interpretations and personal evaluations and opinions pertinent to a criminal case. <u>Id</u>.

The records were prepared by or at the request or direction of an Assistant United States Attorney

and made during the course of a criminal investigation. <u>Id</u>. Accordingly, the information

withheld contains deliberative information of the USAO and agents of the ATF in their

consideration of possible criminal actions, the disclosure of which would reveal pre-decisional

communications among government personnel such as discussions of litigation issues,

14

alternatives and strategies.

IV.    **All Undisclosed Portions of the 1983 ATF File Are Protected from Disclosure Pursuant to Exemption 7(A).**

Although the ATF has provided disclosure of all non-exempt responsive documents and information, the Court should deny any further consideration of Plaintiff's FOIA request, in the alternative, because Plaintiff has yet again filed another collateral petition in his criminal matter. On January 3, 2008, Plaintiff filed a petition before the 8th Circuit Court of Appeals for permission to file a Successive Habeas appeal.  Exh. OOO.

FOIA exemption 7(A) authorizes withholding "records or information compiled for law enforcement purposes, but only to the extent that production of such law enforcement records or information . . . could [ ] interfere with enforcement proceedings." 5 U.S.C. §  552(b)(7)(A). Records can be withheld under Exemption 7(A) if the agency (1) establishes that the law enforcement proceeding is pending or prospective; and (2) shows that disclosure could interfere with enforcement proceedings.  NLRB v. Robbins Tire & Rubber Co., 473 U.S. 214, 244 (1978). And, although a Vaughn Index is not required to detail the potential interference on a document by document basis under Exemption 7(A), see Keen v. Executive Office for the United States Attorneys, No. 96cv1049, slip op. at 8 (D.D.C. July 15, 1999), one is attached from which the Court may find support for its ruling.

A.    **The ATF File Was Compiled During the Course of the Agency's Law Enforcement Duties.**

The ATF is a criminal and regulatory law enforcement agency within the Department of Justice and is responsible for, among other things, enforcing Federal firearms laws including the Gun Control Act of 1968, 18 U.S.C. §§ 921-930, the Federal explosives laws, 18 U.S.C. Chapter

15

40, and the National Firearms Act, 26 U.S.C. Chapter 53.  See 28 C.F.R. § 0.130.  First Graham

Decl. at ¶ 62.  Within those law enforcement functions, the ATF assisted the Federal Bureau of

Investigation, the Drug Enforcement Agency and the St. Louis Police Department in the criminal

investigation of Jerry Lewis Bey and his organization, the Moorish Science Temple of America.

Id. at ¶ 65.  The 1983 file sought by Plaintiff was created as a result of that investigation, which

is now pending post-conviction proceedings in the Eighth Circuit Court of Appeals.  Id. at ¶ 64.

> **B.    A Law Enforcement Proceeding Was Pending or Prospective at the Time of Plaintiff's FOIA Request.**

Because Exemption 7(A) applies to law enforcement proceedings that are pending or

prospective, see Butler v. Department of the Air Force, 888 F. Supp. 174, 183 (D.D.C.1995), it

continues in its application at least until the complainant's conviction is final.  Kansi v. U.S.

Dept. of Justice, 11 F.Supp.2d 42, 45 (D.D.C. 1998).  This includes collateral attacks upon the

conviction, see id. (motion for new trial); Keen, slip op. at 7 (motion to re-determine sentence);

Crooker v. ATF, No. 83cv1646, slip op. at 1-2 (D.D.C. April 30, 1984) (motion to withdraw

plea), and investigations into matters collateral to the requestor's original conviction.  Cucci v.

Drug Enforcement Administration, 871 F.Supp. 508, 511 (D.D.C. 1994) (file regarding

requestor's arrest and final conviction on drug charges withheld while pending tax law violation

investigation is proceeding).

Plaintiff has had various appeals, petitions for rehearing, and 28 U.S.C. § 2255 motions

before the U.S. District Court (EDMO) and the U.S. Court of Appeals (Eighth Circuit) all related

to his convictions in 1993 for multiple murders, including that of a St. Louis Deputy Sheriff and

a Grand Jury witness, along with participating in a criminal enterprise.  First Graham Decl. at ¶

64.  As a result of these convictions, Plaintiff is serving multiple life sentences.  Id.  Indeed, at

present, Plaintiff has a petition pending before the Eighth Circuit seeking permission to file

another petition seeking to overturn his convictions. See <u>Jerry Lewis Bey v. United States</u>, 08-

1022 (8th Cir. Filed January 3, 2008).

**C.    Disclosure of the 1983 ATF File Could Interfere with Enforcement Proceedings.**

The potential harms to the investigation are very real and identifiable in this case.

Plaintiff has been convicted of murdering a law enforcement official and a grand jury witness.

Second Graham Decl. at ¶ 64.  Thus, he has demonstrated that he will use the information to

identify and retaliate against persons who are involved in the investigation, and to continue his

criminal enterprise from within the prison walls.  <u>Id</u>. at ¶¶ 64, 67.  In addition, Plaintiff has used

documents obtained pursuant to FOIA in the past to interfere with the on-going post-conviction

proceedings.  <u>Id</u>. at ¶ 66.  Plaintiff has misquoted information previously obtained, or has used

them to make illogical assertions that must be addressed by the Assistant United States Attorney

in those proceedings   <u>Id</u>.

Indeed, as is demonstrated in the First and Second Declaration of Avrill Graham, Plaintiff

analyzes all information obtained in his criminal matter, makes assessments of possible

cooperators, and determines who may be providing evidence against him or his friends.  First

Graham Decl. at ¶ 113; Second Graham Decl. at ¶ 53.  Plaintiff was convicted and/or is known to

have murdered, conspired to, threatened to, and/or attempted to murder suspected informants,

police, prosecutors, and others who he perceived as having provided evidence against him.  <u>Id</u>.;

<u>see also</u> Second Graham Decl. at ¶¶ 19, 25 and 42 .  For example, in regards to the grand jury

witness who was assassinated pursuant to Plaintiff's order; it was carried out because Plaintiff

knew of the witness' other troubles with the law (i.e., had intelligence about the matter) and

17

evidently perceived that the pressure on the witness to cooperate outweighed the assurances the witness attempted to provide that they would not testify against him.  First Graham Decl. at ¶ 113; Second Graham Decl. at ¶ 53.  Thus, providing any information from the investigation file would result in the retaliation toward persons that Plaintiff perceives to have worked against him and his criminal enterprise.  Second Graham Decl. at ¶¶ 47, 53-54 and 56.

Based upon the fact that Plaintiff has proven the extent to which he will retaliate against those who testify or provide information against him, including grand jury witnesses and law enforcement personnel, release of witness' names and statements has the very real potential to endanger such witnesses or cause harassment and harm to the witness' safety and/or reputation. First Graham Decl. at ¶ 70; Second Graham Decl. at ¶¶ 25-27.  In addition, disclosure may well discourage future witnesses from cooperating with ATF.  Id.  Disclosure of the withheld information may reveal investigative techniques, scope, limits, direction of the investigation, and the investigators mental impressions and strategy, as well as interfere with future cooperative efforts with local law enforcement agencies.  Second Graham Decl. at ¶¶ 28-31.

Because Plaintiff has a related matter pending before the Eighth Circuit Court, and because any ruling by the Circuit Court may result in further proceedings before the U.S. District Court, the file is protected from disclosure under Exemption 7(A), and judgment should be entered in favor of Defendant.

## V.    THE DOCUMENTS ARE PROPERLY SEGREGATED.

Under FOIA, agencies withholding records are required to release "any reasonably

18

segregable portion" thereof.  5 U.S.C. § 552(b).[5/]  Here, even if the Court holds that Exemption 7(A) does not protect the remaining portions of the 1983 file, all segregable portions have been provided to Plaintiff under the alternative exemptions set forth by Defendant.  The Second Declaration of Averill Graham specifically details the efforts put forth by the ATF to carefully segregate only that information that is protected from disclosure by the FOIA.  Second Graham Decl. at ¶ 56.

**CONCLUSION**

For the above reasons, the Defendant's Motion for Summary Judgment should be granted and judgment should be entered in favor of the Defendant.

Respectfully submitted,

  /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

  /s/ Darrell C. Valdez
DARRELL C. VALDEZ, D.C. BAR # 420232
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
(202) 307-2843

---

[5/]    When the agency has met its burden of show that a category of records are exempt and related to the continuing investigation under Exemption 7(A), there are no non-exempt portions of the records to segregate, and the entire category is protected. Cucci v. Drug Enforcement Administration, 871 F.Supp. 508, 512 (D.D.C. 1994).

## CERTIFICATE OF SERVICE

I certify I caused copies of the foregoing Defendant's Reply Memorandum to be served

by first class mail upon *pro se* plaintiff at:

Jerry Lewis Bey
Reg. No. 22328-044
U.S.P. Marion
P.O. Box 1000
Marion, IL 62959

on this 15th day of August, 2008.

    /s/ Darrell C. Valdez
DARRELL VALDEZ, D.C. Bar #420232
Assistant United States Attorney