UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Jerry Lewis Bey, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Case No.  05-02241 (JGP) |
| Bureau of Alcohol, Tobacco, Firearms and Explosives, Defendant. | ) ) ) ) ) ) | |

SECOND DECLARATION OF AVERILL P. GRAHAM,
CHIEF, DISCLOSURE DIVISION,
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES

I,  Averill P. Graham, do hereby depose and say:

1.      I am the Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and

Explosives (ATF), Department of Justice (DOJ).  In this capacity, I receive all requests

made of ATF under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the

Privacy Act of 1974 (PA), 5 U.S.C. § 552(a).   In this capacity, I also review all requests

referred to ATF from other agencies that have located ATF-originated documents in their

records while processing their FOIA and PA requests.  I am responsible for processing all

FOIA and PA requests, initiating searches relevant to such requests, supervising the

determination of what records should be disclosed, processing all documents referred to

ATF and Explosive and to other agencies, and recording all administrative appeals filed

with ATF.

2.    I declare that the statements made in this Declaration are on the basis of knowledge

acquired by me in the performance of my official duties.

3.    I am familiar with the procedures followed by this office in responding to the FOIA

request made by Jerry Lewis Bey.   ATF believes it properly denied Jerry Lewis Bey's

request under Exemptions (b)(2), (b)(3), (b)(5), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

4.    Additionally, although the Disclosure Division sent out redacted versions after Mr. Bey

asserted that he no longer had ongoing criminal appeals[1], there is reason to believe that

Mr. Bey has filed additional criminal appeals, and any further disclosures would be

exempted under (b)(7)(A).

### Chronology

5.    All chronologies and exhibits in previously filed declarations are incorporated herein.

6.    On August 8, 2007, the Disclosure Division reviewed 337 pages of material responsive to

Mr. Bey's FOIA request from the "1983 file" after he made representations that there

were no longer any pending criminal appeals.  Mr. Bey also affirmed that his previous

appeal, which was grounds for the use of the (b)(7)(A) Exemption, had been denied.

Without any pending appeals, the Disclosure Division determined that Exemption

(b)(7)(A) was no longer applicable and released responsive records to Mr. Bey with

redactions pursuant to the applicable FOIA Exemptions listed above and withholding

seven pages in full.

7.    On October 2, 2007, the Disclosure Division released three additional pages, previously

discarded as not relevant to Mr. Bey's request, because it was found that they contained

Mr. Bey's name at the top of them with no further reference to him. The Disclosure

---

[1] *See* Memorandum and Order, Pg. 8, Judge Kessler, July 7, 2008

Division redacted information on these documents pursuant to FOIA Exemption

(b)(7)(C).

8.    It is important to note that Mr. Bey has a new criminal appeal pending in the 8th Circuit.

Mr. Bey filed a habeas petition, Case No. 08-1022 on January 3, 2008[2]. Therefore, in

addition to the FOIA Exemptions listed, the material, in the alternative, is exempt from

disclosure under (b)(7)(A).

9.    Pursuant to a subsequent review of the file for the Vaughn Index, the Disclosure Division

found two additional pages ultimately released to Mr. Bey, one of which had a mistaken

redaction of his name (Jerry Lee Lewis) and the other of which had a mistaken (b)(3)

Exemption used.  On August 13, 2008, the Disclosure Division re-released these two

pages to Mr. Bey with the mistaken redactions omitted.

### Exemptions

FOIA EXEMPTION (b)(2)
INTERNAL ADMINISTRATIVE MATTERS

10.    Pursuant to Exemption (b)(2), the Disclosure Division withheld:

> ➢ Internal administrative information and identifying numbers and law
>
>   enforcement codes that are related solely to the internal rules and practices of
>
>   ATF that could be used to circumvent a criminal law enforcement database.
>
> ➢ Internal administrative information that together with other released
>
>   information would reveal the identity of an informant.

11.    Exemption (b)(2) of FOIA protects from disclosure material "related solely to the internal

personnel rules and practices of an agency," including predominantly internal matters the

disclosure of which would risk circumvention of agency regulations or statutes.

---

[2] A check of the USCA docket through Courtlink dated July 25, 2008, confirms the pendency of this appeal.

12.     The redacted information in the records that were provided to Mr. Bey consists of

        internal administrative codes.  This information is for either administrative and/or law

        enforcement purposes only, and it is of no legitimate interest to the public.  Alternatively,

        some of the material that relates to ATF databases, if disclosed, could risk circumvention

        of the law and ATF investigations.

13.     The law enforcement codes and internal administrative codes have been redacted out of

        the entire file.  The codes relate to various personnel, law enforcement, and firearms

        tracing databases.  If the codes were released to the public they could be used by anyone

        knowledgeable in computer mainframes and systems to try to circumvent the database

        and interfere with enforcement proceedings.  The release of these codes could

        specifically allow for navigation of law enforcement databases with ease and therefore

        could compromise the validity of the data in ATF's systems and also could aid in the

        discovery other law enforcement sensitive data, such as the identities of confidential

        informants, law enforcement techniques and information which would allow a criminal to

        evade justice for his bad acts.

14.     Additionally, the Disclosure Division used Exemption (b)(2) to redact certain internal

        administrative information which could reveal a confidential source or undercover

        operation.  In doing so, it redacted confidential source codes and additionally redacted

        dates and other identifying information in conjunction with (b)(7)(D) to create a mosaic

        of protection for confidential informants and undercovers.  The Disclosure Division

        perceived that these informants and sources could be subject to real danger if their

        identities were discovered by Mr. Bey or his associates, and therefore it was deemed

        crucial to their safety to ensure the protection of their identities using both Exemptions

4

conjunctively.  As noted on the Vaughn Index, there were instances where redactions were made to this effect only marking (b)(2) on the bottom of the page, but the Vaughn Index marks where (b)(7)(D) should have been marked as well to create the conjunctive protection.

FOIA EXEMPTION (b)(3) THRESHOLD

15.     Exemption (b)(3) of the FOIA permits the withholding of information prohibited from disclosure by another statute only if one of two disjunctive requirements are met:  the statute either (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  A statute thus falls within the exemption's coverage if it satisfies any one of its disjunctive requirements.  Some responsive information to Mr. Bey's FOIA request contained material subject to Fed. R. of Crim. P. Rule 6(e) which squarely falls within Subpart (A) of FOIA Exemption (b)(3).

FOIA EXEMPTION (b)(3)<br/>DISCLOSURE PROHIBITED BY STATUTE

16.     The Disclosure Division withheld certain documents that are exempt under the Fed. R. of Crim. P. Rule 6(e). The following documents have been withheld or redacted:

> ➤ Letters from the United States Attorney.

FED. R. CRIM. P. 6(e) THRESHHOLD

17.     Fed. R. Crim. P. 6(e) meets the threshold of Exemption (b)(3) because it exempts matters before the Grand Jury from disclosure.

EXEMPTION (b)(3)<br/>FED. R. CRIM. P. 6(e)

18.     The scope of the secrecy that must be afforded Grand Jury material is necessarily broad,

        and consequently encompasses not only the direct revelation of Grand Jury transcripts but

        also the disclosure of information which would reveal the identities of witnesses or

        jurors, the substance of the testimony, the strategy or direction of the investigation, the

        deliberations or questions of the jurors, and the like.

19.     The information in the letters from the United States Attorney to the Court includes

        investigative techniques and the identities of potential witnesses related to a Grand Jury

        inquiry.  If disclosed, this material would reveal protected inner workings of Grand Jury

        proceedings, including, most significantly, the substance of the Grand Jury's

        investigation and the evidence it considered regarding Mr. Bey. This protection is even

        more significant in the case of Mr. Bey as he was convicted of murdering a Grand Jury

        witness.

FOIA EXEMPTION (b)(5)
DELIBERATIVE PROCESS

20.     FOIA Exemption (b)(5) provides for an agency to be free from mandatory disclosure of

        "inter-agency memoranda or letter which would not be available by law to a party other

        than an agency in litigation with the agency." These are items that are pre-decisional in

        nature.

21.      In this case, ATF has withheld certain sections of Reports of Investigation which contain

        a special agent's assessment of what has transpired in an investigation. The sections,

        labeled "Details," are merely recommendations given by the Special Agent to a superior

        or other agent.  These notes are clearly part of the deliberative process because further

        action would have to be taken in order for the recommendations to become finalized. The

        documents, which were submitted along with other documentation to support ATF's

6

recommendation that a case be referred for prosecution, describe alternative avenues of

action available in the ATF's investigation of an individual.  These documents, which

contain candid discussions on the strengths and weaknesses of ATF's case against Mr.

Bey typically occur in ATF cases and qualify as pre-decisional.

22.    The information in question is also clearly deliberative when it is found within any

Memoranda to a Special Agent in Charge.  The Special Agent's analysis and

recommendations were clearly being offered to the superior to explore the different

routes that could be taken in regards to the investigation.  If these recommendations and

opinions were exposed to public scrutiny, such a release would have the effect of

inhibiting the free flow of recommendations and opinions of Special Agents within ATF

during a criminal investigation.

FOIA EXEMPTION 7 THRESHOLD

23.    ATF is a criminal and regulatory enforcement agency within the Department of Justice

and is responsible for, among other things, enforcing Federal firearms laws including the

Gun Control Act of 1968, 18 U.S.C. §§ 921-930, the Federal explosives laws, 18 U.S.C.

Chapter 40, and the National Firearms Act, 26 U.S.C. Chapter 53.  See 28 CFR 0.131.

FOIA EXEMPTION (b)(7)(A)
ONGOING LAW ENFORCEMENT PROCEEDINGS

24.    Although the Exemption set forth in 5 U.S.C. § 552(b)(7)(A) was used originally in

response to Mr. Bey's FOIA, the Disclosure Division dropped the Exemption and

released the documents in reliance on Mr. Bey's statement that no further appeals were

pending.  The Disclosure Division is claiming the exemption now in the alternative,

because it is apparent that Mr. Bey has filed another appeal.  Exemption (b)(7)(A) applies

to records or information compiled for law enforcement purposes, but only to the extent

that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings.

25. The records that Mr. Bey requested are investigatory records compiled for law enforcement purposes because they pertain to an investigation being conducted by ATF. The appeals have all been related to his convictions in 1993 for multiple murders, including that of a St. Louis Deputy Sheriff and a Grand Jury witness, along with participating in a criminal enterprise. As a result of these convictions, plaintiff is serving multiple life sentences. It appears that once again, Mr. Bey has a petition pending before the Eighth Circuit seeking to overturn his convictions. *See Jerry Lewis Bey v. United States*, (08-1022) (Filed Jan. 3, 2008). The records Mr. Bey has requested consist of the "Investigative Notes" and "Reports of Investigation" and "activity reports" prepared by ATF during the course of the investigation and include accompanying documents. Although Mr. Bey has received redacted information already, any further release of the information could reasonably be expected to interfere with prospective enforcement proceedings.

26. Investigative notes consist of notes which were taken during the progress of the investigation and are usually included in the case file. Often times, the investigative notes include notes from other law enforcement personnel outside of ATF or they are written by the agent in the course of his or her investigation. In this specific case file, there are handwritten notes naming police officers, their respective social security numbers, and other identifying information, including: their addresses, rank and date of assignment. These particular notes were entirely exempted under (b)(7)(C) as they consist solely of identifying information not pertaining to Mr. Bey. In addition, there are

a few investigative notes in the form of memoranda regarding the background facts of the case.  These documents are incorporated into the Report of Investigation and are thus duplicative in nature.  If, as the Court held previously, the entire Report of Investigation is exempt under (b)(7)(A), these notes would be likewise exempt.

27.   Most of the activity reports in this case were found in a separate part of the file that did not apply at all to Mr. Bey and were therefore found unresponsive to his request after further inspection.  The reports that did relate to Mr. Bey are accompanied by witness statements, property transmittal reports (pertaining mostly to evidence submitted for laboratory analysis and to reports of expenditures), local law enforcement incident reports, case summary reports, and property inventory reports.

28.   Premature release of witness statements has the very real potential to endanger such witnesses or cause harassment and harm to the witness' reputations.  In addition, disclosure may well discourage future witnesses from cooperating with ATF.

29.   Disclosure of local law enforcement incident reports forms or investigative notes would also reveal investigative techniques and the scope, limits, and direction of the investigation.  Disclosure of this material could interfere with future cooperative efforts with local law enforcement agencies.

30.   Case summary reports summarize investigative efforts and would reveal the scope, limits, and direction of the investigation, which would allow a criminal to circumvent efforts to bring him to justice by giving him unfair insight into the strengths and weaknesses of an investigation at a certain point in time.

31.    Disclosure of the property inventory and transmittal reports would reveal investigative techniques and the scope, limits, and direction of the investigation.  Most of the property

reports included in the file consisted of Reports of Expenditure and receipts, the release

of which could aid Mr. Bey in determining the identity of confidential sources and

informants.

32.    All of the information in the case file, not solely the Reports of Investigation themselves,

but also activity reports which included information about the ongoing investigation in

context, and the investigative notes which really consisted of privacy information, should

not be prematurely revealed because they each give a picture of the investigation as it

was being compiled for criminal charges.  If Mr. Bey were to acquire any more of this

information than he has already received, he will be able to tailor the evidence he is using

in his appeals to thwart the execution of justice by using information not previously

released to him, which would clearly interfere with the government's case against him.

FOIA EXEMPTION (b)(7)(C)<br>
<u>UNWARRANTED INVASION OF PERSONAL PRIVACY</u>

33.    Pursuant to Exemption (b)(7)(C) the Disclosure Division withheld:

  ➢ the names of Federal and state law enforcement personnel as well as information by
    which those individuals could be identified;

  ➢ the names of Federal and state law enforcement agents as well as information by
    which those individuals could be identified;

  ➢ the names of third-parties as well as information by which those individuals could be
    identified;

  ➢ the addresses, telephone numbers, and location of any of the aforementioned
    individuals.

34.    FOIA Exemption (b)(7)(C) protects records or information compiled for law enforcement

purposes, the production of which could reasonably be expected to constitute an

unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C).

35.    Exemption (b)(7)(C) requires a balancing of the individual's right to personal privacy against the public's interest in shedding light on an agency's performance of its statutory duties.  The requestor's identity, purpose in making the request, and proposed use of the requested information have no bearing on this balancing test.

36.    The individuals' names and identifying information referenced in paragraph 33 above were compiled in connection with an investigation into a criminal organization and as such, meet Exemption 7's threshold requirement of "records or information compiled for law enforcement purposes."

37.    Revealing this information is unlikely to add to the public's understanding of how an agency works or how well it performs its duties.  On balance, the Disclosure Division determined that the substantial privacy interest, which is protected by withholding this information, outweighs any minimal public interest that would be served by its release.  Such a release would be "unwarranted" as required by 5 U.S.C. § 552(b)(7)(C).

38.    Exemption (b)(7)(C) of the FOIA protects from disclosure records or information compiled for law enforcement purposes to the extent that the disclosure of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of privacy. 5 U.S.C. § 552(b)(7)(C).

39.    ATF withheld the names, addresses, phone numbers, and other identifying information related to law enforcement officers and personnel in ATF's files.

40.    ATF asserted Exemption (b)(7)(C) to protect the identities of ATF Special Agents and other law enforcement personnel, such as supervisory and technical personnel who were involved in law enforcement operations.  The identities of ATF Special Agents and other law enforcement personnel that appear in law enforcement records are protected since

disclosure might seriously prejudice their effectiveness in conducting investigations to which they are assigned and also could subject them to unwarranted harassment.

41.    In determining whether to identify ATF Special Agents and other law enforcement personnel, ATF balanced the interest in disclosure against the individuals' privacy interest.  Mr.  Bey did not assert any discernible public interest in this particular type of information.  ATF determined that the privacy interests of law enforcement personnel substantially outweigh any public interest, and that the names of law enforcement personnel should not be disclosed.  The fact that Jerry Lewis Bey may know, or be able to independently determine the identities of some agents or other law enforcement personnel whose names have been withheld does not diminish the exemption's protection of these individuals.  Consequently, the deleted information is exempt under Exemption (b)(7)(C).

42.    Additionally Mr. Lewis Bey has submitted several new FOIA requests since the release of the 1983 files.  He included with these requests several obituaries of third parties that may or may not have been named in his investigative file.  The Disclosure Division is continuing to withhold these names under FOIA Exemption (b)(7)(C) to protect the persons' family members and associates.  Mr. Bey was proven and/or is known to have murdered and threatened suspected informants, police, prosecutors and others who he perceived as having interest adverse to his own.  Regardless of the identities or the roles of these third parties, the safety of their families and associates is of particular concern considering Mr. Lewis Bey's violent history.  (See Graham Decl. March 30, 2006 at ¶¶ 113 and see LaBrie Decl. September 21, 2007 at ¶ 6).

FOIA EXEMPTION (b)(7)(D)
CONFIDENTIAL SOURCE

43.     Pursuant to Exemption (b)(7)(D), the Disclosure Division withheld:

  ➢     Select portions of ATF Reports of Investigation that would reveal the identity of
        confidential sources.

  ➢     the dates which could be used for identification of the aforementioned individuals.

44.     Exemption (b)(7)(D) protects from disclosure information compiled for law enforcement

        purposes, the disclosure of which could reasonably be expected to reveal the identity of a

        confidential source and/or information furnished by a confidential source.

45.     The ATF reports contain interviews and accounts of interviews of named sources of

        information that provided information and interactions regarding specifics about Mr.

        Bey's criminal activity.

46.     When a source has not expressly been granted a promise of confidentiality, certain

        circumstances characteristically support an inference of implied confidentiality.  The

        character of the crime being investigated and the source's relation to the nature of the

        crime are the primary factors in determining whether implied confidentiality exists.

47.     It is the experience of ATF that violations firearms and narcotics trafficking violations

        often consist of, or are accompanied by acts of violence, and that individuals who provide

        information concerning these crimes face a very real possibility of violent reprisal.  In

        this instance, because Mr. Bey's dangerous criminal history is established and well-

        known, ATF determined that the disclosure of this information could place the person

        that provided information to ATF in danger.  It is clear that if this information provided

        by the source were to be released the source's identity would be identified to Mr. Bey.

48.     It is reasonable to infer that at the time the individual's cooperation was secured, the

        individual expected that his/her identity and the information he/she provided was on a

confidential basis and that it would remain so.  I have also been informed by ATF Special

Agents that the release of the names of cooperating individuals such as the one in the

underlying criminal case at issue here could jeopardize future ATF operations by

deterring similarly situated individuals from providing needed information.

49.     The individuals who cooperated under the assumption of confidentiality relied on ATF

        for maintaining their anonymity and should be afforded the protection of Exemption

        (b)(7)(D).

                            FOIA EXEMPTION (b)(7)(E)
                         LAW ENFORCEMENT TECHNIQUES

50.     Pursuant to Exemption (b)(7)(E), the Disclosure Division withheld:

        ➢       Federal law enforcement techniques, described in Reports of Investigation and a
                Request for Funding.

51.     Exemption (b)(7)(E) affords protection to all law enforcement information that "would

        disclose techniques and procedures for law enforcement investigations or prosecutions, or

        would disclose guidelines for law enforcement investigations or prosecutions if such

        disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. §

        552 (b)(7)(E).

52.     The Disclosure Division invoked Exemption (b)(7)(E) to protect from disclosure the

        details of electronic surveillance techniques that are not widely known to the public,

        specifically, the circumstances under which the techniques were used, the specific timing

        of their use, and the specific location where they were employed.  If disclosed, this

        information would illustrate the agency's strategy in implementing these specific

        techniques, including the timing of certain actions and the placement of certain agency

        resources in the implementation of the technique.  This could lead to a decreased

14

effectiveness in future investigations by allowing potential subjects to anticipate the

circumstances under which such techniques could be employed and identify such

techniques as they are being employed.

53.    The Disclosure Division has also invoked Exemption (b)(7)(E) to withhold from Mr. Bey

information about techniques for funding law enforcement investigations, which would

undermine investigations and leave the techniques with little in the future, because it

would assist persons in evading the techniques described.  Additionally, the disclosure of

the techniques of how resources are expended could aid persons seeking to avoid

prosecution by avoiding certain threshold offenses or by understanding how an

undercover agent or confidential informant is able to receive funds in certain threshold

situations.

54.    The Disclosure Division has also withheld information in the narratives of certain

Reports of Investigation where the Special Agents described the techniques and

procedures that they used during the investigation.  Such information, if released

publicly, could be used by potential subjects to anticipate the law enforcement techniques

and procedures that otherwise would be foreign to them.

### Segregability

56.    My staff reviewed each page of the material identified as responsive to determine

whether all non-exempt, reasonably segregable information was released to Mr. Bey.  All

names and identifying information withheld under (b)(7)(C) and (b)(7)(D) were found to

have no further segregable information for release.  Also, there were instances, as marked

in the Vaughn Index where the third party information was so unsegregable and had no

mention of Mr. Bey or the Moorish Science Temple that entire sections were redacted as

non-responsive and also unsegregable third party information.  These were re-reviewed,

but they had no information relating to Mr. Bey or his investigation was found.

Redactions made pursuant to Exemption (b)(2), both by itself to redact law enforcement

codes which could be used to circumvent databases and also in conjunction with

(b)(7)(D) to protect undercover operations and confidential informants were re-reviewed

for segregability and were found to be appropriately used.  Exemption (b)(3) was used to

protect Grand Jury information, in all instances that (b)(3) was used, other exemptions,

including (b)(7)(C) additionally applied and therefore, no further information was found

to be segregable. Additionally, Exemption (b)(5) was used to redact predecisional

thoughts and speculations of special agents during the course of the investigation, the

release of which would have a chilling effect on agents candid thoughts in a Report of

Investigation.  (b)(5) was also used for attorney work product privilege.  Very little was

redacted pursuant to these exemptions and all information not found to be deliberative or

privileged was released and no further segregable information was found.  Finally,

exemption (b)(7)(E) was used to redact small portions of the Reports of Investigation

which demonstrated law enforcement techniques which are not generally known to the

public or which, if released in this context, would give information to criminals which

could allow them to circumvent the law by evading the techniques.  This information was

re-reviewed for segregability and no further information was found to be segregable.

57.    As a result of this review, it has been determined that all non-exempt, reasonably

segregable information has now been provided to Mr. Bey.  The Vaughn Index attached

hereto describes in detail each document and all meaningful information contained

therein.

I declare under penalty of perjury that the foregoing is true and correct. Executed this *13* day

of August 2008.


_____
Averill P. Graham
Chief, Disclosure Division