**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                              :
JERRY LEWIS-BEY,              :
                              :
            Plaintiff,        :
                              :
      v.                      :   Civil Action No. 05-2241 (GK)
                              :
UNITED STATES DEPARTMENT      :
OF JUSTICE,                   :
                              :
            Defendant.        :
_____:
```

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Second Motion for Summary Judgment.[1]   Upon consideration of the Motion, Plaintiff's Opposition, the Reply and the record herein, the Motion will be granted.

I.   BACKGROUND

Plaintiff brings this civil action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ") "to order the production of

---

[1]   On August 28, 2007, Defendant submitted a Status Report Regarding Its Disclosure of Segregable Records to Plaintiff [#24], and, arguing that it had fulfilled its obligations under the FOIA, moved to dismiss this action as moot.  Based on the then-current record, the Court "den[ied] [Defendant's] motion to dismiss without prejudice and direct[ed] it to file a proper dispositive motion, with supporting declarations or exhibits as appropriate, to which Plaintiff can respond and on which the Court may rule when fully briefed."  *Lewis Bey v. United States Dep't of Justice*, 565 F. Supp. 2d 5, 10 (D.D.C. 2007).

1

Bureau of Alcohol, Tobacco, Firearms and Explosives ["ATF"] records on [P]laintiff and his organization, the Moorish Science Temple of America (MSTA)." Compl. ¶ 1. He indicated that the requested records "can be located in [ATF] file 7665 0683 1501 (01), which . . . originated out of the [ATF's] St. Louis field office." *Id.* For convenience, the Court refers to the responsive records as the "1983 investigation file."[2]

---

[2] There are at least four criminal investigation file numbers associated with this matter. The Complaint mentions only one file by number, 7665 0683 1501 (01). Compl. ¶ 1.

ATF's initial search for records occurred by means of a query of the Treasury Enforcement Communications System ("TECS") using Plaintiff's full name as a search term; it was determined that any responsive records would be located at the St. Louis Field Division and would be retrievable under Criminal Investigation Number 33920 88 1510X. Graham I Decl. ¶ 110. A second TECS query using "Moorish Science Temple" as a search term identified another investigation file, 33920 88 1540G, also located at the St. Louis Field Division. *Id.* Armed with these results, St. Louis Field Division staff "undertook a search that located all criminal case files within their office that were retrievable by the [P]laintiff's full name and Criminal Investigation Number 33920 88 1510X." *Id.* Subsequently, ATF staff identified "criminal investigation 33920 83 1501Y." *Id.* ¶ 111. This file, 33920 83 1501Y, did "not appear in the TECS database," and was located only after making "inquires with [] St. Louis Field Division personnel who had some historical knowledge of that particular Field Division's investigative cases." *Id.* "ATF File No. 7665 0683 1501L (01) is in actuality part of ATF File No. 33920 83 1501Y." *Id.* ¶ 45 n.9.

In response to Plaintiff's Motion in Opposition to Dismiss as Moot [#25], ATF staff "conducted another thorough review of the 1983 case file" and determined that it "contained documents with several different Investigation Numbers including: 33920 83 1501Y and 7665 0683 1501L and additionally some documents from a 1988 case file." Reply to Plaintiff's "Motion in Opposition to Dismiss as Moot" [#26], Declaration of Marilyn R. LaBrie ("LaBrie Decl.")
(continued...)

Plaintiff's quest for ATF records extends back to 1997, *see* Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. [#14], Declaration of Averill P. Graham ("Graham I Decl.") ¶¶ 3-58 & Ex. A (July 4, 1997 FOIA Request).  The particulars of the request have changed over time, and the ATF has disclosed records in the past. The FOIA request relevant to this action, *see* Graham I Decl., Ex. M (July 17, 2000 FOIA Request), is essentially, Plaintiff's response to the disclosure of records responsive to his original July 4, 1997 request by the ATF on June 2, 2000.  *See* Graham Decl., Ex. J (June 2, 2000 letter from A.P. Graham, Disclosure Specialist, ATF); Compl. ¶ 5.  Plaintiff acknowledges receipt of the June 2000 disclosure, explains that the "ATF was the lead agency in [an] investigation which began in 1983 and was terminated in March or April 1987," and specifically requests information pertaining to himself and to the MSTA, particularly "all pen registers,

_____

[2](...continued)
¶ 3.  "It was unclear whether the two 1983 case numbers were interchangeable or whether the file had been rearranged for some other purpose."  *Id.*  It appeared that "the different case file numbers were merged," and "this particular file which contained documents with these case file numbers . . . is the only known 1983 case file in existence."  *Id.*

At this stage of the proceedings, it no longer matters whether Plaintiff specifically requested each of the investigation files by number.  Defendant does not now claim that Plaintiff is only entitled to segregable records maintained in file 7665 0683 1501. *See* Response to Plaintiff's "Reply to Defendant's 'Second Motion' to Dismiss as Moot" [#30] ¶ 2.  The relevant files are merged, and Plaintiff has received responsive non-exempt records from both files.  *Id.* n.1.

surveillance logs, and toll records" at a particular address, 11882
San Remo, between April 1986 and July 1986, as the ATF "only sent
. . . documents from 1988 to 1997." *Id.*, Ex. M (July 17, 2000 FOIA
Request).

As Plaintiff indicated, the records in the 1983 investigation
file were compiled in the course of "an investigation conducted by
multiple law enforcement agencies, including ATF, regarding
[P]laintiff's large-scale criminal drug organization."  Graham I
Decl. ¶ 65; *see id.* ¶¶ 62, 66-69.  The United States Court of
Appeals for the Eighth Circuit summarized the criminal proceedings
against Plaintiff and his co-defendants as follows:

> The United States presented evidence at the . . .
> trial tending to show that Jerry Lee Lewis participated
> in and became the leader of a powerful criminal
> racketeering enterprise that for over ten years
> controlled a large percentage of the market for T's and
> Blues (a heroin substitute), heroin, and cocaine in north
> St. Louis.  Lewis obtained and maintained his position by
> murdering competitors and others who threatened his
> organization (the Jerry Lewis Organization or JLO).  The
> profitable but bloody activities of the appellants in
> this case, all members of the JLO, were described by
> other JLO members who eventually cooperated with the
> government[.]  In essence, the investigation and
> prosecution of Jerry Lee Lewis and his associates
> produced evidence of a long-term, violent drug-
> trafficking enterprise operating behind a facade known as
> Subordinate Temple No. 1 of the Moorish Science Temple of
> America (MSTA) . . . .
>
> After a trial lasting almost nine months, one of the
> longest criminal trials in the history of the Eastern
> District of Missouri, a jury returned guilty verdicts
> against all seven appellants on one count of conducting
> a criminal racketeering enterprise . . . ., against six
> appellants . . . on one count of conspiring to conduct
> and participate in the same criminal racketeering

4

> enterprise . . ., [and] Jerry Lee Lewis on six counts of committing violent crimes (murder, conspiracy to commit murder, and attempted murder) in aid of a racketeering enterprise.

*United States v. Darden*, 70 F.3d 1507, 1516-17 (8th Cir. 1995) (footnote omitted), *cert. denied*, 517 U.S. 1149 (1996). The Eighth Circuit expressly rejected Plaintiff's arguments regarding the sufficiency of the evidence against him, concluding that "[t]he evidence overwhelmingly support[ed] the jury's findings that [Plaintiff] . . . conspired and attempted to murder Rochelle Bartlett; conspired and attempted to murder 'Bud' Green; conspired to murder and murdered Deputy Sheriff Antar Tiari; conspired to murder and murdered Bruce 'Hat' Henry; conspired to murder and murdered Count Johnson; and conspired to murder and murdered David 'Kiki' Grady. *Id.* at 1526. Among the murder victims was a Grand Jury witness. Graham I Decl. ¶ 64. Plaintiff was sentenced to life in prison. *United States v. Darden*, 70 F.3d at 1517.

Plaintiff's history of violent crime is relevant to this FOIA action. At this point, it is helpful to recall the ATF declarant's description of Plaintiff's activities and background:

> [P]laintiff collects intelligence about himself, his co-racketeers, his competitors and law enforcement personnel (an exhibit at his trial was a seized massive compilation of news clippings, police reports/excerpts and like materials that his enterprise relied upon to help advance their crimes). The information [P]laintiff collects is used either to further criminal acts or circumvent the criminal discovery process. Plaintiff has been linked to criminal behavior outside of prison despite his being imprisoned since 1991. For example, [the declarant has] been advised that narcotics investigators developed

5

information . . . that [P]laintiff was involved in a
narcotics distribution conspiracy while incarcerated at
Leavenworth Federal prison, that allegedly influenced and
conducted narcotics sales in the Kansas City and St.
Louis areas.  Testimony at [P]laintiff's trial indicated
the investigation missed some $400,000 in drug proceeds
which have never been found and which were removed from
a hiding place by his associates; thus, his control over
these funds, or the indebtedness of any who have
benefit[t]ed from them since his conviction, helps
provide [P]laintiff influence which could enable him to
retaliate against witnesses, informants, police and
others who he merely believes are responsible for his
conviction, whether or not his belief is accurate.  For
example, he is known to have caused the killing of
person(s) he believed to be an informant(s).  [The
declarant has] been informed by the [prosecutor] that
plaintiff's transparent efforts to serve as a clearing
house for information he has previously been provided
under the FOIA is misused to the extent that he or his
imprisoned peers (and/or his street loyalists) can misuse
the information, and not just in his, or their, ill-fated
legal proceedings, comports with his proven history of
"counterintelligence" gathering to the detriment of his
victims and public order.  [She] was advised by the
[United States Attorney's Office for the Eastern District
of Missouri] that Plaintiff was known to conduct pre-
incarceration meetings with his co-racketeers in which
they went over what was known or suspected, regarding,
for example, who might be "snitches" or how a recent
assassination had been conducted and what might be
learned from the process, as assessed against other
collected information, for future use.

Graham I Decl. ¶ 67.

In the March 30, 2007 Memorandum Order [#19] ("Mem. Order"),

the Court concluded that, based on "the unique set of

circumstances" presented in this case, *id.* at 15, the ATF's

decision to withhold the 1983 investigation file was proper under

FOIA Exemption 7(A), which protects law enforcement records "to the

extent that production of such . . . records . . . could reasonably

be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). At that time, Plaintiff's petition seeking to overturn his criminal convictions was pending before the United States Court of Appeals for the Eighth Circuit. Graham I Decl. ¶ 64. The Court found that release of information in the 1983 investigation file, particularly the "summaries of agents' activities, witness names and other identification, witness background information, [and] information provided by witnesses," *id.*, could reasonably be expected to interfere with prospective enforcement proceedings in light of Plaintiff's convictions for the murder of a Grand Jury witness, a Deputy Sheriff, and a person who Plaintiff believed to be an informant. *See* Mem. Order at 16.[3] Plaintiff's background strongly suggests that release of this information "would have a chilling effect on witness testimony at a subsequent retrial." *Id.* at 17.

Defendant's Second Motion for Summary Judgment pertains to the portions of the 1983 investigation file previously withheld under Exemption 7(A). Based on Plaintiff's representation "that there

---

[3]   The Memorandum Order [#19] granted Defendants Motion for Summary Judgment in part. Mem. Order at 23. The Court concluded that non-disclosed portions of the requested records were properly withheld under Exemptions 2, 3, 7(C), 7(D), 7(E), and 7(F). *Id.* With respect to records withheld under Exemption 7(A), the Court divided these records into three categories; the motion was granted only with respect to category one documents. *Id.* n.23. The Court held in abeyance its ruling with respect to documents in categories two and three pending submission of a supplemental declaration or report. *Id.* at 23-24.

were no longer any pending criminal appeals," Mem. of P. & A. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s 2d Mot."), Second Declaration of Averill P. Graham ("Graham II Decl.") ¶ 6, the ATF then "dropped the Exemption," *id.* ¶ 24, "reviewed 337 pages of material responsive to [Plaintiff's] FOIA request," *id.* ¶ 6, and on August 8, 2007 released "approximately 300 pages . . . and withheld four documents (consisting of 7 pages) in full pursuant to FOIA [E]xemption 7(C) and Fed. R. Crim. P. 6(e)."[4]  Defendants' Status Report Regarding Its Disclosure of Segregable Records to Plaintiff [#24] ¶ 4.  In addition, the ATF released three additional pages when it was discovered that Plaintiff's name appeared at the top of each page, and it re-released two pages of records on August 13, 2008 from which Plaintiff's name mistakenly had been redacted.[5] Graham II Decl. ¶¶ 7, 9.

---

[4]    On January 3, 2008, Plaintiff filed "a new criminal appeal . . . in the 8th Circuit."  Graham II Decl. ¶ 8 & Ex. OOO (Court of Appeals Docket # 08-1022); Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J. at 4.  For this reason, the ATF argued in the alternative that the 1983 investigation file remains exempt from disclosure under Exemption 7(A).  Graham II Decl. ¶¶ 8, 24. Plaintiff already has received the information which had been withheld previously under Exemption 7(A).  Therefore, any harm resulting from the ATF's August 2007 release cannot be avoided at this time and there is no need to address Exemption 7(A) further.

[5]    The Court will address Plaintiff's response to the August 8, 2007 release below.

## II.   DISCUSSION

### A.   *Summary Judgment Standard*

The Court grants a motion for summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when these submissions describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  Such affidavits or declarations are accorded "a presumption of good faith, which

cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Central Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

   B.  *Plaintiff's Response to the August 8, 2007 Release*[6]

   Plaintiff responded to the ATF's August 8, 2007 release of records by pointing out records that were not disclosed.  These items included copies of surveillance photos, toll records of his residence (12654 Stoneridge), his apartment (11882 San Remo in St. Louis) and two MSTA locations (4408 Marcus and 3600 Grand), pager records from Gencom Pager Company, and pen register records from his residence (12654 Stoneridge) and the MSTA's locations (4408 Marcus and 3600 Grand).  *See* Plaintiff's Motion in Opposition to Dismiss as Moot [#25] ¶¶ 5-10; Reply to Defendant's "Second Motion" to Dismiss as Moot [#27] ¶ 3.

   In response to these assertions, ATF staff "conducted another thorough review of the file," and found no surveillance photographs.  Reply to Plaintiff's "Motion in Opposition to Dismiss as Moot" [#26], Declaration of Marilyn R. LaBrie ("LaBrie Decl.") ¶ 4.  A subsequent "review[] [of] the 1983 file which was retrieved

---

   [6]   Plaintiff's objection to the deletion of the names of individuals involved in the investigation, *see* Plaintiff's Motion in Opposition to Dismiss as Moot [#25] ¶ 11; Reply to Defendant's "Second Motion" to Dismiss as Moot" [#27] ¶¶ 4-5, is addressed below in the discussion of Exemption 7.

pursuant to [Plaintiff's] FOIA request and this litigation" located "no pen-register or telephone toll records listing the Moorish Science Temple, or [Plaintiff], or any of the addresses [Plaintiff] listed."  Response to Plaintiff's "Reply to Defendant's 'Second Motion' to Dismiss as Moot" [#30], Fourth Graham Decl. ¶ 3.

The ATF's inability to locate all of the records Plaintiff desires does not defeat summary judgment as long as it "establish[es] that it located no records responsive to plaintiff's request after a reasonable search using 'methods reasonably expected to produce the information requested.'"  *Davidson v. Envtl. Prot. Agency*, 121 F. Supp. 2d 38, 39 (D.D.C. 2000) (quoting *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *see Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (noting that the agency's search for responsive records depends not on "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate").  The Court already has concluded that the ATF's search for responsive records was adequate.  *See* Mem. Order at 10.  Furthermore, Plaintiff's reaction to the August 8, 2007 release does not require the ATF to initiate a new search or otherwise to supplement or modify its release.  *See Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996) (finding that an agency's reasonable effort to satisfy a FOIA request "does not entail an obligation to search anew based

11

upon a subsequent clarification"). The ATF cannot release records
that it does not maintain, and its failure to produce photographs,
pen registers, or toll records does not defeat summary judgment.

### C. Plaintiff's Opposition to Defendant's
### Second Summary Judgment Motion

Plaintiff devoted his entire opposition to Defendant's first
Motion for Summary Judgment to Exemption 7(A) without addressing
the agency's decision to withhold information under Exemptions 2,
3, 7(C), 7(D), 7(E), and 7(F). For this reason, the Court treated
these matters as conceded. Mem. Order at 18. Defendant explained
that it included arguments as to the withholding of information
under Exemptions 2, 3, 7(C), 7(D), 7(E), and 7(F) in its Second
Motion for Summary Judgment and supporting Memorandum "solely to
inform the Court as to the fact that all redactions and
withholdings fall under those provisions." Def.'s Reply to Pl.'s
Opp'n to Def.'s Second Mot. for Summ. J. ("Def.'s Reply") at 2.
Apparently the Defendant's intention was not clear to Plaintiff,
and now before the Court are Plaintiff's challenges to the
withholding of information under all of these exemptions. The
Court will address each exemption in turn.

### D. Results of Plaintiff's FOIA Requests to the FBI

The Court first addresses an argument raised by Plaintiff to
oppose the ATF's decision to withhold information under Exemptions
2, 5, 7(C), and 7(E). It appears that Plaintiff submitted FOIA
requests to the Federal Bureau of Investigation ("FBI"). *See* Mem.

of P. & A. in Opp'n to Def.'s Mot. for Summ. J. [#36] ("Pl.'s
Opp'n") at 5-9.  Plaintiff states that "since February 29, 2000
[he] has obtained over 3000 pages . . . from the FBI 1983 case file
('which contains much of the same information in the ATF 1983 case
file') and there is no evidence that this information was used
other than for litigation purposes relating to his criminal case."
*Id.* at 8.  Based on past responses by the FBI to his FOIA requests
to that agency, Plaintiff argues that the ATF is not justified in
withholding information that he claims is similar or identical to
information already released by the FBI.  *See id.* at 5-9.  Aside
from a handful of attachments to his Opposition, *see, e.g.,* Pl.'s
Opp'n, Ex. BBB, the substance of Plaintiff's FOIA requests to the
FBI and the actual documents the FBI has released are not known.

The results of Plaintiff's FOIA requests to the FBI are not
relevant to this case.  Here, the only records at issue are those
released to Plaintiff in August 2007 which the ATF previously
withheld under Exemption 7(A).  The fact that the FBI disclosed a
similar type of information in a separate case does not mean that
the ATF is obligated to disclose in this case information
maintained in its files.  *See Salisbury v. United States*, 690 F.2d
966, 971 (D.C. Cir. 1982); *Halkin v. Helms*, 598 F.2d 1, 9 (D.C.
Cir. 1978) ("[T]he government is not estopped from concluding in
one case that disclosure is permissible while in another case it is
not.").  All that is before this Court are Plaintiff's bare

assertions that the ATF and the FBI files contain the same information.  For these reasons, the Court concludes that the ATF is not bound by the FBI's past decisions to release or withhold information in response to Plaintiff's separate FOIA requests, whether the information in the FBI's records is the same as or similar to information found in the ATF's records.

### E.  *Exemptions*

### 1.  Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies if the information sought meets two criteria.  First, such information must be "used for predominantly internal purposes."  *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d. 1051, 1074 (D.C. Cir. 1981); *see Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525, 528 (D.C. Cir. 1985).  Second, the agency must show either that "disclosure may risk circumvention of agency regulation," or that "the material relates to trivial administrative matters of no genuine public interest."  *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990) (citations omitted).

"Predominantly internal documents the disclosure of which would risk circumvention of agency statutes are protected by the so-called 'high 2' exemption."  *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  "High 2" exempt

information is "not limited . . . to situations where penal or enforcement statutes could be circumvented." *Id.* at 1208. If the material at issue merely relates to trivial administrative matters of no genuine public interest, it is deemed "low 2" exempt material. *See Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830-31 n.4 (D.C. Cir. 1983).

"Low 2" exempt materials include such items as "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert. denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979), and other "trivial administrative data such as . . . data processing notations[] and other administrative markings." *Coleman v. Fed. Bureau of Investigation*, 13 F. Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

The ATF withholds law enforcement codes, internal administrative codes, and confidential source codes under Exemption 2. Graham II Decl. ¶¶ 13-14. The law enforcement and internal administrative codes "relate to various personnel, law enforcement, and firearms tracing databases." *Id.* ¶ 13. According to the ATF, the codes "allow for navigation of law enforcement databases with ease." *Id.* The ATF's declarant explains that release of these codes to the public could allow an individual "knowledgeable in computer mainframes and systems to try to circumvent the database

and interfere with enforcement proceedings." *Id.* In addition, the declarant states that use of the codes "could aid in the discovery of other . . . sensitive data, such as the identities of confidential informants, law enforcement techniques, and information which would allow a criminal to evade justice for his bad acts." *Id.*

The Court concludes that the ATF's decision to redact internal administrative codes and law enforcement codes was proper. *See, e.g., Singh v. Fed. Bureau of Investigation*, 574 F. Supp. 2d 32, 44 (D.D.C. 2008) (withholding internal agency codes appearing on printouts from the Immigration and Naturalization Services Central Index System used for the purposes of indexing, storing, locating, retrieving and distributing information in ICE investigative files); *Boyd v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 496 F. Supp. 2d 167, 171 (D.D.C. 2007) (withholding as "high 2" exempt information data displayed on screen prints of Treasury Enforcement Communications System records identifying the terminal from which a query was made and its connection to the mainframe, as well as information pertaining to software applications); *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001) (withholding internal computer codes).

### 2. Exemption 3

Exemption 3 protects records that are "specifically exempted from disclosure by statute . . . provided that such statute either

. . . [requires withholding] in such a manner as to leave no discretion on the issue, or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before [a] grand jury." Fed. R. Crim. P. 6(e)(2); *see In re Motions of Dow Jones & Co., Inc.*, 142 F.3d 496, 498-501 (D.C. Cir.), *cert. denied sub nom. Dow Jones & Co., Inc. v. Clinton*, 525 U.S. 820 (1998). Rule 6(e) is a statute for purposes of Exemption 3 because Congress affirmatively enacted it. *See Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.,* 656 F.2d 856, 867-68 (D.C. Cir. 1981). In this Circuit, the grand jury exception is limited to material which, if disclosed, would "tend to reveal some secret aspect of the grand jury's investigation, such . . . as the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Senate of the Commonwealth of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

Under Exemption 3, the ATF withholds "information in letters from the United States Attorney to the Court," such as "investigative techniques and the identities of potential witnesses related to a Grand Jury inquiry." Graham II Decl. ¶ 19. Disclosure, the declarant explains, "would reveal protected inner

workings of the Grand Jury proceedings, including, most significantly, the substance of the Grand Jury's investigation and the evidence it considered regarding [Plaintiff]." *Id.* The ATF asserts that protection is even more important in this case because Plaintiff "was convicted of murdering a Grand Jury witness." *Id.*

Plaintiff asserts that "evidence in [the ATF's] 1983 file that was presented to a grand jury . . . obvious[ly] . . . was not considered material as the grand jury decided not to indict," Pl.'s Opp'n, Affidavit of Jerry Lewis Bey ("Pl.'s Aff.") ¶ 10. The Grand Jury's decision to indict, or not to indict, has no bearing on the ATF's decision to withhold evidence presented for the Grand Jury's consideration. Defendant demonstrates that the information in these letters is precisely the type of information that Exemption 3 is designed to protect. Given that the withheld portions of these letters reflect "the substance of the Grand Jury's investigation and the evidence it considered" about Plaintiff, Graham II Decl. ¶ 19, the information falls within the scope of Exemption 3 and properly is withheld.

### 3. Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants

in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters." *Burka v. United States Dep't of Health and Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996); *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).

The deliberative process privilege "shields only government 'materials which are both predecisional and deliberative.'" *Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).  To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process." *Heggestad v. United States Dep't of Justice*, 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)).

A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  The deliberative process privilege is thought to "prevent injury to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. at 151.  Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies, and avoids public confusion that may result from disclosure of

rationales that were not ultimately grounds for agency action. *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

The ATF withholds "certain sections of Reports of Investigation," labeled "Details," which include recommendations of an ATF agent to a superior (such as a Special Agent in Charge) or to a fellow agent.  Graham II Decl. ¶ 21.  The declarant explains that these Reports are "submitted along with other documentation to support ATF's recommendation that a case be referred for prosecution, [and] describe alternative avenues of action available in the ATF's investigation of an individual."  *Id.*

In this instance, the Reports "contain candid discussions [of] the strengths and weaknesses of the ATF's case against [Plaintiff]."  Graham II Decl. ¶ 21.  The declarant asserts that such information is predecisional "because further action would have to be taken in order for the recommendations to become finalized."  *Id.*  It is deliberative in that a Special Agent's analysis and recommendations are "offered to the superior to explore the different routes that could be taken" in an investigation.  *Id.* ¶ 22.  Release of the "Details" sections of these Reports to the public "would have the effect of inhibiting the free flow of recommendations and opinions . . . within ATF during a criminal investigation."  *Id.*

The ATF establishes that the "Details" sections of the Reports of Investigation contain the opinions and recommendations of ATF Special Agents submitted either to their superiors or to fellow agents for the purpose of evaluating the case against Plaintiff and determining what action, if any, to take.  *See* Graham II Decl. ¶¶ 21-22.  The Court concludes that the information is predecisional and deliberative, and, therefore, properly is withheld under Exemption 5.

### 4.  Exemption 7[7]

#### a.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the Court must balance the interest in privacy of individuals mentioned in the records against the public interest in disclosure.  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993).  Individuals have a "strong interest in not being associated unwarrantedly with alleged criminal activity."  *Stern v. Fed. Bureau of Investigation*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about

---

[7]    The Court previously concluded that the records at issue were compiled for law enforcement purposes within the scope of Exemption 7.  Mem. Order at 12.

what their government is up to.'" *Davis v. United States Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The ATF withheld "the names, addresses, phone numbers, and other identifying information related to law enforcement officers and personnel," Graham II Decl. ¶ 39, including ATF Special Agents, state law enforcement agents and personnel, and technical personnel involved in law enforcement operations. *Id.* ¶¶ 33, 40-41. The declarant explains that disclosure of the identities of ATF Special Agents and other law enforcement personnel "might seriously prejudice their effectiveness in conducting investigations to which they are assigned and also could subject them to unwarranted harassment." *Id.* ¶ 40.

Plaintiff's response to the August 8, 2007 release included objections to the deletion of the names of persons, both living and deceased, who were involved in the investigation and surveillance of Plaintiff, who were identified in open court at his criminal trial, and who were already known to Plaintiff. *See* Plaintiff's Motion in Opposition to Dismiss as Moot [#25] ¶ 11; Reply to Defendant's "Second Motion" to Dismiss as Moot" [#27] ¶¶ 4-5, 6.a. He explained that he did not seek "the names of <u>any</u> informant, cooperating witness [or] any witness who testified against him;" rather, he claims to have sought only "reports [containing] the

22

names of two former MSTA members . . . and . . . a codefendant."
Reply to Defendant's "Second Motion" to Dismiss as Moot" [#27] ¶
6.a.

In addition, Plaintiff represents that other Justice
Department components have "disclosed the names of several FBI
agents who were part of the 1983 investigation," as well as the
names of "several Federal Prosecutors" and the Assistant United
States Attorney who acted as "the Regional Coordinator over the
1983 Task Force investigation . . . conducted by both the ATF and
the FBI." Pl.'s Opp'n at 8. He presumes, but does not know for a
certainty, that these individuals, which he claims already are
known to him, are the same individuals whose identities the ATF is
protecting, and argues that disclosure at this juncture cannot
violate their privacy interests. There is nothing in the record of
this case to support this conclusion.

Law enforcement personnel "have a legitimate interest in
preserving the secrecy of matters that conceivably could subject
them to annoyance or harassment in either their official or private
lives" *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 487
(D.C. Cir. 1980). Similarly, "third parties who may be mentioned
in investigatory files" and "witnesses and informants who provide
information during the course of an investigation" have an
"obvious" and "substantial" privacy interest in their information.
*Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 894

(D.C. Cir. 1995); *see Rugiero v. United States Dep't of Justice*, 257 F.3d 534, 552 (6th Cir. 2000) (concluding that agency properly withheld "identifying information on agents, personnel, and third parties after balancing the privacy interests against public disclosure), *cert. denied*, 534 U.S. 1134 (2002); *Computer Prof'ls for Soc. Responsibility v. United States Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting the "strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity") (quoting *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)).

Individuals involved in law enforcement investigations, "even if they are not the subject of the investigation[,] have a substantial interest in seeing that their participation remains secret." *Willis v. United States Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (citations and internal quotation marks omitted). Such privacy interests are no less significant where the individual has testified at trial. *See Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir. 1994) (concluding that law enforcement employee who chooses or is required to testify does not waive personal privacy); *Lardner v. United States Dep't of Justice*, No. 03-0180, 2005 WL 758267, *19 (D.D.C. Mar. 31, 2005) (concluding that name of a witness who testified at public trial properly was withheld under Exemption 7(C)). Privacy interests do

not diminish with the passage of time, *see, e.g., Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 297 (2d Cir. 1999), and are not extinguished simply because Plaintiff knows or can guess the individuals' identities.  *See, e.g., Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 500 (D.D.C. 1997).

In the face of these recognized privacy interests, Plaintiff appears to argue in the alternative that government wrongdoing in connection with his criminal case outweighs these individuals' privacy interests.[8]  *See* Pl.'s Opp'n at 2, 5.  Citing *Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1169 n.3 (3d Cir.

---

[8]   Plaintiff has argued that there is no connection between the 1983 investigation file and his indictment, arrest, or conviction.  Mem. of P. & A. in Opp'n of Def.'s Mot. for Summ. J. [#36] at 3.  According to Plaintiff, "the 1983 investigation was closed on April 6, 1987, and that there was [sic] no indictments as a result of the investigation." *Id.; see id.*, Ex. AAA & BBB. Rather, Plaintiff asserted that his current conviction resulted from "a July 24, 1989 task force investigation that led to a January 9, 1991 indictment." *Id.* at 3.  On this basis, Plaintiff argued that the 1983 investigation file pertained to "a totally seperate [sic] investigation" the records of which "were concealed at Plaintiff's trial in violation of a May 15, 1991 court order." *Id.*  The conclusion to be drawn from this argument is unclear.

These assertions appear to be inconsistent with representations Plaintiff made elsewhere.  For example, in his original July 4, 1997 FOIA request, Plaintiff stated that information gathered in the course of the 1983 investigation led to his indictment in 1991 and his subsequent criminal conviction. Graham I Decl., Ex. A at 2.  Even if Plaintiff's indictment were not the culmination of the 1983 investigation, the ATF establishes that the 1983 investigation file was compiled for law enforcement purposes and, therefore, it falls within the scope of Exemption 7. *See* Mem. Order at 12.  Any purported connection, or lack of a connection, between the 1983 investigation and the criminal proceedings against him does not require that the ATF release the 1983 investigation file.

1995), he asserts "the public interest in exposing government corruption and wrong doing [sic] [a]s the primary rationale for FOIA." Pl.'s Opp'n at 5. He argues that the prosecutors in his criminal case not only violated a Magistrate Judge's Order in his criminal case directing the disclosure of "information in the 1983 file and any other information that was favorable to [P]laintiff," but also thwarted release of the 1983 investigation file under the FOIA. *Id.* at 2.

The public interest "sought to be advanced [must be] a significant one more specific than having the information for [one's] own sake." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). The disclosure of the names of individuals mentioned in law enforcement files serves a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and where the requested information "is necessary in order to confirm or refute that evidence." *Davis v. United States Dep't of Justice*, 968 F.2d at 1282. Plaintiff demonstrates no such public interest with respect to the law enforcement personnel or the third parties mentioned in these responsive records.

To the extent that the alleged government misconduct is a basis for a challenge to Plaintiff's convictions, and that release of the 1983 investigation file is necessary to uncover it, Plaintiff's claim must fail. "[C]ourts have consistently refused

to recognize any public interest in disclosure of information [under FOIA] to assist a convict in challenging his conviction." *Burke v. United States Dep't of Justice*, No. 96-1739, 1999 WL 1032814, *4 (D.D.C. Sept. 30, 1999); *Taylor v. United States Dep't of Justice*, 257 F. Supp. 2d 101, 110 (D.D.C. 2003) (disclosure under the FOIA of potentially exculpatory information that prosecutors must disclose to criminal defendants pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), is in a plaintiff's private interest, not the general public interest), *recons. denied*, 268 F. Supp. 2d 34 (D.D.C. 2003).

The Court concludes that the ATF properly withholds the names of law enforcement personnel and third parties mentioned in the1983 investigation file.

### b.   Exemption 7(D)

Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that:

> could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation. . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). There is no assumption that a source is confidential for purposes of Exemption 7(D) whenever a source provides information to a law enforcement agency in the course of a criminal investigation. *See United States Dep't of Justice v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's

27

confidentiality must determined on a case-by-case basis. *Id.* at 179-80. "A source is confidential within the meaning of [Exemption] 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could reasonably be inferred." *Williams v. Fed. Bureau of Investigation*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (citing *United States Dep't of Justice v. Landano*, 508 U.S. at 170-74).

Among the responsive records are "portions of ATF Reports of Investigation that would reveal the identity of confidential sources" and "dates which could be used for identification" of these sources. Graham II Decl. ¶ 43. The Reports contain "interviews and accounts of interviews of named sources . . . [who] provided information and interactions regarding specifics about [Plaintiff's] criminal activity." *Id.* ¶ 45.

Courts have held that the violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source. *See Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (withholding source supplying information about conspiracy to distribute crack and powder cocaine); *Shores v. Fed. Bureau of Investigation*, No. 98-2728, 2002 WL 230756, at *4 (D.D.C. Feb. 2, 2002) (withholding identities and identifying information of three cooperating witnesses with knowledge of the murder of which plaintiff was convicted).

The Court agrees with Defendant that, "because [Plaintiff's] dangerous criminal history is established and well-known," disclosure of information from which Plaintiff could identify a source "could place the [source] in danger." Graham II Decl. ¶ 47. It will be remembered that Plaintiff has been convicted of murdering a Grand Jury witness and other individuals he thought were informants or were cooperating in the investigation or prosecution of the criminal case. *See* Graham I Decl. ¶ 67. In these circumstances it is reasonable to conclude that sources provided information incorporated into these Reports of Investigation with the expectation that his or her identity would be remain confidential. The ATF properly withholds under Exemption 7(D) the portions of the Reports the disclosure of which could reasonably be expected to disclose the identity of a confidential source.

This rationale also applies to the ATF's decision to withhold under both Exemptions 2 and 7(D) "certain internal administrative information which could reveal a confidential source or undercover operation." Graham II Decl. ¶ 14. The ATF therefore properly redacted "confidential source codes[,] . . . dates and other identifying information" in order "to create a mosaic of protection for confidential informants and undercovers." *Id.* Release of this information could place these informants in danger if Plaintiff or

his associates were to learn their identities, and redaction of identifying information about them is proper.

c.   Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

Courts have held that information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations.  *See, e.g., Morley v. Cent. Intelligence Agency*, 453 F. Supp. 2d 137, 156 (D.D.C. 2006) (withholding information pertaining to security clearances and background investigations on the ground that "disclosure of CIA security clearance and investigatory processes would risk circumvention of those processes in the future"); *Piper v. United States Dep't. of Justice*, 294 F. Supp. 2d 16, 30 (D.D.C. 2003) (withholding polygraph test information on the ground that disclosure "has the potential to allow a cunning criminal to extrapolate a pattern or method to the FBI's questioning technique," and anticipate or thwart FBI's strategy); *Fisher v.*

*United States Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C. 1991) (upholding FBI's decision to withhold information about law enforcement techniques where disclosure would impair effectiveness and, within context of documents, "could alert subjects in drug investigations about techniques used to aid the FBI"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

Under Exemption 7(E), the ATF withholds "details of electronic surveillance techniques, . . . specifically, the circumstances under which the techniques were used, the specific timing of their use, and the specific location where they were employed." Graham II Decl. ¶ 52. Disclosure of this information, the ATF asserts, "would illustrate the agency's strategy in implementing these specific techniques," and, in turn, "could lead to decreased effectiveness in future investigations by allowing potential subjects to anticipate . . . and identify such techniques as they are being employed." *Id.* In addition, the ATF withholds "information about techniques for funding law enforcement investigations" on the ground that disclosure "could aid persons . . . [in] avoiding certain threshhold offenses or by understanding how an undercover agent or confidential informant is able to receive funds" in certain situations. *Id.* ¶ 53. Lastly, the ATF redacts from certain Reports of Investigation the Special Agents' description of "techniques and procedures . . . used during the investigation" of Plaintiff's activities. *Id.* ¶ 54. Disclosure of

this information could help "potential suspects to anticipate the law enforcement techniques and procedures that otherwise would be foreign to them." *Id.*

### C. Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. *Trans-Pacific Policing Agreement v. United States Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999); 5 U.S.C. § 552(b). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of California v. United States Dep't of the Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

Having reviewed the declarations and the *Vaughn* index submitted in support of the ATF's motion, the Court concludes that only the exempt records or portions of records have been withheld, and that all reasonably segregable material has been released to Plaintiff. The declarations and *Vaughn* index related to these records adequately specify "in detail which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974).

III.   CONCLUSION

For the reasons discussed herein, the Court will grant the ATF's second motion for summary judgment.   An Order is issued separately.


                                    /s/
                                    _____
                                    GLADYS KESSLER
                                    United States District Judge
DATE: February 5, 2009